UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **Jamon T. Brim,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) Civil No. 5:10-CV-369-IPJ |
| | ) |
| **Dell Financial Services, LLC,** | ) |
| **Midland Credit Management,** | ) |
| **Inc., Midland Funding, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW the Plaintiff, by and through his counsel of record, and for his Memorandum in Support of Plaintiff's Motion for Summary Judgment, he states as follows:

### I.   INTRODUCTION

The Plaintiff has brought this action against Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("MF") pursuant to the Federal Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq*. (the "FCRA"), the tort of common law defamation, negligent training and supervision, and reckless and wanton training and supervision. The Defendants have wrongfully reported the

Plaintiff's account negatively to others. The Defendants failed to conduct any reasonable investigation as to the Plaintiff's disputes of the account and willfully and maliciously reported said account to third parties. Upon review of the undisputed facts, it is clear that a ruling of Partial Summary Judgment in the Plaintiff's favor is due to be granted.

## II.   PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

1. MCM is a wholly owned subsidiary of Midland Funding. Midland Funding actually has no employees. (Ross Depo., p. 7- Attached hereto as Exhibit 1).

2. All employees responsible for collecting debt work for MCM. (Ross Depo., p. 8).

3. MCM is a furnisher of credit information and is responsible for providing accurate information to credit reporting agencies, credit bureaus, and other entities. (Ross Depo., p.55).

4. MCM uses a computerized system, known as the Batch Interface system, to handle Automated Consumer Dispute Verifications ("ACDVs").(Ross Depo., p. 21).

5. The batch interface system handles approximately 95% of all incoming ACDVs. (Ross Depo., p. 22).

6. MCM's policy for handling ACDVs has not changed since 2007. (Ross Depo.,

p. 29, 117).

7. The Defendants are responsible for conducting investigations within 30 days of receiving a dispute on an account. (Ross Depo., p. 57).

8. MCM receives about 8,000 ACDVs per week. Of those 8,000 disputes, only approximately 400 are handled manually by an individual. (Ross Depo., p.60).

9. Defendants' employee Angelique Ross had never been trained on the FCRA before working at Midlands. (Ross Depo., p. 12).

10. New employees are not provided a copy of the FCRA. (Ross Depo., p. 57).

11. Beginning on November 16, 2007, MCM began reporting the Plaintiff's account to Equifax, Experian, and Trans Union with a past due amount of $1,587. (Ross Depo., p. 99).

12. In 2008, MCM reported the Plaintiff's account as past due with a balance of $1,602. (Ross Depo., p. 100).

13. MCM continually furnished the Plaintiff's account to consumer reporting agencies (hereinafter "CRAs") until the account was deleted. (Ross Depo., p. 55, 78, 80, 81).

14. On or about January 22, 2008, the Plaintiff received a statement from Midland Credit Management, Inc. stating the Dell account had been purchased by Midland Funding LLC, would be serviced by Midland Credit Management,

Inc., and the balance due on the account was $1,603.15. (Ross Depo., p. 63).

15. On July 29, 2008, the Plaintiff sent a letter to MCM in dispute of this debt and provided a copy of his bank statement, showing the account was paid in full on November 8, 2004. (Ross Depo., p. 64).

16. The Plaintiff's July 29, 2008 letter was received by the Defendant's legal department on August 5, 2008. (Ross Depo., p. 64-5).

17. The Plaintiff sent MCM a second letter on March 10, 2009, again stating that the debt had been paid in full on November 8, 2004, and including a copy of his bank statement. (Ross Depo., p. 67).

18. On March 11, 2009, the Plaintiff called MCM to dispute the debt. (Ross Depo., p.69).

19. MCM never contacted Dell regarding the Plaintiff's disputes. (Ross Depo., p. 72-3).

20. The Defendants told the Plaintiff to send a bank statement showing the payment and the Plaintiff sent that information. (Brim Depo., p. 66-7 - Attached hereto as Exhibit 2).

21. The Plaintiff was never told to send additional documentation to the Defendants. (Ross Depo., p. 77; Brim Depo., p. 67).

22. After receiving two letters and a phone call from the Plaintiff, MCM continued

to report the Plaintiff's account as a collection account with a past due balance. (Ross Depo., p. 72).

23. Trans Union sent an ACDV to MCM on August 6, 2008, stating that Mr. Brim disputed the account. This dispute was processed by MCM's Batch Interface system, which verified the account. (Ross Depo., p.78).

