FILED

2010 Nov-15  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMON T. BRIM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** | ) | |
| **MANAGEMENT, INC. and** | ) | |
| **MIDLAND FUNDING, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## BRIEF OF DEFENDANTS MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC. IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM") (collectively, "Midland") state as follows in support of their contemporaneously filed Motion for Summary Judgment:

## INTRODUCTION

The plaintiff Jamon Brim seeks to hold Midland Funding and MCM liable under federal and state law for trying to collect on and for furnishing information about a debt that Dell Financial sold to Midland Funding in 2007. Even if Midland Funding and MCM had done everything Brim says they should have, the outcome would have been the same. Brim did not provide Dell with the proof of payment requested in 2005 until August of 2010—six months after Brim filed this lawsuit.

It was only then that Dell was able to determine that Brim's payment had been erroneously applied to another customer's account.   Midland deleted Brim's account after learing of this information.  Midland Funding is entitled to summary judgment in its favor on all counts because it is undisputed that it did not take any of the actions alleged in the Complaint.  MCM is entitled to summary judgment on the claim for willful violation of the FCRA because Brim has not presented evidence that MCM consciously disregarded his rights.   MCM is entitled to summary judgment on Brim's FDCPA claim because its actions complied with the FDCPA, but even if a violation occurred, it was a *bona fide* error despite MCM's policies of reasonably relying upon account information received from sellers such as Dell.   Finally, Brim's state law claims against MCM are preempted by the FCRA.  Midland Funding and MCM are, therefore, entitled to summary judgment in their favor on all claims against them.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Defendant Midland Funding purchases debts from third parties, such as credit card companies and financing companies for particular retailers, such as Dell.  (Ex. A, Declaration of Kathy Rogan, at ¶ 2); (Ex. B, Deposition of Angeligue Ross, at 7:25-8:4).  Midland Funding has no employees.  (Ex. B at 7:22-24).  Defendant MCM services the debts owned by Midland Funding, and MCM employs all individuals responsible for collection, reporting to consumer reporting

agencies ("CRAs"),[1] or handling disputes directly from consumers or from CRAs. (*Id.* at 8:6-10); (Ex. A at ¶ 2).

2.      Brim purchased a computer and surge protector from Dell in September or October of 2004 using a line of credit from Dell Financial ("Dell"). (Compl. ¶ 7); (Ex. C, Deposition of Jamon Brim, at 15:15-27:5).   Receipts for Brim's purchases show charges of $914.25 and $20.53, for a total of $934.78.  (Ex. E, Dell Receipts); (Ex. C at 25:9-26:2, 27:13-28:13, 32:10-11).

3.      Several months after the purchase, Brim received account statements from Dell indicating a balance due.  (Ex. C at 33:21-34:16).  Brim then complained to Dell several times by phone or in writing that he had already paid off the account.  (*Id.* at 34:17-36:19).  Brim sent Dell a copy of a bank statement for the period 10/13/04 – 11/12/04 from Redstone Federal Credit Union ("Redstone Statement") showing a payment to Dell in the amount of $954.12.  (Ex. C at 41:8-20, 49:7-14); (Ex. D, Restone Federal Credit Union Statement for 10/13/04 – 11/12/04).  This amount differed from the charge for the goods, as reflected by the receipts (Ex. E) and a November 2004 account statement.  (Ex. F, November  10, 2004 Dell Account Statement) (showing "previous balance" as $934.78); (Ex. C at 29:7-32:17) (testifying that amount of "previous balance" is the same as receipts for the purchase).

---

[1] In the industry, CRAs also may be called "credit reporting agencies" or "credit bureaus."

4.     In October 2005, Brim filed a complaint against Dell with the Better Business Bureau ("BBB").   (Ex. C at 39:7-40:12, 42:21-43:14); (Ex. G, BBB Complaint Activity Report).   Dell responded, and the BBB conveyed to Brim, that a "transactional detail report" was necessary to prove prior payment of the account. (Ex. C at 46:7-48:22); (Ex. G).   Brim did not provide Dell anything other than the Redstone Statement.   (Ex. C at 49:15-50:8).

5.     On October 10, 2007, Midland Funding purchased a portfolio of accounts from Dell.   (Ex. A at ¶ 6).   Dell provided information about each account to Midland Funding, including the unpaid balance.   (*Id.* at ¶ 8).   Dell represented that it had "the right to convey good and marketable title to each Charged-off Account to be sold hereunder and each such Charged-off Account shall be transferred free and clear of any lien or encumbrance" and "the Unpaid Balances of each Charged-off Account . . . are accurate in all material respects."   (*Id.* at ¶ 7). The unpaid balance of Brim's account was listed as $1381.01.   (*Id.* at ¶ 8).

