FILED

2010 Dec-15  PM 05:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMON T. BRIM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** | ) | |
| **MANAGEMENT, INC. and** | ) | |
| **MIDLAND FUNDING, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RESPONSE OF DEFENDANTS MIDLAND FUNDING, LLC AND MIDLAND CREDIT MANAGEMENT, INC. TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Midland Funding, LLC ("Midland Funding") and Midland Credit Management, Inc. ("MCM") (collectively, "Midland") state as follows in response to Plaintiff's Motion for Partial Summary Judgment (doc. 27):

### INTRODUCTION

Plaintiff's motion for partial summary judgment does not ask this Court to adjudicate entire claims (with the sole exception of the defamation claim), but instead to declare that certain "facts" are not genuinely at issue:

- That MCM and Midland Funding are furnishers of information;

- That MCM and Midland Funding received five notices of dispute regarding Plaintiff's account;

1130242.2

- That the notices triggered obligations under section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA");

- That MCM and Midland Funding reported inaccurate information to consumer reporting agencies ("CRAs"); and

- That MCM and Midland Funding failed to conduct a reasonable investigation of the disputes.

Though some of the above "facts" are not in dispute as it relates to MCM, all such facts are in dispute as they relate to Midland Funding.  As noted in Midland's November 15, 2010 summary judgment brief,[1] Midland Funding is neither a furnisher of information nor a debt collector, and has no duties under the FCRA or FDCPA.

Some of the above "facts"—even as applied to MCM—are improper for partial summary judgment in Plaintiff's favor.  Plaintiff has not offered substantial evidence, let alone shown by a preponderance of the evidence, that MCM's investigation of Plaintiff's disputes was unreasonable.   Similarly, Plaintiff's defamation claim is preempted by the FCRA, even under the more favorable of two preemption provisions, which imposes upon him the burden to establish malice or willful intent to injure.  Plaintiff has made only conclusory allegations, none of which meets the substantial evidence test, let alone his burden to show malice or intent to injure by clear and convincing evidence.  Plaintiff's motion for

---

[1]  Midland incorporates its motion for summary judgment and supporting brief as if fully set forth herein.

partial summary judgment should be denied.  Any facts that are genuinely not in dispute can be handled through negotiated pre-trial stipulations.

## RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

1.     MCM and Midland Funding are affiliated companies, but MCM is not a wholly owned subsidiary of Midland Funding.  Plaintiff cites no evidence for that assertion.  It is undisputed that Midland Funding has no employees.  (Ex. B,[3] Deposition of Angelique Ross, at 7:22-24).

7.     Paragraph 7 is not a statement of fact, but instead a conclusion of law. The provisions of the FCRA governing investigations by furnishers of information speak for themselves.  Midland Funding is not a furnisher of information and therefore has no investigation responsibilities under the FCRA.  (*Id.* at 7:22-8:10).

13.     Midland is unsure what Plaintiff means by the statement that "MCM continually furnished the Plaintiff's account to consumer reporting agencies . . . until the account was deleted."  Midland does not dispute that MCM furnished information about Plaintiff's account to the CRAs on a monthly basis until September 9, 2010, when it requested that the CRAs delete the credit reporting of Plaintiff's account upon learning that Dell determined that Plaintiff's payment had

---

[2] Midland sets forth its disputes with Plaintiff's statement of facts that coincide with the numbered paragraphs in Plaintiff's brief

[3] All citations to exhibits refer to exhibits submitted on November 15, 2010 with Midland's motion for summary judgment.

been misapplied to another account.  (Ex. B at 115:4-19).  Every month since receiving Plaintiff's July 29, 2008 letter (through the request for deletion), MCM reported Plaintiff's account as "disputed."  (*Id.* at 72:12-17, 83:19-84:5, 101:1-3) (Ex. O, Monthly CRA Reporting).

