# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMON T. BRIM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** ) | |
| **MANAGEMENT, INC. and** ) | |
| **MIDLAND FUNDING, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## REPLY TO PLAINTIFF'S OPPOSITION TO
## DEFEDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("Midland Funding") (collectively, "Midland") reply to Plaintiff's opposition to Defendants' motion for summary judgment as follows:

### INTRODUCTION

Plaintiff's opposition is an enthymematical syllogism which assumes—without any supporting evidence or case law—that an automated investigation is no investigation at all. This erroneous assumption, which Plaintiff treats as established "fact," not only is unsupported by the law but also is contradicted by undisputed evidence in this case. MCM *did* perform an investigation. Plaintiff may contend that this investigation was unreasonable (albeit without supporting evidence or case law), but Plaintiff cannot rewrite the facts of this case simply because the true facts lead to inescapable and unfavorable legal consequences.

1131510.3

Furthermore, the case law cited by Plaintiff in support of his positions, which is frequently cited for nothing more than the unremarkable proposition that an unreasonable investigation violates the FCRA, does not support that Plaintiff's claim for willful violation of the FCRA should survive summary judgment. In some instances, Plaintiff's case law actually supports the *opposite* conclusion.[1]

## RESPONSE TO PLAINTIFF'S STATEMENT OF ALLEGEDLY UNDISPUTED FACTS[2]

Many of Plaintiff's alleged undisputed facts—under "Plaintiff's Statement of Undisputed Facts" and throughout the brief—stretch the cited evidence:

| Plaintiff's Statement | What the Cited Evidence Says |
| --- | --- |
| "4. Dell told the Plaintiff to send a bank statement to confirm that the account had been paid. (Brim. Depo., p. 35)." (Pl.'s Resp. 2). | The cited testimony merely reflects Plaintiff's contention that Dell asked him to "[s]end a receipt or send them, I think, a statement. Bank statement." (Ex. C at 35:11-12). |
| "No documents are reviewed. No investigation is performed. The computer simply determines whether the information provided on the ACDV matches the Defendants' records. (Ross Depo., p. 79, 81)." (Pl.'s Resp. 5-6). | The testimony reflects that, although the batch interface system itself does not review documents, if "a review of the documents [was] happening at that time, there would have been specific codes that the system could have recognized." (Ex. B at 78:23-79:1). |

---

[1] In his response, Plaintiff concedes that summary judgment is proper with respect to all claims against Midland Funding and with respect to the FDCPA claim against MCM.

[2] Plaintiff did not respond to the Statement of Undisputed Material Facts included in Midland's initial brief, and therefore the Court should consider those facts undisputed. Fed. R. Civ. P. 56(e)(2); *accord Patton v. City of Hapeville*, 162 F. App'x 895, 896 (11th Cir. 2006) ("[T]he district court properly held that the defendants' statement of undisputed facts filed with their motion for summary judgment were admitted when [the non-movant] failed to respond to the statement of facts in accordance with the Federal Rules of Civil Procedure . . .").

| **Plaintiff's Statement** | **What the Cited Evidence Says** |
|---|---|
| "The Defendants' representative, Ross, admitted that no employee, i.e. person, ever actually performed any investigation into the Plaintiff's disputes. (Ross Depo., p. 81)." (Pl.'s Resp. 6). | Ms. Ross was discussing a specific ACDV. Though the batch interface system processed the dispute (Ex. B at 81:2-4), an MCM employee had previously examined Plaintiff's dispute directly to MCM, including the Redstone Statement. (*Id.* at 64:13-67:7). |

Other facts alleged to be undisputed by Plaintiff are flatly contradicted by the evidence:

| **Plaintiff's Statement** | **Conflicting Evidence** |
|---|---|
| "7. The Plaintiff's bank told him that a transactional detail report was no different than a bank statement . . . . (Brim Depo, p. 50)." (Pl.'s Resp. 2). | "The bank stated they did not know what a transactional detail report was." (Ex. G). |
| "8. MCM told the Plaintiff to send them a bank statement. (Brim Depo., p. 60)." (Pl.'s Resp. 2).<br><br>"10. MCM never asked the Plaintiff to send anything other than a bank statement. (Brim Depo., p. 66-67)." (Pl.'s Resp. 2-3). | The only documented phone conversation between MCM and Plaintiff was a call Plaintiff placed to MCM on March 11, 2009. (Ex. B at 69:6-10); (Ex. M). At that time, Plaintiff already had sent the Redstone Statement, and there is no indication that MCM requested the Redstone Statement or otherwise suggested to Plaintiff that the Redstone Statement was adequate proof of payment in full of the debt at issue. (Ex. B at 72:1-11). |
| "No other investigation or review was ever performed by the Defendants." (Pl.'s Resp. 6). | An MCM employee reviewed a dispute Plaintiff sent directly to MCM and determined that the Redstone Statement was insufficient proof. (Ex. B at 64:13-67:7). |

## ARGUMENT AND AUTHORITIES

**I.   MCM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR WILLFUL VIOLATION OF THE FCRA BECAUSE PLAINTIFF HAS PRESENTED NO EVIDENCE OF A CONSCIOUS DISREGARD OF PLAINTIFF'S RIGHTS.**

Plaintiff's entire argument rests upon the false premise that MCM conducted "no investigation" at all regarding Plaintiff's dispute. There is no dispute, though, that MCM used its batch interface system to conduct an investigation similar in scope to investigations that have been held both reasonable and devoid of any conscious disregard for purposes of willful violation of the FCRA.