24. When an ACDV is handled by the Batch Interface system, no individual actually reviews the dispute. No documents are reviewed. No investigation is performed. The computer simply determines whether the information matches the Defendant's records. (Ross Depo., p.79, 81).

25. Following receipt of Trans Union's ACDV, Redstone Federal Credit Union was never contacted by MCM. (Ross Depo., p. 79-80).

26. The Defendant never credited the $954.12 payment to the Plaintiff's account. (Ross Depo., p. 77).

27. Experian sent an ACDV to MCM on August 12, 2008. This ACDV was also processed by MCM's Batch Interface system. Again, the account was verified. (Ross Depo., p.80).

28. Trans Union sent an ACDV to MCM on March 19, 2009. (Ross Depo., p. 80).

29. No investigation by an employee was ever done regarding the Plaintiff's disputed account. Each and every ACDV was processed by the Defendants'

batch interface computer system. (Ross Depo., p. 81).

30. The March 19, 2009, Trans Union ACDV was processed by MCM's Batch Interface system. Again, the account was verified. (Ross Depo., p.81).

31  Equifax sent an ACDV to MCM on March 20, 2009. (Ross Depo., p.81).

32. The March 20, 2009 Equifax ACDV was processed in the same fashion as the previous three ACDVs. (Ross Depo., p.82).

33. Trans Union sent an ACDV on February 25, 2010. This fifth ACDV was again processed by MCM's Batch Interface system. All five ACDVs received by MCM were processed by the automated system. (Ross Depo., p.82).

34. No consumer relations employees ever reviewed the ACDVs received regarding the Plaintiff's account. (Ross Depo., p.82).

35. The Defendant did not obtain any documentation from Dell to go into the account media. (Ross Depo., p. 93).

36. The Defendants' now admit there is no dispute that the Plaintiff paid off his Dell account on November 8, 2004. (Ross Depo., p. 117).

37. MCM continues to process incoming ACDVs in the same fashion as the Plaintiff's ACDVs were handled. (Ross Depo., p.123).

**II.   STANDARD OF REVIEW**

Under Rule 56, the Court should render judgment as a matter of law for the

party moving for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." *Fed. R. Civ. P. 56(c).* The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party can show that there is no evidence to support the non-moving party's claim, the burden shifts and the non-moving party must then show the existence of a genuine issue of material fact to defeat summary judgment. *Id.* at 324.

Further, the court should also take into consideration that, under rule 56(d), the court may take into account and adjudicate less than all of the claims at issue:

> (d) Case Not Fully Adjudicated on Motion. If on Motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the Motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the fact so specified shall be deemed established, and the trial shall be conducted accordingly.

*Fed. R. Civ. P. 56(d).*

Under this rule, the court has been able to make decisions on specific, undisputed facts as opposed to entire claims. *See United States CFTC v. Am. Derivatives Corp.*, 2008 U.S. Dist. LEXIS 48509 (N.D. Ga. June 23, 2008). Essentially, rule 56(d) directs the court to issue an order which identifies "what material facts are not genuinely at issue." *Fed.R.Civ.P. 56(d)(1)*.

### III. THE DEFENDANTS WERE PLACED ON NOTICE OF THE PLAINTIFF'S DISPUTE

A furnisher of credit information is one who supplies information to credit reporting agencies. *See Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1255 (S.D. Fla. 2009) "A furnisher of information, has no duty under §1681s-2(b) until a consumer reporting agency, and not a consumer, provides notice to the furnisher of information of a dispute." *Wedgeworth v. Result Matrix, Inc.*, 2010 U.S. Dist. LEXIS 71140 (M.D. Ala. July 15, 2010)(quoting *Yelder v. Credit Bureau of Montgomery, LLC*, 131 F. Supp. 2d 1275, 1289 (M.D. Ala. 2001)(Albritton, J.)). Here, the Defendants admit that they are furnishers of credit information under the FCRA. Ross testified that MCM regularly reports accounts to the CRAs and that MCM is responsible for reporting accurate information to the CRAs. (Ross Depo., p. 55). Ross also testified that MCM receives approximately 8000 ACDVs a week from the CRAs. (Ross Depo., p. 60). Thus, the only issue in determining whether the