6.     On May 9, 2008, Midland Funding's collection counsel filed a small claims complaint against Brim in the District Court of Madison County, Alabama, concerning the unpaid debt it purchased from Dell.   (Ex. H, Small Claims Complaint).   A deputy sheriff left a business card at Brim's residence (Ex. C at 14-22, 116:10-22), but service of the complaint and summons was never completed. (*Id.* at 114:3-5); (Ex. I, Small Claims Case Action Summary).   The action was

voluntarily dismissed on February 18, 2009.   (Ex. J, Motion for Voluntary Dismissal and Order Dismissing Action).

7.     On July 29, 2008, Brim sent a letter to MCM stating that he had already paid the debt to Dell.  (Ex. C at 58:6-10); (Ex. K, July 29, 2008 Letter).  He attached to the letter the same Redstone Statement that he had sent to Dell.  (Ex. K).  The entry purportedly showing a payment to Dell of $954.12 differed from the unpaid balance of $1381.01 sold to Midland Funding by Dell.  (Ex. A at ¶ 8).  Brim also demanded that MCM "not contact [him] again by phone or in writing."  (Ex. K); (Ex. C at 60:12-18).   MCM has procedures in place for processing disputes in which the consumer states that the debt was previously paid.  (*Id.* at 38:23-45:17) (Ex. L, Procedures for Handling Verbal and Written "Paid Prior" Disputes).  In addition, based on Brim's cease and desist demand, his account was coded to indicate that he wanted no further contact, (Ex. B at 26:23-27:3) (stating at "026" code indicates no further contact); (*see* Ex. M, Collection Detail) (reflecting "026" code.  MCM did not contact Brim again.  (Ex. B at 65:8-17).

8.     On March 10, 2009, Brim sent another letter to MCM stating that he had already paid the debt to Dell.  (Ex. C at 61:19-21) (Ex. N, March 10, 2009 Letter to MCM).  He attached to the letter the same Redstone Statement that he had previously sent.  (Ex. C at 65:23-66:16).  Brim again demanded that MCM "not contact [him] again by phone or in writing."  (Ex. N).

9.    MCM reports information to the CRAs on a monthly basis. (Ex. B at 110:13-15). Every month since receiving Brim's July 29, 2008 letter, MCM reported Brim's account as "disputed." (Ex. B. at 72:12-17, 83:19-84:5, 101:1-3) (Ex. O, Monthly CRA Reporting).

10.   The CRAs electronically transmit disputes to MCM and to other "furnishers of information" through third-party software called "E-Oscar." (Ex. B at 21:21-24). MCM receives the dispute through E-Oscar on an electronic dispute form, prepared by the CRAs, referred to as an "Automated Credit Dispute Verification" ("ACDV"). (*Id.* at 57:18-20).

11.   MCM receives approximately 8,000 ACDVs per week. (Ex. B at 60:17-19). MCM uses a "batch interface system" to complete the majority of investigations by comparing the information found in the ACDVs to its own internal account information. (*Id.* at 21:16-23:15). MCM's investigation cannot be completed through the batch interface system for some disputes, and in those cases, the ACDVs are reviewed and processed manually. (*Id.* at 22:17-23:18).

12.   MCM received ACDVs regarding Brim's account on or around August 6, 2008, August 12, 2008, and March 11, 2009. (Ex. B at 78:12-15, 80:13-15, and 80:22-24); (Ex. M). Each of the ACDVs was processed by the batch interface system, and MCM directed the CRAs to mark the account as "disputed." (Ex. B at 82:13-17).

13.    On February 24, 2010, Brim filed this action against Midland Funding, MCM, and Dell.  (*See generally* Complaint).  In August 2010, Brim finally requested tracking information from Redstone Federal Credit Union for the payment he allegedly made to Dell.  (Ex. C at 125:22-127:9); (Ex. P, August 2010 Transactional Report).  Using the credit union transactional report, Dell determined that Brim's November 2004 payment had been applied to another customer's account.  (Ex. B at 116:20-23); (Ex. C at 123:23-124:7, 125:2-129:10).  Upon learning of this information, MCM requested that the CRAs delete the credit reporting of Brim's account on September 9, 2010.  (Ex. B at 115:4-19).