15.     Midland does not dispute that Plaintiff sent a letter to MCM to which he attached a copy of the Redstone Statement.  (Ex. C at 58:6-10); (Ex. K, July 29, 2008 Letter).  Importantly, though, Midland disputes that the Redstone Statement "show[ed] the account was paid in full."  The Redstone Statement showed a payment to Dell in the amount of $954.12.  (Ex. C at 41:8-20, 49:7-14); (Ex. D, Redstone Federal Credit Union Statement for 10/13/04 – 11/12/04).  This amount differed from the balance of $1381.01 that was sold to Midland Funding by Dell. (Ex. A at ¶ 8).  The also amount differed from the charge for the goods, as reflected by the receipts (Ex. E) and a November 2004 account statement.  (Ex. F, November  10, 2004 Dell Account Statement) (showing "previous balance" as $934.78); (Ex. C at 29:7-32:17) (testifying that amount of "previous balance" is the same as receipts for the purchase).

16.     The July 29, 2008 letter was received by the Consumer Relations department, not the legal department.  (Ex. B at 64:13-19).

19.     MCM did not contact Dell during its investigation of each ACDV, but MCM relied on information provided by Dell contemporaneously with the sale of Plaintiff's account.  (Ex. A at ¶ 8).

20.     Midland disputes that it "told the Plaintiff to send a bank statement showing the payment."  The only documented phone conversation between MCM and Plaintiff was a call Plaintiff placed to MCM on March 11, 2009.  (Ex. B at 69:6-10) (Ex. M).  At that time, Plaintiff already had sent the Redstone Statement, and there is no indication that MCM requested the Redstone Statement or otherwise suggested to Plaintiff that the Redstone Statement was adequate proof of payment in full of the debt at issue.  (*Id.* at 72:1-11).

21.     Midland does not dispute that MCM never requested additional documentation from Plaintiff.  (Ex. B. at 65:8-17).  Dell, on the other hand, requested additional documentation after Plaintiff sent Dell the Redstone Statement.  (Ex. C at 46:7-48:22); (Ex. G) (stating that a "transactional detail report" was necessary to prove prior payment of the account).

24.     Midland disputes that "[n]o investigation is performed"  and that the batch interface system does nothing more than match records.  The batch interface system compares the information and dispute codes provided by the CRAs with information within MCM's system.  (Ex. B at 21:16-23:15).  If an account has certain codes in MCM's system (for example, if Plaintiff's account had been coded

to reflect that he provided sufficient proof of prior payment), MCM's system flags the ACDV for manual review or automatically deletes the account in response to the ACDV.  (*Id.* at 23:10-24:24, 41:6-42:16, 78:23-79:1).

26.   Midland deleted Plaintiff's account on September 9, 2010.  (Ex. B at 115:4-19).

29.   Midland does not dispute that the batch interface system, and not an individual, processed the ACDVs.  An employee did review Plaintiff's dispute letter sent directly to MCM and determined that the Redstone Statement was insufficient proof.  (Ex. B at 64:13-67:7).

35.   Midland did receive information about Plaintiff's account when Dell sold it to Midland Funding (Ex. A at ¶¶ 6 and 8), but it is undisputed that Midland did not receive from Dell media such as account statements or credit application.

36.   Midland does not dispute that it accepted Dell's representation in August 2010 that it had determined Plaintiff paid the account in November 2004 (Ex. B at 116:20-23), just as Midland accepted Dell's representation in October 2007 that the account balance was accurate and payable.  (Ex. A at ¶¶ 6-8).

## STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS

1.   Plaintiff purchased a computer and surge protector from Dell in September or October of 2004 using a line of credit from Dell Financial ("Dell"). (Compl. ¶ 7); (Ex. C, Deposition of Jamon Brim, at 15:15-27:5).  Receipts for

Plaintiff's purchases show charges of $914.25 and $20.53, for a total of $934.78. (Ex. E, Dell Receipts); (Ex. C at 25:9-26:2, 27:13-28:13, 32:10-11).

2.     Several months after the purchase, Plaintiff received account statements from Dell indicating a balance due.  (Ex. C at 33:21-34:16).  Plaintiff then complained to Dell several times by phone or in writing that he had already paid off the account.  (*Id.* at 34:17-36:19).  Plaintiff sent Dell a copy of a bank statement for the period 10/13/04 – 11/12/04 from Redstone Federal Credit Union ("Redstone Statement") showing a payment to Dell in the amount of $954.12.  (Ex. C at 41:8-20, 49:7-14); (Ex. D, Redstone Federal Credit Union Statement for 10/13/04 – 11/12/04).  This amount differed from the charge for the goods, as reflected by the receipts (Ex. E) and a November 2004 account statement.  (Ex. F, November  10, 2004 Dell Account Statement) (showing "previous balance" as $934.78); (Ex. C at 29:7-32:17) (testifying that amount of "previous balance" is the same as receipts for the purchase).