After making much of the rule that "recklessness" can satisfy the "conscious disregard" standard for willfulness (a distinction without a difference in this case), Plaintiff utterly fails to set forth any evidence that MCM consciously disregarded his rights under the FCRA. Though recklessness may indeed show a "conscious disregard," it is still a demanding standard. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007) ("Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). To satisfy the standard, Plaintiff must offer "evidence, beyond his belief at deposition, . . . that [the] furnisher's investigation was unreasonable." *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1270 (S.D. Fla. 2009).

In the *Rambarran* case, the furnisher's own records reflected that the plaintiff's account was paid in full, and the furnisher had twice confirmed to the plaintiff in writing that his account was paid, yet his credit report continued to show a charged-off account. The furnisher responded to disputes from the CRAs by verifying the existence of a charged-off account. Notwithstanding this evidence, the court held that "a factfinder could not reasonably infer that [the furnisher's] mistaken verification of Plaintiff's charged off account was willful or reckless, as opposed to merely negligent." *Rambarran*, 609 F. Supp. 2d at 1270 (granting summary judgment for furnisher). There was no evidence in the record to support a degree of liability beyond negligence, such as "(1) committing an FCRA violation that amounts to more than 'an isolated instance of human error which was properly cured'; (2) engaging in misrepresentation or concealment; or (3) failing to follow its own FCRA reinvestigation procedures." *Id.* at 1272. *Cf. Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1139-40 (D. Nev. 2008) (denying summary judgment because plaintiff had met his burden by showing that, after expressly acknowledging in writing that it had erroneously misapplied the plaintiff's payment, the furnisher continuously refused to correct its own error because the plaintiff had another loan that was delinquent.).

In the case before this Court, Plaintiff does not offer *any* evidence that MCM concealed information, deviated from its own procedures, or refused to correct an

1131510.3

5

admitted error. Rather, Plaintiff repeatedly asserts, as if it is beyond contention, that MCM performed "no investigation" because MCM's batch interface system "simply matched the information in the computer to the information received in the ACDVs." (Pl.'s Resp. 6).[3] Under Plaintiff's theory, use of the batch interface system would be a *per se* willful violation of the FCRA in every instance. In apparent support of his theory, Plaintiff cites cases for the generic (and unpersuasive) propositions that "failure to conduct a reasonable investigation is a violation of the FCRA" (Pl.'s Resp. 6) and "the FCRA clearly requires a furnisher of credit information to conduct a reasonable investigation." (*Id.* at 8). These cases do not support the contention that MCM acted unreasonably, much less with conscious disregard.

For example, Plaintiff cites *Agostinho* twice for such a generic conclusion. (*See* Pl.'s Resp. 6, 8). *Agostinho* simply held that an allegation that "Citibank did not discover a glaring error in the information it furnished to CRAs" was sufficient to survive a Rule 12(b)(6) motion to dismiss. *Agostinho v. Capital One Servs.*, 2007 U.S. Dist. LEXIS 52953, at *6 (S.D. Fla. July 23, 2007). The *Johnson* decision, which Plaintiff likewise relies upon in apparent support for his

---

[3] This characterization of the function performed by the batch interface system is misleading. The batch interface system compares the information and dispute codes provided by the CRAs with information in MCM's system. (Ex. B at 21:16-23:15). If Plaintiff's account had been coded to reflect that he provided sufficient proof of prior payment, MCM's system flags the ACDV for manual review or automatically deletes the account in response to the ACDV. (*Id.* at 23:10-24:24, 41:6-42:16, 78:23-79:1).

willfulness claim, was an appeal from a jury verdict (not summary judgment for plaintiff) on a *negligence* claim. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429 (4th Cir. 2004). There is no indication that the plaintiff in *Johnson* even alleged willfulness. Moreover, contending that MCM's system is "unreasonable" does not establish willfulness. *See Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1116 (D. Minn. 2004) ("Here, plaintiff simply alleges that defendants procedures were unreasonable and therefore violated the Act. Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute.").