Defendants had a duty under §1681s-2(b) is whether the Defendants had notice of the Plaintiff's dispute directly from a CRA. The undisputed facts clearly establish that the Defendants did in fact receive notice directly from CRAs. The Defendants actually received five notices of the Plaintiff's disputes, in the form of ACDVs, between the dates of August 6, 2008 and February 25, 2010. On August 6, 2008, Trans Union sent the Defendants an ACDV. (Ross Depo., p.78). On August 12, 2008, Experian sent the Defendants an ACDV. (Ross Depo., p.80). On March 19, 2009, Trans Union sent the Defendants a second ACDV. (Ross Depo., p. 80). On March 20, 2009, Equifax sent the Defendants an ACDV. (Ross Depo., p.81). And finally, on February 25, 2010, Trans Union sent the Defendants a third ACDV. (Ross Depo., p.82). These five ACDVs sent directly from the CRAs to the Defendants, as well as the Defendants' own admissions that they received each of these ACDVs regarding the Plaintiff, absolutely satisfies the notice requirement set forth in 15 U.S.C. §1681s-2(b)(1). Therefore, the Defendants' duty to investigate the Plaintiff's disputes was triggered. *See Rambarran*, 609 F. Supp. 2d at 1655 (holding that notification from the credit reporting agencies triggered the furnisher of credit informations duty to investigate); *see also Watson v. Citi Corp.*, 2008 U.S. Dist. LEXIS 78813, 25-26 (S.D. Ohio Sept. 5, 2008)(listing ACDVs received by Citi as notices of dispute). Accordingly, based on the foregoing, the Plaintiff requests this Court enter partial

summary judgment finding that the Defendants are furnishers of credit information and that the Defendants received five notices of dispute from the CRAs regarding the Plaintiff triggering the Defendants' obligations under 1681s-2(b).

### IV. THE DEFENDANTS REPORTED INACCURATE INFORMATION REGARDING THE PLAINTIFF'S ACCOUNT

Whether the Defendants reported inaccurate information regarding the Plaintiff's account is a threshold issue for the Plaintiff's FCRA claims, as well as the Plaintiff's defamation claim. When an inaccuracy is established, the furnisher of the credit information is required to conduct a reasonable investigation and notify the CRAs. *See Peart v. Shippie,* 345 Fed. Appx. 384, 386 (11th Cir. Fla. 2009); *see also Allen v. Am. Express Co.*, 2007 U.S. Dist. LEXIS 52949 at *4(S.D. Fla. July 23, 2007). Furnishers of credit information are placed under an obligation to verify the accuracy of information once the furnishers are placed on notice. *Chipka v. Bank of Am.*, 355 Fed. Appx. 380, 383 (11th Cir. Ga. 2009). "The FCRA governs claims by consumers... against a furnisher of information...based on an allegation that the furnisher submitted incorrect information regarding the consumer to CRAs." *Green v. RBS Nat'l Bank*, 288 Fed. Appx. 641, 642 (11th Cir. Ga. 2008). The Plaintiff must establish that the furnisher of credit information has reported incorrect or inaccurate information in order for a claim under the FCRA to proceed. Additionally, a

defamation case hinges on the accuracy of the information published. "To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent in publishing a false and defamatory statement to another, concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Delta Health Group, Inc. v. Stafford*, 887 So. 2d 887, 895 (Ala. 2004).

In the instant case, it is undisputed that the Plaintiff paid the Dell account off on November 8, 2004. The Defendants' representative Ross, testified that it was undisputed that the Plaintiff did not owe the account MCM was trying to collect. (Ross Depo., p. 116). Ross also admitted that MCM reported inaccurate information to the CRAS until September 9, 2010, when MCM sent in a Universal Data Form instructing the CRAs to delete the account. (Ross Depo., p. 115-6). The undisputed facts establish that not only did the Plaintiff contact MCM on more than one occasion disputing this debt and indicating that he had already paid off the account in full, but also that the Plaintiff provided MCM with a copy of his bank statement confirming the payment to Dell Financial Services on November 8, 2004. MCM also received five separate ACDVs from CRAs indicating that the Plaintiff was disputing the information being reported by MCM as inaccurate because it was previously paid in

full prior to charge off. Furthermore, the Defendants admit that the debt reported was incorrect and inaccurate, and that the Plaintiff never owed the debt. (Ross Depo., p.116-17). The Defendants also admit that the incorrect information that was reported regarded the Plaintiff. (Ross Depo., p. 79). Wherefore, the Plaintiff requests this Court enter partial summary judgment finding that the information reported by the Defendants to third parties, the CRAs, was inaccurate.