## STANDARD OF REVIEW

In a case like this one, where Brim bears the burden of proof at trial, MCM and Midland Funding may demonstrate that summary judgment in their favor is proper "by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case."  *Riley v. Equifax Credit Info. Servs., Inc.*, 194 F. Supp. 2d 1239, 1243 (S.D. Ala. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The burden then shifts to Brim to "come forward with specific facts showing that there is a genuine issue for trial."  *Id.* at 1243-44 (quoting *Matsushita Elec. Indus. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  "The moving party is likewise entitled to judgment as a matter of law when the nonmoving party fails to show sufficiently an essential

element of the case as to which the nonmoving party has the burden of proof." *Id.*
at 1244 (citing *Peppers v. Coates*, 887 F. 2d 1493, 1497 (11th Cir. 1989).

## ARGUMENT AND AUTHORITIES

**I.      MIDLAND FUNDING IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S CLAIMS BECAUSE IT DID NOT TAKE ANY OF
THE ACTIONS UPON WHICH THE COMPLAINT IS BASED.**

The Complaint alleges that Midland Funding violated the FDCPA (Count
One) by reporting or failing to report certain information on Brim's credit reports
(Compl. ¶¶ 30-32) and violated the FCRA (Count Two) by failing to comply with
certain reporting and investigation requirements applicable to "furnishers of
information." (*Id.* at ¶¶ 35-39). It is undisputed that Midland Funding is not a
furnisher of information and does not engage in collection or reporting activities.
(Ex. B at 7:22-8:10). All employees who have responsibility with respect to
collecting on accounts or handling disputes from the CRAs are employed by
MCM, not Midland Funding. (*Id.* at 8:6-10).

As discussed in section IV below, Brim's state law claims (Counts Three
through Six) are preempted by the FCRA. Even if the Court disagrees that the
state law claims are preempted, Midland Funding is nonetheless entitled to
summary judgment. Brim testified in his deposition that his defamation, libel and
slander causes of action (Count Three) are based on disclosure of information to
(1) the CRAs; and (2) the sheriff and the "public at large" *via* the small claims

collection action against him in which Midland Funding was the plaintiff.  Midland

Funding is entitled to summary judgment on the former because, as noted above, it

did not report any information to the CRAs.  (Ex. B at 8:6-10).  Although Brim did

not identify the small claims court action as a basis for his lawsuit in the

Complaint, if this Court considers it, the small claims complaint filed against Brim

is absolutely privileged under Alabama law:

> "A party to a private litigation or a private prosecutor or defendant in
> a criminal prosecution is **absolutely privileged to publish
> defamatory matter concerning another** in communications
> preliminary to a proposed judicial proceeding, **or in the institution of
> or during the course and as a part of, a judicial proceeding** in
> which he participates, if the matter has some relation to the
> proceeding."

*Walker v. Majors*, 496 So. 2d 726, 729 (Ala. 1986) (quoting *Restatement (Second)*

*of Torts* § 587 (1977)) (affirming summary judgment) (emphases added).  The

same absolute privilege applies to Brim's false light claim (Count Four).  *Drees v.*

*Turner*, No. 2080742, 2010 Ala. Civ. App. LEXIS 56 (Ala. Civ. App. Feb. 26,

2010) (citing *O'Barr v. Feist*, 296 So. 2d 152, 156-57 (Ala. 1974)).  Finally,

Counts Five and Six of the Complaint for negligent and wanton training and

supervision should be dismissed because Brim has not presented evidence that any

Midland Funding employee took the actions that form the basis of his claims.  In

fact, it is undisputed both that Midland Funding has no employees (Ex. B at 7:22-

24) and that all collection activities and disputes are handled by MCM employees.

(*Id.* at 8:6-10).[2]

## II.   THIS COURT SHOULD GRANT SUMMARY JUDGMENT FOR MCM ON PLAINTIFF'S CLAIM FOR WILLFUL VIOLATION OF THE FCRA (COUNT TWO) BECAUSE THERE IS NO EVIDENCE— LET ALONE SUBSTANTIAL EVIDENCE—THAT MCM "CONSCIOUSLY DISREGARDED" THE LAW.