3.     In October 2005, Plaintiff filed a complaint against Dell with the Better Business Bureau ("BBB").  (Ex. C at 39:7-40:12, 42:21-43:14); (Ex. G, BBB Complaint Activity Report).  Dell responded, and the BBB conveyed to Plaintiff, that a "transactional detail report" was necessary to prove prior payment of the account.  (Ex. C at 46:7-48:22); (Ex. G).  Plaintiff did not provide Dell anything other than the Redstone Statement.  (Ex. C at 49:15-50:8).

4.     On October 10, 2007, Midland Funding purchased a portfolio of accounts from Dell.  (Ex. A at ¶ 6).  Dell provided information about each account to Midland Funding, including the unpaid balance.  (*Id.* at ¶ 8).  Dell represented that it had "the right to convey good and marketable title to each Charged-off Account to be sold hereunder and each such Charged-off Account shall be transferred free and clear of any lien or encumbrance" and "the Unpaid Balances of each Charged-off Account . . . are accurate in all material respects."  (*Id.* at ¶ 7). The unpaid balance of Plaintiff's account was listed as $1381.01.  (*Id.* at ¶ 8).

5.     On July 29, 2008, Plaintiff sent a letter to MCM stating that he had already paid the debt to Dell.  (Ex. C at 58:6-10); (Ex. K, July 29, 2008 Letter).  He attached to the letter the exact same Redstone Statement that he had previously sent to Dell.  (Ex. K).  The entry purportedly showing a payment to Dell of $954.12 differed from the unpaid balance of $1381.01 sold to Midland Funding by Dell.  (Ex. A at ¶ 8).  Plaintiff also demanded that MCM "not contact [him] again by phone or in writing."  (Ex. K); (Ex. C at 60:12-18).  An MCM employee reviewed Plaintiff's letter and the Redstone Statement and, in accordance with MCM's procedures for handling a consumer's claim that he previously paid the debt, determined that the Redstone Statement was not sufficient proof because it was not accompanied by a settlement offer letter of the same amount or a paid-in-full letter.  (Ex. B. at 64:13-67:7).  In addition, based on Plaintiff's cease and desist

demand, his account was coded to indicate that he wanted no further contact, (Ex. B at 26:23-27:3) (stating at "026" code indicates no further contact); (*see* Ex. M, Collection Detail) (reflecting "026" code).  MCM did not contact Plaintiff again. (Ex. B at 65:8-17).

6.     On March 10, 2009, Plaintiff sent another letter to MCM stating that he had already paid the debt to Dell.  (Ex. C at 61:19-21) (Ex. N, March 10, 2009 Letter to MCM).   He again attached to the letter the exact same Redstone Statement that he had previously sent to both Dell and Midland.  (Ex. C at 65:23-66:16).  Plaintiff again demanded that MCM "not contact [him] again by phone or in writing."  (Ex. N).

7.     The CRAs electronically transmit disputes to MCM through third-party software called "E-Oscar."  (Ex. B at 21:21-24).  MCM receives the dispute through E-Oscar on an electronic dispute form, prepared by the CRAs, referred to as an "Automated Credit Dispute Verification" ("ACDV").  (*Id.* at 57:18-20).

8.     MCM uses a "batch interface system" to conduct the majority of investigations by comparing the information found in the ACDVs to its own internal account information.  (*Id.* at 21:16-23:15).  MCM's investigation cannot be completed through the batch interface system for some disputes, and in those cases, the ACDVs are reviewed and processed manually.  (*Id.* at 22:17-23:18).

9.     MCM received ACDVs regarding Plaintiff's account on or around August 6, 2008, August 12, 2008, and March 11, 2009.  (Ex. B at 78:12-15, 80:13-15, and 80:22-24); (Ex. M).  Each of the ACDVs was processed by the batch interface system, and MCM directed the CRAs to mark the account as "disputed." (Ex. B at 82:13-17).