Plaintiff also cites *Robertson v. J.C. Penney Co., Inc.*, 2008 U.S. Dist. LEXIS 17159 (S.D. Miss. Mar. 4, 2008), for the contention that "[c]ourts have repeatedly held that a reasonable investigation requires more than simply looking at the information provided in the furnisher's computer systems, especially when other documents are available for review." (Pl.'s Resp. 6). Plaintiff's suggestion that MCM did not review other documents is insincere. Prior to receiving any dispute from a CRA, MCM received Plaintiff's Redstone Statement directly from him. (Ex. B. at 64:13-67:7). An employee reviewed that statement and properly determined pursuant to MCM's procedures that it was insufficient proof of prior payment without a paid-in-full letter or other corroborating evidence that the payment was for this particular debt and satisfied the debt in full. (*Id.*) In any

event, *Robertson* **denied a plaintiff's motion for summary judgment** on willfulness because the plaintiff failed to carry his burden of proof.  The district court granted the plaintiff's motion for summary judgment on negligent FCRA violation only because GE (the furnisher) responded to ACDVs from the CRAs by stating that the account was properly charged off for nonpayment, despite "that GE's own computer records . . . show that the [plaintiff] paid the account in full by telephone."  *Id.* at 8 (emphasis added).  Even these facts—where the furnisher's own records reflected payment in full yet the furnisher continued to report the account (facts which are clearly distinguishable from the instant case)—did not rise to the level of willfulness.

Plaintiff also attempts to artificially confine this case to a vacuum in which he can ignore his own failure to provide Dell—the only party in a position to confirm Plaintiff's alleged payment—with the proper documentation.  (Pl.'s Resp. 8).  Plaintiff argues that because MCM never actually contacted Dell any request Dell made "is completely irrelevant" to MCM's liability.  (Pl.'s Resp. 8).  This ignores a basic element of any FCRA claim:  **causation**.  "[T]o carry his burden, the plaintiff had to demonstrate some causal relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account.  We hold that plaintiffs suing furnishers under § 1681s-2(b) must make the same showing . . . ."  *Chiang v. Verizon New England, Inc.*, 595 F.3d 26,

37 (1st Cir. 2010).  Thus, the fact that Dell had not discovered its misapplication of funds at the time of Plaintiff's disputes to MCM negates the contention that MCM's investigation, even if unreasonable, was the cause of any failure to discover inaccuracies.  *See id.*

In the end, Plaintiff's musings about the reasonableness of MCM's investigation are a red herring.  Even if MCM's investigation was unreasonable—even if MCM performed no investigation, as Plaintiff repeatedly alleges without support—it is irrelevant to this case.  Plaintiff's complaint did not allege negligent violation of the FCRA, as evidenced by his requested relief under section 1681n (willfulness), but not under section 1681o (negligence).  (Compl., p. 15).  The only FCRA claim is for willful violation, and as discussed above unreasonableness alone does not rise to the level of willfulness.

## II. PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED BY THE FCRA.

Plaintiff argues that because a conflict exists between the two preemption provisions of the FCRA—§ 1681h(e) and § 1681t—the court must apply § 1681h(e) to common law claims.  Plaintiff then suggests, however, that his claims do not fall within the terms of § 1681h(e) and therefore are not preempted.  This is the ultimate "heads I win, tails you lose" argument.  If § 1681h(e) does not apply to Plaintiff's claims, then no conflict exists, and § 1681t applies on its face to

preempt Plaintiff's claims. (*See* Midland's Summ. J. Br. 21-23) (quoting *Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1256 (M.D. Ala. 2007)).

If, however, the Court concludes that a conflict between § 1681h(e) and § 1681t does exist, it should adopt the *McCloud* approach as it has previously done. Under this approach, Plaintiff's state law claims are preempted unless he demonstrates that Midland acted with malice or intent to injure. As discussed above, Plaintiff has not satisfied the less demanding "willfulness" standard and therefore certainly has not shown malice. *Schaffhausen v. Bank of America, N.A.*, 393 F. Supp. 2d 853, 860 (D. Minn. 2005) ("The malice or willful intent to injure contemplated by § 1681h(e) requires 'a higher standard of proof than the willfulness required for punitive damages under § 1681n.'"). Even if the Court somehow concludes that the willfulness claim should go forward, it should nevertheless grant summary judgment on the state law claims because Plaintiff has not offered a single piece of evidence that supports malice.

## CONCLUSION

For the reasons stated above and in Midland's initial brief, this Court should grant Midland's motion for summary judgment on all remaining claims in this case—willful violation of the FCRA and all state law claims.

Respectfully submitted this 22nd day of December, 2010.

/s/  Jason B. Tompkins
One of the Attorneys for Defendants
Midland Funding, LLC and
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of December, 2010, I have filed the above and foregoing with the Clerk of the Court via the CM/ECF electronic filing system, which will send notification to all counsel of record listed below:

Penny Hays Cauley
HAYS CAULEY PC
P. O. Box 509
Darlington, SC 29540

Ronald C Sykstus
BOND BOTES SYKSTUS & LARSEN PC
415 Church Street, Suite 100
Huntsville, AL 35801

                                    /s/ Jason B. Tompkins
                                    Of Counsel