### V. THE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIM OF DEFAMATION

"To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent, in publishing, a false and defamatory statement to another, concerning the plaintiff, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Delta Health Group, Inc.,* 887 So. 2d at 895. The publishing element is usually satisfied by the communication of the defamatory statement to someone other than the Plaintiff. *See id*. at 896. "Written or printed language which is published and which clearly charges dishonesty or fraud is actionable as for libel. A publication which imputes an unwillingness to pay just debts is libelous per se..." *Ferdon v. Dickens*, 161 Ala. 181, 187 (Ala. 1909). While some communications are protected by a qualified privilege, that privilege can be

defeated by a showing of actual malice. See *Wiggins v. Mallard*, 905 So. 2d 776, 782 (Ala. 2004). Malice has been defined as "knowledge that [the statement] was false or with reckless disregard of whether [the statement] was false or not." *New York Times Co.*, 376 U.S. 254, 280 (1964).

In this case, the Defendants repeatedly reported to third parties that the Plaintiff had a bad debt and that he owed $1,603.15. The ongoing reporting of the account to the CRAs was a publication as the Defendants' produced the statements to third parties. *See Delta Health Group, Inc.*, 887 So. 2d at 896. The statements obviously concerned the Plaintiff as the alleged bad debt was added to the Plaintiff's credit reports. Furthermore, the ongoing reporting of the bad debt painted the Plaintiff as a dishonest person who refused to pay a just debt that he had allegedly incurred, and thus constitutes libel per se. *Ferdon*, 161 Ala. at 187. The Defendants admit reporting this account as a bad debt, collection account with a balance of $1,603.15 to the CRAs. The Defendants also admit that they received the bank statement from the Plaintiff confirming the payment to Dell on November 8, 2004. Finally, the Defendants admit that the information reported by the Defendants to the CRAs was inaccurate and incorrect. Thus, the Plaintiff is entitled to summary judgment on his claim of defamation.

It is expected that the Defendants will attempt to make a claim of qualified

privilege, but such a claim must surely fail. Any qualified privilege is defeated by a showing that the Defendants recklessly disregarded whether their statements to the CRAs were true. *Wiggins*, 905 So. 2d at 782. In the instant case, the Defendants received multiple notifications from both the Plaintiff and the CRAs reporting the dispute and the inaccuracy. (Ross Depo., p. 64, 65, 72, 78, 80, 81). The Plaintiff accompanied one of his written disputes with an actual bank statement showing that the reported debt was incorrect. (Ross Depo., p. 64). The Defendants disregarded these disputes and continued to publish the defamatory information with reckless disregard as to whether their statements were true. As the Defendants had received notice from the Plaintiff and proof of payment, the ongoing reporting of the account as a collection account was not only inaccurate, but also demonstrates the Defendants' malice. The Plaintiff provided proof to the Defendants the he had paid the bill in full to Dell prior to the account being charged off. The Defendants admitted they never went back to Dell to verify the payment. (Ross Depo., p. 79). The Defendants also admitted that they never contacted Redstone Federal Credit Union to verify the accuracy of the bank statement provided. (Ross Depo., p. 79-80). Instead, the Defendants simply ignored the Plaintiff's proof of payment and continued to report to the CRAs that the Plaintiff failed to pay this account. The Defendants' total disregard of the Plaintiff's proof clearly establishes the Defendants' reckless

disregard and/or malice. Thus, the Defendants have no qualified privilege protecting their statements regarding the Plaintiff to third parties, and the Plaintiff has met his burden for establishing his claim for defamation.

### VI. DEFENDANT'S FAILED TO CONDUCT A REASONABLE INVESTIGATION AS REQUIRED BY THE FCRA

"After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the **person** shall . . . conduct an investigation with respect to the disputed information; . . . . *15 USCS § 1681s-2.* (Emphasis added). The FCRA defines person as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *15 USCS § 1681a(b)*. This definition does not include computer. The FCRA requires an investigation be conducted by a furnisher of credit information upon notice of dispute. *See Peart*, 345 Fed. Appx. at 386. A furnisher of credit information is required to conduct a reasonable investigation upon receiving notice of a dispute. *Brewer v. Transunion, L.L.C.*, 2006 U.S. Dist. LEXIS 70292 (S.D. Ala. Sept. 27, 2006) (citing *Johnson v. MBNA America Bank*, NA, 357 F.3d 426, 431 (4th Cir. 2004). The element of reasonableness is suitable for summary judgment if the facts of the case establish reasonableness or unreasonableness beyond all doubt. *Rambarran*, 609 F. Supp. 2d at 1262 (citing *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1278 (N.D. Ga.