Count Two of the Complaint seeks to hold MCM liable for *willful* violation of the FCRA, 15 U.S.C. § 1681n.  (*See* Compl. ¶¶ 34-40, p. 15 ¶¶ E-G).   The undisputed facts simply cannot support a claim for willfulness because "there is an absence of evidence to support" that MCM "consciously disregarded" the law. *Riley*, 194 F. Supp. 2d at 1243.   Brim must meet a high standard to survive summary judgment on a claim of willful violation of the FCRA:

> While the Eleventh Circuit has not specifically addressed the meaning of "willful" under the FCRA, the Ninth Circuit has held that "as used in the FCRA, 'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights.'"

*King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279 (N.D. Ga. 2006) (granting summary judgment on plaintiff's claim for willful violation of the FCRA) (citation omitted).   In other words, "[t]o be found in willful

_____

[2] To the extent the Court disagrees with this basis for summary judgment and holds that the FCRA and/or FDCPA apply to Midland Funding in this action, the remainder of the arguments in this brief, made as to MCM, also would support summary judgment in favor of Midland Funding.

noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'"  *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (describing cases finding willfulness where reports were "rife with innuendo, misstatement, and slander" or "contained statements about the plaintiff regarding her excessive drinking"), *cert. denied*, 483 U.S. 1022 (1987)); *see also Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1241 (N.D. Ala. 2002) (granting summary judgment for defendant; "Courts have consistently disallowed punitive damages absent special and aggravating circumstances.").

Under this standard, "the failure to delete erroneous information after receipt of notice by the consumer and even the reinsertion of incorrect information after it had previously been deleted have been found to fall short of the knowing and intentional disregard standard."  *Reed*, 321 F. Supp. 2d at 1116; *Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) (granting summary judgment on willfulness claim because "fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).  Rather, the evidence must show an "intention to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report."  *King*, 452 F. Supp. 2d at 1280 (citing *Stevenson*, 987 F.2d at 294.

The undisputed evidence indicates that, at the time MCM received disputes from the CRAs, the only documentation (other than identifying information such as driver's license and Social Security number) Brim had ever sent MCM was the Redstone Statement.   (Ex. B at 65:23-66:16, 127:10-15).   A bank statement, however, is not sufficient proof that a debtor has paid off a debt.  (Ex. B at 40:1-6) ("Q. Is a bank statement showing payment to the original creditor sufficient proof that the account had been paid prior?  A.  No.  Q.  Never?  A. Not by itself, no."). MCM has policies and procedures in place for handling disputes in which the consumer states that the debt was previously paid.  (*Id.* at 38:23-45:17) (Ex. L at Midland 000168) (enumerating acceptable forms of proof).  If the debtor provides no documentation or inadequate documentation, MCM sends a letter requesting additional documentation.   (Ex. B at 26:7-15).   At the time of Brim's disputes, such a letter would not be sent if the debtor requested (as Brim had requested) that MCM cease and desist all communication with him.  (*Id.* at 26:16-27:11).

MCM's computer system, which processes the majority of the approximately 8,000 ACDVs MCM receives weekly (Ex. B at 60:17-19), compares the dispute codes provided by the CRAs with information within MCM's system.  (*Id.* at 21:16-23:15).  If Brim's account had been coded to reflect that he provided sufficient proof of prior payment, MCM's system would have either flagged the ACDV for manual review or automatically deleted the account in

response to the ACDVs.  (Ex. B at 23:10-24:24, 41:6-42:16, 78:23-79:1).  Because

Brim had not provided sufficient proof that he had paid Dell, his account was not

coded in such a way that manual review or deletion occurred.  (*Id.* at 78:1-8); (Ex.

M).  His ACDVs were processed by the system according to normal procedures.

(Ex. B at 82:13-17).

At the times of Brim's disputes in 2008 and 2009, Dell had not yet

discovered that Brim's payment had been applied to another customer's account.

Thus, even if MCM had contacted Dell in 2008 or 2009 as Brim says it should

have (*see* Ex. C at 148:11-22), the results of MCM's investigation would have

been the same.  Brim had submitted his bank statement to Dell several times

before, and Dell had subsequently sold the account to Midland Funding with a

representation that the unpaid balance was accurate; in fact, it was not until August

2010, six months after he filed this lawsuit, that Brim finally requested and

obtained the information from his credit union that Dell had sought from the time

of Brim's first dispute.  (*Id*. at 126:9-129:10); (Ex. P).  That report enabled Dell to

track the payment.  (Ex. C at 124:4-10).  Consequently, until August 2010, Dell

maintained that it had no record of payment on Brim's account.  (Ex. C at 123:23-

124:16).  Had MCM contacted Dell in response to Brim's disputes in July 2008

and March 2009, MCM would have received the same response:  that Brim had not

paid his Dell account.