10.     On February 24, 2010, Plaintiff filed this action against Midland Funding, MCM, and Dell.  (*See generally* Complaint).  In August 2010, Plaintiff finally requested tracking information from Redstone Federal Credit Union for the payment he allegedly made to Dell.  (Ex. C at 125:22-127:9); (Ex. P, August 2010 Transactional Report).  Using the information provided by the credit union, Dell determined that Plaintiff's November 2004 payment had been applied to another customer's account.  (Ex. B at 116:20-23); (Ex. C at 123:23-124:7, 125:2-129:10). Upon learning of this information, MCM requested that the CRAs delete the credit reporting of Plaintiff's account on September 9, 2010.  (Ex. B at 115:4-19).

## ARGUMENT AND AUTHORITIES

## I.     PLAINTIFF'S REQUESTS FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN FACTS.

Plaintiff does not request summary judgment on his FCRA count, but instead requests that the Court "make decisions on specific, undisputed facts as opposed to entire claims."  (Pl.'s Br. 8).  Plaintiff asks the Court to enter an order

identifying "what material facts are not genuinely at issue." (*Id.*) Assuming *arguendo* that this request is procedurally proper, such an order is unnecessary. The same facts are disputed as to Midland Funding, which itself is due summary judgment on all claims because it did not engage in any of the conduct complained of. (*See* Midland's Mot. for Summ. J. & Br. in Support of Mot. for Summ. J.)

**A.**  **Midland Does Not Dispute That MCM Is a Furnisher of Information, That It Received Disputes from CRAs Regarding Plaintiff's Account, and That CRA Dispute Notices Trigger Section 1681s-2(b), but Midland Does Dispute These Same Facts As Applied to Midland Funding.**

Plaintiff requests "partial summary judgment finding that Defendants are furnishers of credit information and that the Defendants received five notices of dispute from the CRAs regarding the Plaintiff triggering the Defendants' obligations under 1681s-2(b)." (Pl.'s Br. 10). Midland does not dispute that the CRAs sent ACDVs via E-Oscar that were received and processed by MCM's batch interface system. As discussed in section I.C. below, Plaintiff suggests that the batch interface system is not a "person" as defined by the FCRA and therefore MCM performed "no investigation." Plaintiff cannot have it both ways: if MCM performed "no investigation" because the investigation was performed by the batch interface system, then MCM also did not furnish information to the CRAs or receive any notices of dispute; those actions also were performed by the batch interface system.

If, on the other hand, Plaintiff concedes that MCM's investigation via the batch interface system was *an* investigation,[4] then MCM does not dispute that it is a furnisher of information, that it received from the CRAs five notices of dispute regarding Plaintiff's account, and that such notices from the CRAs trigger certain provisions of section 1681s-2(b) of the FCRA.

Midland Funding, on the other hand, is not a furnisher of information and has no obligations under section 1681s-2(b) of the FCRA.  Without any citation, Plaintiff states that "the *Defendants* admit that they are furnishers of credit information under the FCRA."  (Pl.'s Br. 8) (emphasis added).  In the remainder of that argument, Plaintiff cites testimony regarding MCM, but does not even mention Midland Funding again.  Plaintiff's motion should be denied as to Midland Funding.  It is undisputed that Midland Funding is not a furnisher of information and does not engage in collection or reporting activities.  (Ex. B at 7:22-8:10).  All employees who have responsibility with respect to collecting on accounts or handling disputes from the CRAs are employed by MCM, not Midland Funding.  (*Id.* at 8:6-10).

---

[4] To say nothing of whether the investigation was "reasonable" or not.

**B.    Midland Does Not Dispute That the Information MCM Furnished to the CRAs Was Determined to be Inaccurate When Dell Discovered It Had Misapplied Plaintiff's Payment.**

Plaintiff next asks this Court to "enter partial summary judgment finding that the information reported by the Defendants to third parties, the CRAs, was inaccurate."  (Pl.'s Br. 12).   It is Plaintiff's burden of proof to demonstrate inaccuracy of information MCM furnished to the CRAs, and Plaintiff has not offered such proof.  Midland does not dispute that Dell represented to Midland that it discovered in August 2010, based on information recently provided to Dell by Plaintiff for the first time, that Dell had misapplied a payment from Plaintiff in 2004.  Midland accepted that representation and requested that the CRAs delete reporting of the account shortly thereafter.  (Ex. B at 115:4-19).