2006)).

The Fourth Circuit took up the issue of whether an investigation was reasonable. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. Va. 2004). The Plaintiff in *Johnson* alerted MBNA that she was not a co-obligor on an account. *Id*. In spite of the alerts, MBNA limited its review to the Plaintiff's file "(1) confirming that the name and address listed on the ACDVs were the same as the name and address contained in the CIS, and (2) noting that the CIS contained a code indicating that Johnson was the sole responsible party on the account." *Id*. MBNA also admitted that "in investigating consumer disputes generally, they do not look beyond the information contained in the CIS and never consult underlying documents such as account applications." *Id*. The Fourth Circuit determined in *Johnson v. MBNA Am. Bank, NA.* that MBNA's investigation was unreasonable and granted summary judgment for the Plaintiff's FCRA claim. *Id.*

The Southern District of Mississippi has also ruled on the issue of whether an investigation was reasonable under the FCRA. *See Robertson v. J.C. Penney Co.*, 2008 U.S. Dist. LEXIS 17159 (S.D. Miss. Mar. 4, 2008). In Robertson, the court held:

> [I]n spite of having information at their access to clearly verify that the plaintiffs' had paid this debt, [Defendant's] employees responded to the TransUnion and Equifax ACDVs that the plaintiffs' account was properly charged off for nonpayment. This response, in the face of the statutory requirement to perform a reasonable investigation, was, at the very least, negligence on the

> part of the [Defendant]. While this finding is one generally left to the province of the trier of fact, in this case the court finds that no reasonable juror could conclude otherwise but that [the Defendant]'s "investigation" of the dispute noted in the ACDVs from both TransUnion and Equifax was not "reasonable" as a matter of law.

*Id*. at *23-4.

It is undisputed that MCM's Batch Interface system, a computer not a person, responded to each of the Plaintiff's five ACDVs and, on each occasion, verified the information provided as accurate. (Ross Depo., p. 78, 80, 81). When an ACDV is processed by the Batch Interface system, no individual actually reviews the dispute. No documents are reviewed. No investigation is performed. The computer simply determines whether the information provided on the ACDV matches the Defendants' records. (Ross Depo., p.79, 81). The Defendants' representative, Ross, admitted that no employee, i.e. person, ever actually performed any investigation into the Plaintiff's disputes. (Ross Depo., p. 81). Rather, MCM's Batch Interface system simply matched the information in the computer to the information received in the ACDVs and verified that the information was accurate. (Ross Depo., p. 79). No other investigation or review was ever performed by the Defendants. The FCRA clearly requires an investigation be conducted by a furnisher of credit information upon notice of dispute. Based upon the undisputed facts set forth herein, it is clear that the Defendants failed to conduct any investigation into the Plaintiff's disputes.

Wherefore, the Plaintiff requests this Court enter partial summary judgment finding that the Defendants failed to conduct a reasonable investigation as required by the FCRA.

## VII.  CONCLUSION

Wherefore, premises considered, the Plaintiff respectfully requests this Honorable Court to grant the Plaintiff's Motion for Partial Summary Judgment.

/s/ Penny Hays Cauley
Penny Hays Cauley, ASB-6309-A63P
Attorney for Plaintiff

**OF COUNSEL:**
**HAYS CAULEY, P.C.**
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**OF COUNSEL:**
Ronald C. Sykstus, Esq.
**BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.**
415 Church Street, Suite 100
Huntsville, AL 35801
(256) 539-9899
(256) 539-9895 Facsimile
rsykstus@bondnbotes.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 10, 2010, I electronically filed the foregoing via the CM/ECF System, which will notify the following counsel of record:

Eric B. Langley, Esq.
Jason B. Tompkins, Esq.
BALCH & BINGHAM LLP
P. O. Box 306
Birmingham, AL 35201-0306

                                                 /s/ Penny Hays Cauley
                                                 Of Counsel