MCM followed its procedures in processing the disputes it received. Although Brim may argue that these procedures are not appropriate, that argument is insufficient to support a claim for willful violation of the FCRA. *See Reed*, 321 F. Supp. 2d at 1116 ("Here, plaintiff simply alleges that defendants procedures were unreasonable and therefore violated the Act.  Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute.").  The Fifth Circuit has similarly rejected a plaintiff's argument that the failure to implement a better computerized system willfully violated the FCRA:

> The system was not perfect, but it was effective for a few months, and Trans Union never attempted to mislead Cousin with respect to his consumer report or his rights.  We may fault the failure to implement a full-proof [*sic*] cloaking procedure as unreasonable, but we cannot say that it was willful

*Cousin*, 246 F.3d at 374.

Without receiving sufficient proof that Brim had paid the Dell account, and because the disputes received from the CRAs were processed properly by the batch interface system, MCM could not have "**consciously** disregarded" Brim's rights under the law.  *See Thomas*, 214 F. Supp. 2d at 1238 ("[F]ail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).  Consequently, MCM is entitled to summary judgment on Brim's claim for willful violation of the FCRA.

### III.  MCM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR VIOLATION OF THE FDCPA.

#### A.  Plaintiff's FDCPA Claim Is Barred by the Statute of Limitations to the Extent Based on Any Conduct Occurring Prior to February 24, 2009.

The FDCPA includes a one-year statute of limitations:

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, **within one year from the date on which the violation occurs**.

15 U.S.C. § 1692k(d).  Plaintiff's Complaint in this case was filed on February 24, 2010.  (*See* doc. 1).  Thus, any conduct that occurred before February 24, 2009, including the actions alleged in paragraphs 14-24 of the Complaint cannot form the basis of Plaintiff's FDCPA claim.  MCM should be granted summary judgment on Brim's FDCPA claim to the extent that it is based on this alleged conduct.

#### B.  For Conduct Not Barred by the Statute of Limitations, Plaintiff Cannot Circumvent the FCRA's Express Deprivation of a Private Right of Action by Re-Labeling His Claims as Violations of the FDCPA.

This Court should grant summary judgment for MCM on Brim's FDCPA claim, because Brim has presented no evidence that MCM engaged in a collection activity prohibited by the FDCPA.  The allegedly illegal "collection" activity identified in the Complaint was MCM's furnishing of information to the CRAs. (*See* Compl. ¶¶ 30-32).

This conduct is specifically governed by FCRA § 1681s-2(a), and Congress chose to expressly deny consumers a private right of action for violation of a furnisher's duty to provide accurate information *to CRAs*. *See* 15 U.S.C. § 1681s-2(c); Consumer Credit Reporting Reform Act of 1996, Pub. L. No. 104-208, § 2413, 110 Stat. 3009, 3009-447 (1996). The FDCPA section at issue, 15 U.S.C. § 1692e, was enacted nearly twenty years earlier. Consumer Credit Protection Act, Pub. L. No. 95-109, § 807, 91 Stat. 874, 878 (1977). To the extent that the FDCPA is inconsistent with the FCRA's denial of a private right of action, the FCRA's limitation must control. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The 'classic judicial task of reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.' *United States v. Fausto*, 484 U.S. [439,] 453 [(1988)]. This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently in *United States v. Estate of Romani*, 'a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it has not been expressly amended.' 523 U.S. [517,] 530-531 [(1998)].").

This result neither undermines the purposes of the FDCPA—to prohibit abusive debt collection practices—nor eviscerates § 1692e of all meaning. That

section would certainly apply when a furnisher (who is also a "debt collector" under the FDCPA) communicates inaccurate information to any third party ***other than a CRA***—*e.g.*, to a neighbor, to an employer, or to a creditor. Because Congress chose not to allow consumers to sue furnishers for communicating inaccurate information ***to CRAs***, however, Brim should not be permitted to recast the same conduct as a violation of the FDCPA, thereby undermining an express and indisputable limitation imposed by the FCRA. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) ("To permit a simultaneous claim under the FDCPA would allow through the back door what [plaintiff] cannot accomplish through the front door – a private right of action.").