Again, Midland Funding did not furnish any information to the CRAs.  (Ex. B at 8:6-10), and Plaintiff is not entitled to the requested  partial summary judgment on any factual allegations against Midland Funding.

**C.    Plaintiff Has Not Established That MCM's Investigation Was "Unreasonable" as a Matter of Law.**

Plaintiff requests partial summary judgment "finding that the Defendants failed to conduct a reasonable investigation as required by the FCRA."  (Pl.'s Br. 18).   Plaintiff has not offered any evidence, let alone established by a preponderance of the evidence, that MCM's procedures are unreasonable.  "An FCRA plaintiff 'cannot rest on a showing of mere inaccuracy, shifting to the

defendant the burden of proof on the reasonableness of procedures for ensuring accuracy.'"  *Podell v. Citicorp Diners Club*, 914 F. Supp. 1025, 1032 (S.D.N.Y. 1996) (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984)). Rather, it is Plaintiff's burden to prove that MCM acted unreasonably under the circumstances.  *Id.*  Plaintiff has introduced absolutely no evidence regarding the applicable standard of care or reasonableness under the circumstances.  Plaintiff merely contends, without support, that MCM's automated batch interface system is *per se* unreasonable.[5]

Plaintiff cites to two cases which he argues support this Court determining, on summary judgment, that MCM's investigation was unreasonable.  Neither case supports such a determination.  Plaintiff significantly mischaracterizes the holding of *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004).  Plaintiff states that the Fourth Circuit "determined . . . that [the furnisher's] investigation was unreasonable and granted summary judgment for the Plaintiff's FCRA claim." (Pl.'s Br. 16).  *Johnson* was an appeal from a jury verdict; there is no indication in the case that the plaintiff ever filed a motion for summary judgment, much less that

---

[5] Plaintiff argues that MCM conducted "no investigation" at all because a computer is not a "person" as defined by the FCRA.  This argument is as unavailing as it is absurd.  The batch interface programming is a tool that MCM uses to process voluminous disputes and perform investigations for many of them.  *County Vanlines, Inc. v. Experian Information Solutions, Inc.*, 317 F. Supp. 2d 383, 396 (S.D.N.Y. 2004) ("the computer-matching system merely is a tool that defendant uses in its work").  According to Plaintiff's logic—that there is some legal distinction between MCM and its computer system—all of his claims would fail because it was not a human MCM employee that furnished information to the CRAs; but rather a computer response.

it was granted by any court.  Given the standard of review of a jury verdict, the Fourth Circuit simply held that a jury reasonably could have concluded that the furnisher acted unreasonably under the particular facts of that case.  *Johnson*, 357 F.3d at 431.  The Fourth Circuit did not, as Plaintiff argues, conclude that the investigation was unreasonable as a matter of law.  At most, *Johnson* supports denial of Plaintiff's motion for partial summary judgment in favor of submitting the question of reasonableness to the jury.

Plaintiff's description of *Robertson v. J.C. Penney Co.*, 2008 WL 623397 (S.D. Miss. Mar. 4, 2008), is similarly incomplete.  There were two facts important to that case that distinguish it from this one: (1) the dispute was sent directly to the creditor; and (2) the creditor's records reflected payment in full.   In *Robertson*, after receiving a call from GE, who had acquired the plaintiff's credit card account, the plaintiff actually paid the entire balance owed.  *Robertson*, 2008 WL 623397, at *1.  Information about the payment was entered into GE's account records.  *Id.* Several months later, when the plaintiff realized the account was still listed on her credit reports, she sent a letter to the CRAs, a debt collector, and GE (the creditor/furnisher).  *Id.* at *3.  The district court granted the plaintiff's motion for summary judgment on negligent FCRA violation because the GE responded to ACDVs it subsequently received from the CRAs by stating that the account was properly charged off for nonpayment, despite "**that GE's own computer records .**

**. . show that the [plaintiff] paid the account in full by telephone**." *Id.* at 8 (emphasis added).

In contrast to *Robertson*, nothing in MCM's records showed that Plaintiff had paid the account in full to Dell.  Even Dell's records at that time reflected no payment because Dell did not discover that Plaintiff's payment had been misapplied until August 2010 (Ex. B at 116:20-23); (Ex. C at 123:23-124:7, 125:2-129:10).  If Dell—the company to which Plaintiff paid the debt—did not have information "to clearly verify" that Plaintiff paid the debt, MCM certainly did not.