**C.  Even if the FDCPA Claim Could Be Based on Furnishing Information to a CRA and Is Not Barred by the Statute of Limitations, MCM Is Entitled to Summary Judgment Because It Complied With the FDCPA.**

If the FDCPA does apply, Brim's claims still fail because the undisputed evidence shows that MCM complied with the FDCPA. In *King*, 452 F. Supp. 2d 1272, based on facts similar to this case, the district court granted summary judgment in favor of the defendant furnisher/debt collector on the plaintiff's claims for violation of the FDCPA and willful violation of the FCRA. In that case, the plaintiff sent dispute letters to the CRAs and to the furnisher, alleging fraud and asking for deletion of the account, after he learned of an account on his credit report. *King*, 452 F. Supp. 2d at 1275. The furnisher marked the account as

"disputed" and compared the information on the ACDV to information in its internal files. *Id.* at 1275-76. The furnisher verified to the CRAs that the address and social security number contained in the ACDV matched its records, and the collection account remained on the plaintiff's credit reports. *Id.* at 1276-77.

The plaintiff in *King* alleged that continuing to report the collection account after receiving (1) a dispute letter directly from the plaintiff; and (2) the ACDVs from the CRAs violated sections 1692e(2)(A), (8), and (10) of the FDCPA because the debt collector knew or should have known that the account information was false. *King*, 452 F. Supp. 2d at 1281. The court held that the debt collector complied with § 1692e(8) by reporting the account as "disputed" and granted summary judgment for the debt collector on plaintiff's FDCPA claim. *Id.* at 1282. The court refused to conclude that the report was "deceptive" under the FDCPA simply because the debt collector later became aware that the account did not belong to the plaintiff. *Id.* at 1281-82.

Brim's FDCPA claims cannot survive summary judgment because the undisputed evidence, like that in *King*, shows that: (1) MCM reported Brim's account as "disputed" after receiving the ACDVs (CITE);[3] and (2) MCM's batch interface system and/or an MCM employee compared the information provided in

---

[3] In fact, Brim's account was marked as "disputed" during the entire one-year period (February 24, 2009 through February 24, 2010) that could form the basis of Brim's claims. Brim's account has been marked as disputed since August 13, 2008. (Ex. O). Any conduct occurring before February 24, 2009 is barred by the FDCPA's statute of limitations.

the ACDVs to its own files.   (Ex. B at 21:16-23:15, 82:13-17).   As in *King*,

therefore, MCM complied with the FDCPA and is entitled to summary judgment.[4]

### D.  Alternatively, If a Violation of the FDCPA Did Occur, Midland Is Entitled to Summary Judgment Because It Was a *Bona Fide* Error.

If an FDCPA violation did occur, Midland cannot be held liable because the

statutory "*bona fide* error defense" applies.   A debt collector may not be held liable

under the FDCPA "if the debt collector shows by a preponderance of evidence that

the violation was not intentional and resulted from a bona fide error

notwithstanding the maintenance of procedures reasonably adapted to avoid any

such error."   15 U.S.C. § 1692k(c).

The recent case of *Charbonneau v. Mary Jane Elliott, P.C.*, 611 F.Supp.2d

736 (E.D. Mich. 2009), demonstrates application of the *bona fide* error defense

when the seller of a debt provides erroneous information.   In *Charbonneau*, the

plaintiff alleged that the debt-buyer filed a collection lawsuit after the statute of

limitations had expired.   The Court first held that any violation of the FDCPA was

unintentional because the debt buyer was entitled to, and did, rely upon

---

[4] Furthermore, MCM is entitled to summary judgment on Brim's FDCPA claim because the undisputed evidence shows that MCM was unaware that Brim had paid the debt to Dell. *Farren v. RJM Acquisition Funding, LLC*, No. Civ. A. 04-995, 2005 WL 1799413, at *9 (E.D. Pa. 2005) (granting summary judgment for debt collector because "there is no evidence to show that RJM, when it communicated with Mr. Farren, Experian, or Trans Union, was aware that the debt did not belong to Mr. Farren.").   Until August 2010, for all MCM knew, Brim's account was valid and outstanding.

information provided by the seller concerning the date of the plaintiff's final payment. *Charbonneau*, 611 F. Supp. 2d at 743 (citing *Moya v. Hocking*, 10 F.Supp.2d 847, 849 (W.D. Mich. 1998) (holding bona fide error defense was warranted where debt collector relied "upon computer-generated account information supplied by the seller which [debt collector] download[ed] into its own system.")).