Moreover, unlike the facts in *Johnson*, MCM's automated batch interface system, which examined information and coding in MCM's records, would have deleted the account (or at least triggered further review) if Plaintiff had submitted sufficient proof that he previously paid the debt.  Instead, Plaintiff repeatedly tried to submit the same Redstone Statement, which did not identify a specific Dell account, which differed from the balance represented by Dell, and which Dell itself had previously rejected as insufficient proof of payment.

The undisputed evidence indicates that, at the time MCM received disputes from the CRAs, the only documentation (other than identifying information such as driver's license and Social Security number) Plaintiff had ever sent MCM was the Redstone Statement.  (Ex. B at 65:23-66:16, 127:10-15).  An MCM employee had received the Redstone Statement upon Plaintiff's first correspondence directly

to MCM and documented that it was not sufficient proof.  (*Id.* at 64:13-67:7); (*accord* Ex. B at 40:1-6) ("Q. Is a bank statement showing payment to the original creditor sufficient proof that the account had been paid prior?  A.  No.  Q.  Never?  A. Not by itself, no.").  MCM did not contact Plaintiff at any time because he requested no further communication.  (Ex. B at 65:8-17).

MCM's computer system compares the dispute codes provided by the CRAs with information within MCM's system.  (*Id.* at 21:16-23:15).  If Plaintiff's account had been coded to reflect that he provided sufficient proof of prior payment, MCM's system would have either flagged the ACDV for manual review or automatically deleted the account in response to the ACDVs.  (Ex. B at 23:10-24:24, 41:6-42:16, 78:23-79:1).  Because Plaintiff had not provided sufficient proof that he had paid Dell, his account was not coded in such a way that manual review or deletion occurred.  (*Id.* at 78:1-8); (Ex. M).

In *Nelson v. American Express Travel Related Servs.*, 2009 U.S. Dist. LEXIS 129787 (N.D. Ala. June 17, 2009), the plaintiff sent a dispute with documentation he alleged showed that the account had been charged off by the creditor.  Experian determined that the documents did not demonstrate a charge off.  More than a year later, the plaintiff sent another dispute to Experian and attached the same supporting documentation.  Judge Hancock granted summary judgment for Experian, holding that it acted reasonably with respect to the disputes

and was not required to repeat investigation of a second identical dispute from the plaintiff unless he provided additional evidence of inaccuracy. *Id.* at *41. The same rule has been applied to furnishers. *See, e.g.*, *Drew v. Equifax Info. Servs., LLC*, No. C07-00726-SI, 2010 WL 1136434, at *2 (N.D. Cal. Mar. 20, 2010) ("Section 1681s-2(b)(1) does not require banks to repeat earlier investigations if they do not have new information or reason to doubt the result of the earlier investigation."). This is consistent with guidance that the FTC has given regarding CRAs' analogous obligation to perform reasonable reinvestigations:

> In reinvestigating and attempting to verify a disputed credit transaction, a consumer reporting agency may rely on the accuracy of a creditor's ledger sheets and need not require the creditor to produce documentation such as the actual signed sales slips.

*Nelson*, 2009 U.S. Dist. LEXIS 129787 at *34 (quoting FTC Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18823).