The Court also held in *Charbonneau* that the debt buyer's procedures for receiving and relying upon information from the seller satisfied the second factor of the *bona fide* error defense:

> Here, Defendant provides information that it purchases in bulk account receivables to be collected, and that the sellers provide computer generated data which includes a statutory accrual dates [*sic*] for the purposes of the statute of limitation calculations. [Declaration of Michael Beach, Def. Asset's Mot. for Summ. J., Ex. B]. The Defendant relies on this information when determining which debts are beyond the statute of limitations. [ Id.] The Defendants assert that these are reasonable precautions, and this Court agrees. **The FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution."** *Kort v. Diversified Collection Services*, 394 F.3d 530, 539 (7th Cir.2005). Accordingly, this Court finds that there is no genuine issue of material fact as to whether Defendant Asset merits the bona fide error defense. Defendant is protected on these facts by the bonafide error defense

*Charbonneau*, 611 F. Supp. 2d at 743 (emphasis added).

As in *Charbonneau*, Midland Funding and MCM receive information from sellers such as Dell and reasonably rely upon that information. (Ex. A at ¶¶ 4-5).

Brim's account was sold to Midland Funding by Dell Financial.  (*Id.* at ¶¶ 6 and 8). As part of that transaction, Dell provided certain information about Brim's account, including the balance due.  (*Id.* at ¶ 8).  Moreover, in the Purchase Agreement between Dell and Midland Funding, Dell represented that "[t]o the best of Seller's [*i.e.*, Dell's] knowledge, the Unpaid Balances of each Charged-off Account, as listed on Exhibit F, are accurate in all material respects."  (*Id.* ¶ 7).

## IV.   MCM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS (COUNTS THREE THROUGH SIX).

### A.   Because Plaintiff's Claims Are Based Entirely on MCM's Duties to CRAs Under FCRA § 1681s-2, They Are Preempted.

The FCRA includes two preemption provisions, § 1681h(e) and § 1681t(b). Brim has presented no basis for any of his claims other than credit information reporting to CRAs, and therefore § 1681t(b) applies rather than § 1681h(e).

Section 1681t(b) covers furnishers' reporting to CRAs:

> No requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … **section 1681s–2** of this title, relating to the **responsibilities of persons who furnish information to consumer reporting agencies** ….

15 U.S.C. § 1681t(b)(1)(F) (emphases added).  In fact, § 1681t(b) was added to the FCRA when Congress expanded the FCRA to include duties of furnishers and to establish a "national uniform standard" in the areas covered by the FCRA.  *See* Pub. L. No. 104-208 § 2419; S. Rep. No. 104-185 § 419.

Section 1681h(e), on the other hand, applies to other types of disclosures:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title ….

15 U.S.C. § 1681h(e).  The three sections covered by this preemption provision—

1681g, 1681h, and 1681m—regulate disclosures *to consumers* and duties of *users*

of information.  None of those sections concerns a furnisher's reporting *to CRAs*.

Judge Albritton in the Middle District of Alabama has explained the

application of these preemption provisions:

> The court finds there is no ambiguity in § 1681t(b)(1)(F) on its face. It does not allow for state law prohibitions or requirements which relate to the responsibilities of furnishers of information to consumer reporting agencies.  It appears to this court that § 1681h(e) should only be looked to to determine whether it conflicts with the plain language of § 1681t(b)(1)(F) if § 1681h(e) is otherwise applicable in the case. That is, this court should not undertake to resolve a theoretical conflict between statutes unless the statute which allegedly causes the conflict with the other, unambiguous, statute applies in the case.

> [Defendant] has argued that § 1681h(e) has no applicability in this case because [plaintiff]'s claims do not fall within the categories of actions identified in § 1681h(e).  As set out above, § 1681h(e) limits, with  exceptions, the scope of the immunity it provides to particular kinds of claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in  part on the report . . . ." Sections 1681g and 1681h of the FCRA set out requirements of consumer reporting agencies in their disclosures to consumers. Section 1681m, as well as the remaining language of 1681h(e), apply to users of information which take adverse action

> against the consumer. [Plaintiff] has not alleged that [defendant] is a consumer reporting agency or that it took adverse action against him. Accordingly, § 1681h(e) is not applicable to the facts of this case and the liability limitation, and exceptions thereto, likewise are not applicable.  Because those provisions do not apply, the court finds no conflict to be resolved with the plain language of § 1681t(b)(1)(F).