At the time of Plaintiff's disputes in 2008 and 2009, Dell had not yet discovered that Plaintiff's payment had been applied to another customer's account. Thus, even if MCM had contacted Dell in 2008 or 2009 – as Plaintiff apparently contends it should have (*see* Ex. C at 148:11-22) – the results of MCM's investigation would have been the same. Plaintiff had submitted his bank statement to Dell several times before, and Dell had subsequently sold the account to Midland Funding with a representation that the unpaid balance was accurate; in fact, it was not until August 2010, six months after he filed this lawsuit, that

Plaintiff finally requested and obtained the information from his credit union that Dell had sought from the time of Plaintiff's first dispute. (*Id.* at 126:9-129:10); (Ex. P). That report enabled Dell to track the payment. (Ex. C at 124:4-10). Consequently, until August 2010, Dell maintained that it had no record of payment on Plaintiff's account. (Ex. C at 123:23-124:16). Any contact with Dell in response to Plaintiff's disputes in July 2008 and March 2009 would have resulted in the same response: that Plaintiff had not paid his Dell account. Plaintiff is not entitled to summary judgment declaring MCM's investigation unreasonable.

## II.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS DEFAMATION CLAIM BECAUSE THE CLAIM IS PREEMPTED BY THE FCRA.

As Midland explained in its own summary judgment brief (at pp. 25), which it incorporates in response to Plaintiff's motion for partial summary judgment, the FCRA includes two preemption provisions, § 1681h(e) and § 1681t(b), either one of which preempts Plaintiff's defamation claim. Plaintiff's summary judgment brief confirms that his defamation claim against MCM is based upon its reporting of information about Plaintiff's debt to the CRAs. (Pl.'s Br. 13); (Compl. ¶¶ 42-45, 50, 52); (Ex. C at 118:18-119:22). Consequently, the preemption provisions would apply.

Plaintiff cites a case from 1909, *Ferdon v. Dickens*, 161 Ala. 181 (Ala. 1909), to argue that MCM's furnishing of information to the CRAs was libelous

per se. (Pl.'s Br. 12-13). Even though this case came decades before the FCRA was enacted, the case explained the application of absolute and qualified privileges as complete defenses. According to a recent decision by Judge Hancock, "Section 1681h(e) is recognized as providing exactly that type of qualified privilege for consumer reporting agencies where there is no evidence of willfulness." *Nelson*, 2009 U.S. Dist. LEXIS 129787, at *51. Thus, the plaintiff "bears the burden of proving common law actual malice 'by adducing evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like.'" *Id.* at *52 (citing *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1095 (Ala. 1988)). Judge Hancock rejected the plaintiff's arguments that willfulness was proven by "demonstrably false" credit reports, plaintiff's repeated efforts to alert the defendant of such falsity, and that the defendant did not conduct an investigation in response to a repeat dispute. *Id.*

These are the same arguments that Plaintiff argues entitle him to summary judgment in the case before this Court:  MCM's receipt of "multiple notifications," receipt of the Redstone Statement, and failure to contact Dell or Redstone Federal Credit Union. (*See* Pl.'s Br. 14). These facts are not evidence of malice, and therefore Plaintiff's defamation claim is preempted and/or subject to privilege. *See also Bloom v. I.C. System, Inc.*, 753 F. Supp. 314, 317 (D. Or. 1990) (granting summary judgment because plaintiff "cannot prove that [furnisher] acted with

malice or willful intent to injure" where furnisher informed CRAs debt was disputed); (*compare* Ex. B. at 72:12-17, 83:19-84:5, 101:1-3) (Ex. O, Monthly CRA Reporting) (showing that every month since receiving Plaintiff's July 29, 2008 letter, MCM reported Plaintiff's account as "disputed").  The Court should deny Plaintiff's motion for partial summary judgment on this claim.

## CONCLUSION

For the reasons stated above, this Court should deny Plaintiff's motion for partial summary judgment.

Respectfully submitted this 15th day of December, 2010.


/s/  Jason B. Tompkins
One of the Attorneys for Defendants
Midland Funding, LLC and
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of December, 2010, I have filed the above and foregoing with the Clerk of the Court via the CM/ECF electronic filing system, which will send notification to all counsel of record listed below:

Penny Hays Cauley
HAYS CAULEY PC
P. O. Box 509
Darlington, SC 29540

Ronald C Sykstus
BOND BOTES SYKSTUS & LARSEN PC
415 Church Street, Suite 100
Huntsville, AL 35801

/s/ Jason B. Tompkins
Of Counsel