*Knudson*, 513 F. Supp. 2d at 1259-60.   The Court then concluded that the plaintiff's claims—"that [Defendant] has failed a duty to accurately report his account information, and refused to correct its reporting error"—concerned conduct regulated by § 1681s-2 and were preempted by § 1681t(b)(1)(F).  *Id.* at 1260.   Chief Judge Blackburn, Judge Coogler, and Judge Propst have followed Judge Albritton's rationale in *Knudson*.   Mem. Op. 8-12, *Kamawe v. Midland Credit Mgmt., Inc.*, No. 2:08-cv-01589-SLB (N.D. Ala. July 22, 2009); Corrected Mem. Op. 9-12, *Gravlee v. Midland Credit Mgmt., Inc.*, No. 7:08-cv-02228-LSC (N.D. Ala. Feb. 6, 2009); Mem. Op. 7-9, *Kennedy v. Midland Credit Mgmt., Inc.*, No. 4:08-cv-02334-RBP (N.D. Ala. Feb. 26, 2009).

Similarly, Brim's state law claims against MCM are based upon its reporting of information about Brim's debt to the CRAs.[5]  (Cite and quote complaint); (cite and quote Brim depo).   Consequently, these claims are preempted under § 1681t(b)(1)(F).

---

[5]  As noted above in section I, Brim may have intended to base his state law claims against Midland Funding on the small claims lawsuit filed against him.  If so, those claims are due to be dismissed for the reasons stated above.   The state law claims against MCM cannot be based on that lawsuit because MCM was not a party.  (Ex. H).

**B.      Even Under the *McCloud* approach, the State Law Claims Are Preempted Because Plaintiff Has Presented No Evidence of "Malice or Willful Intent."**

Your Honor has previously adopted the preemption analysis of *McCloud v. Homeside Lending*, 309 F.Supp.2d 1335, 1341 (N.D. Ala. 2004), rather than that in *Knudson*.   Mem. Op. 9-12, *Tucker v. Midland Credit Mgmt., Inc.*, No. 2:09-cv-0046-IPJ (N.D. Ala. Feb. 26, 2009).   The *McCloud* approach originated out of a perceived conflict between § 1681h(e) and § 1681t(b).   Based on the evidence in this case, there is ***no conflict*** in the application of these two provisions to the facts of this case, and the Court need not "reconcile" the two preemption provisions. Nonetheless, if the Court chooses not to adopt the *Knudson* approach again, Brim's state law claims are preempted even under the *McCloud* approach.

Under *McCloud*, state law "torts" are preempted unless "false information [was] furnished with malice *or willful intent to injure* [the] consumer."   309 F. Supp. 2d at 1342 (quoting 15 U.S.C. § 1681h(e)).   Brim's claim for *negligent* training and supervision (Count Five) should be dismissed because, "where there is a requirement of 'malice or willful intent to injure[,]' there is no cause of action for negligence."   *Id.* (quoting *Carlson v. Trans Union, LLC*, 259 F. Supp. 2d 517, 521 n. 1 (N.D. Tex. 2003)).   MCM is entitled to summary judgment on Brim's remaining state law claims because he cannot demonstrate that MCM acted willfully, much less with "malice or willful intent to injure" as required under

*McCloud*.  "The malice or willful intent to injure contemplated by § 1681h(e) requires 'a higher standard of proof than the willfulness required for punitive damages under § 1681n.'"  *Schaffhausen v. Bank of America, N.A.*, 393 F. Supp. 2d 853, 860 (D. Minn. 2005).  As discussed in section II above, Brim cannot satisfy the § 1681n standard, and therefore has not satisfied the § 1681h(e) standard.

## CONCLUSION

For the reasons stated above, the Court should grant summary judgment in favor of Midland Funding and MCM on all claims against them.

Respectfully submitted this 15th day of November, 2010.

 /s/ *Jason B. Tompkins*
One of the Attorneys for Defendants
Midland Funding, LLC and
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of November, 2010, I have filed the above and foregoing with the Clerk of the Court via the CM/ECF electronic filing system, which will send notification to all counsel of record listed below:

Penny Hays Cauley
HAYS CAULEY PC
P. O. Box 509
Darlington, SC 29540

Ronald C Sykstus
BOND BOTES SYKSTUS & LARSEN PC
415 Church Street, Suite 100
Huntsville, AL 35801


 /s/ *Jason B. Tompkins*
Of Counsel