FILED

2011 Feb-18  AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMON T. BRIM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** | ) | |
| **MANAGEMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTIONS *IN LIMINE*

The Court's dismissal of the defamation claim significantly streamlines the evidence relevant to Plaintiff's case. Plaintiff's sole remaining claim under the Fair Credit Reporting Act ("FCRA") is straight-forward and implicates a limited amount of evidence, particularly on the issue of whether Defendant Midland Credit Management, Inc. ("Midland") breached a duty to Plaintiff. Midland moves *in limine* to exclude the following evidence (or categories of evidence) from the Plaintiff's evidence in this case:

1.  **Any evidence regarding (or reference to) Midland Funding, LLC's small claims court collection lawsuit against plaintiff or any other collection efforts.**

    Midland expects Plaintiff to offer documents and testimony concerning a collection lawsuit filed by Midland Funding, LLC, against Plaintiff in the small

1138620.1

Case 5:10-cv-00369-IPJ   Document 62   Filed 02/18/11   Page 2 of 13

claims court.[1]  This evidence is irrelevant to Plaintiff's sole remaining claim in this case.  FRE 402.  If the evidence is relevant at all, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  FRE 403.

After full summary judgment briefing, this Court dismissed Plaintiff's claim under the Fair Debt Collection Practices Act and dismissed all claims against Midland Funding, LLC.  *See* docs. 42 and 43.  At the pre-trial conference, Plaintiff stipulated to dismissal of his defamation claim.  Thus, Plaintiff's sole remaining claim—for non-compliance with the FCRA—is based exclusively on Midland's investigation of Plaintiff's dispute as presented by the CRAs.  (*See* Compl. ¶¶ 34-48).  In fact, section 1681s-2(b) of the FCRA, which Plaintiff has now twice conceded[2] is the only FCRA provision creating any obligations for Midland at issue in this case, does not govern collection activities such as lawsuits.

**2.      Any evidence of Plaintiff's contacts directly with Midland.**

Midland expects Plaintiff to offer documents and testimony of his direct contacts with Midland.  Midland moves the Court to exclude this evidence, including any enclosures, because it is irrelevant to Plaintiff's only claim

---

[1]  Plaintiff's Exhibit List enumerates five documents related to the small claims lawsuit filed by Midland Funding, LLC.  (*See* doc. 47, ¶¶ 17-21).

[2]  "In fact, the only FCRA claim at issue is brought pursuant to 15 U.S.C. § 1681s-2(b), which expressly applies only to disputes made through the consumer reporting agencies pursuant to § 1691i(a)."  (Doc. 55, pp. 8-9); (*see also* doc. 56, p. 2) (same).

1138620.1                                    2

remaining in the case, and would only serve to confuse and mislead the jury. FRE 402 & 403. Plaintiff's sole remaining claim is for the alleged failure to conduct a reasonable investigation. The section of the FCRA that enumerates Midland's investigation obligations, 15 U.S.C. § 1681s-2(b), is only triggered by notice of a dispute *from a CRA*. *See, e.g.*, *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003) ("The statutory language of this section makes clear that the duties created by § 1681s-2(b) do not arise until the furnisher of information receives notice from a consumer reporting agency . . . .").

In fact, Plaintiff's basis for his first motion in limine (which the Court granted) included the following statement:

> In fact, the only FCRA claim at issue is brought pursuant to 15 U.S.C. § 1681s-2(b)[3] which expressly applies *only* to disputes made through the consumer reporting agencies pursuant to § 1691i(a). Not only is direct contact with the furnisher not required, *but in fact the FCRA statutory structure makes it expressly unnecessary and without legal remedy*. 15 U.S.C. § 1681s-2(c) and (d) (*no private cause of action for violations of the direct dispute provisions* of § 1681s-2(a)).

---

[3] Plaintiff's statement is somewhat imprecise. The FCRA claim is brought pursuant to § 1681n, which provides the cause of action. Section 1681s-2(b), on the other hand, is the only section of the FCRA at issue in this case that prescribes any duties for furnishers of information such as Midland.

(Doc. 56, p. 2) (emphases added).   Under section 1681s-2(b), the inquiry is whether Midland conducted a reasonable investigation of the disputed information identified by the CRAs.   15 U.S.C. § 1681s-2(b)(1).   Though evidence of the availability of a direct dispute process may bear on whether Plaintiff had other avenues for correcting the error on his credit report, it is not relevant to whether or not Midland breached a duty under section 1681s-2(b).

In granting Plaintiff's first motion *in limine*, the Court accepted Plaintiff's argument that evidence concerning an obligation not imposed by the FCRA should not be offered; the same rationale should apply here.   First, because Plaintiff's direct disputes did not trigger any duty on Midland's part, they are irrelevant to Plaintiff's claim.   FRE 402.   Furthermore, their admission in Plaintiff's case would necessarily lead to unfair prejudice, confusion of the issues, or misleading of the jury because it could lead to liability based on actions that Congress expressly excluded from liability—a statutory limitation that is undisputed.

3.    **Any credit report that predates Midland's receipt of a dispute from a CRA.**

Midland requests that the Court exclude testimony and documents concerning any credit report that predates Midland's receipt of a dispute from a CRA.   Plaintiff's sole remaining claim in this case is based on duties enumerated under 15 U.S.C. § 1681s-2(b)—duties that are not triggered until Midland receives notice of a dispute from a CRA.   *See, e.g.*, *Peasley*, 364 F. Supp. 2d at 1200

("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Bank One, N.A. v. Colley*, 294 F. Supp. 2d at 870 ("The statutory language of this section makes clear that the duties created by § 1681s-2(b) do not arise until the furnisher of information receives notice from a consumer reporting agency . . . .").

It is undisputed that Midland received its first notice of a dispute from a CRA on or around August 5, 2008.  Any credit report dated before August 5, 2008 is therefore irrelevant to whether Midland conducted a reasonable investigation of a dispute forwarded by a CRA.  FRE 402.

**4.     Any evidence regarding Plaintiff's alleged denial of credit with American Express or any other creditor.**

Midland expects Plaintiff to offer testimony regarding alleged denials of credit, including one with American Express around May of 2009.  Midland further expects Plaintiff to offer a letter purporting to have been sent by American Express denying Plaintiff's credit application.[4]  This evidence should be excluded because it is riddled with unauthenticated hearsay and because any probative value of such evidence is substantially outweighed by the danger of confusion of the issues or misleading the jury.  Any verbal statements made by any representative of American Express or any other creditor during any conversation with the

---

[4] The letter, as produced by Plaintiff, is attached hereto as Exhibit A.

plaintiff would be inadmissible hearsay.  FRE 801, 802.  The same is true for any statements in documents purporting to have come from American Express.[5]

Moreover, the document which purports to be a letter from American Express denying plaintiff's credit application cannot be authenticated as a business record of American Express.  Midland, in October 2010, actually subpoenaed documents from American Express relating to plaintiff's alleged credit application and denial.  By telephone, American Express advised the undersigned's paralegal that it had no records of plaintiff's application or denial.  Upon request to confirm same in writing, American Express provided the letter attached hereto as Exhibit B.  Further, there is no witness identified on Plaintiff's witness list that could possibly authenticate the purported credit denial.  *See Gorman v. Experian Info. Solutions, Inc.,* et al., No. 07 CV 1846(RPP), 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008) (granting summary judgment for defendants because plaintiff could no show that inaccurate injury was a substantial factor for credit denial in part because "Plaintiff failed to take discovery from any of the third-party lenders who allegedly denied the loans").

Even if these legal obstacles could be cleared, any evidence of denial is irrelevant to the claims against Midland.  Presumably, plaintiff would offer such evidence to show damage cause by Midland's reporting of an account.  But the

---

[5]  Plaintiff has not produced any document, other than that attached as Exhibit A, which purports to deny him credit during the time that Midland was reporting the account at issue.

unauthenticated hearsay denial letter produced only by Plaintiff in this case itself

states as its sole reason for denial: "Your consumer credit bureau score from

TransUnion is too low."   (*See* Exhibit A, Letter Produced by Plaintiff).

TransUnion's representative testified at trial deposition:

> Q.   Was it in response to this ACDV that the -- that Mr. Brim's account was updated to report as disputed?
>
> A.  Yes.
>
> Q.  And this was in early August 2008?
>
> A.  Yes, it was.
>
> Q.   And at any point prior to the actual deletion of the account in September of 2010, did the account report as anything other than disputed?
>
> A.  To my knowledge it did not.
>
> Q.  What is the impact in terms of credit score on an account being marked as disputed?
>
> A.  It does not get factored into the credit score.
>
> **Q.  And so from early August 2008 through September 2010 the Midland account would not have been factored into Mr. Brim's credit score?**
>
> **A.  That is correct.**

(Exhibit C, Excerpts from Deposition of Steve Newnom, TransUnion, pp. 64-65)

(emphasis added).  If the only stated basis for denying Plaintiff's alleged American

Express credit application was his TransUnion credit score, and the Midland

account did not factor into this score, any presentation of such evidence would unnecessarily confuse the issues, mislead the jury and waste time.  FRE 403.

**5.      Portions of the discovery deposition of Angelique Ross that relate to claims that are no longer part of the case.**

Plaintiff's witness list includes Angelique Ross (an employee of Midland) by deposition.  Because Plaintiff has not yet favored Midland with designations of the testimony he expects to present from this deposition, some of the objections below may be unnecessary.  In order to make the record clear, Midland moves this Court to exclude the following portions of this deposition.  The vast majority of these objections are based on FRE 402 and FRE 403 because the identified portions of the deposition either relate directly to claims that have been dismissed or are otherwise irrelevant to Plaintiff's sole remaining claim:[6]

**OBJECTIONS TO ANGELIQUE ROSS DEPOSITION EXCERPTS**

| Excerpt | Objection | Basis | Ruling |
|---------|-----------|-------|--------|
| 7:11-25 | Relevance FRE 402 & 403 | Form letters to consumers; not part of CRA dispute | |
| 25:2-5 | Form | | |
| 25:7-41:24 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |
| 41:25-42:4 | Form | | |
| 42:6-46:8 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |

---

[6]  A copy of Ms. Ross' deposition transcript, with the portions Midland move to exclude highlighted, is attached as Exhibit D.

| Excerpt | Objection | Basis | Ruling |
|---|---|---|---|
| 46-49:7 | Relevance FRE 402 & 403 | Consumer Relations training | |
| 49:10-51:19 | Relevance FRE 402 & 403 | Prior testimony on behalf of Midland in other cases | |
| 52:17-53:16 | Relevance FRE 402 & 403 | Relates to FDCPA | |
| 53:17-22 | Relevance FRE 402 & 403 | Other FCRA cases | |
| 55:4-56:3 | Relevance FRE 402 & 403 | Duties under FDCPA and inapplicable sections of FCRA | |
| 56:8-57:10 | Relevance FRE 402 & 403 | Consumer Relations Training | |
| 59:6-24 | Relevance FRE 402 & 403 | Consumer Relations Training | |
| 61:10-64:10 | Relevance FRE 402 & 403 | Validation letter; not part of CRA dispute | |
| 64:13-67:13 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |
| 67:14-72:23 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |
| 73:15-75:3 | Relevance FRE 402 & 403 | Not related to CRA dispute or accuracy info challenged | |
| 76:10-78:11 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |
| 79:22-80:1 | Relevance FRE 402 & 403 | Question contains reference to materials sent via Brims's direct dispute | |
| 84:6-85:1 | Relevance FRE 402 & 403 | Relates to collection issues | |
| 86:12-89:4 | Relevance FRE 402 & 403 | Relates to collection issues | |

| Excerpt | Objection | Basis | Ruling |
|---------|-----------|-------|--------|
| 89:5-90:4 | Relevance FRE 402 & 403 | Relates to collection lawsuit | |
| 90:16-91:11 | Relevance FRE 402 & 403 | Relates to collection lawsuit | |
| 98:3-5 | Relevance FRE 402 & 403 | Letter history; not part of CRA dispute | |
| 99:11-100:25 | Relevance FRE 402 & 403 | Relates to balance of account | |
| 102:4-102:17 | Relevance FRE 402 & 403 | Relates to collection lawsuit | |
| 110:24-112:24 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | |
| 113:16-114:16 | Relevance FRE 402 & 403 | Relates to "soft hits" on credit report and other litigation against Midland | |
| 120:8-24 | Relevance FRE 402 & 403 | Relates to direct dispute letters | |

6.    **Any deposition testimony of Grant Johnson, one of Midland's 30(b)(6) designees on categories of testimony relating exclusively to Plaintiff's FDCPA claim.**

Plaintiff's witness list included Grant Johnson (an employee of Midland) by deposition; Midland timely objected to this witness.  At the pre-trial conference, when the Court inquired about Midland's objections to Plaintiff's witness list, Plaintiff's counsel indicated that she no longer intended to offer the deposition of Mr. Johnson.  To ensure that the record is clear, Midland moves *in limine* for the Court to exclude this testimony under FRE 402 and/or 403.

Mr. Johnson was designated by Midland to fill the following two categories of a Plaintiff's 30(b)(6) deposition notice:

5.      The Defendants' policies and procedures for its collection department.

8.      The Defendants' policies and procedures for training, supervising, and monitoring collectors.

(Exhibit E, Re-Notice of 30(b)(6) Deposition).  He was also designated to testify to the following category only as it pertained to the FDCPA:

7.      The Defendants' policies and procedures for FDCPA and FCRA compliance.

(*Id.*).  These categories relate entirely to the then-pending FDCPA claims.  These claims were dismissed by the Court in its summary judgment order.  *See* docs. 42 and 43).  Thus, any testimony from Mr. Johnson (testifying as a Midland corporate representative in response to two specific categories) is irrelevant to any claim in this case.  FRE 402; *see, e.g.*, *Allan v. Springville City*, 388 F. 3d 1331, 1335 (10th Cir. 2004) (affirming trial court's granting of defendant's motion in limine that excluded from admission "evidence that was only relevant to the equal protection and disparate treatment claims against the [defendant] that had been dismissed on summary judgment").  To the extent such testimony is relevant at all, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  FRE 403.

Respectfully submitted this 18th day of February, 2011.


 /s/ *Jason B. Tompkins*
One of the Attorneys for Defendant
Midland Credit Management, Inc.


**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February 2011, I have filed the above and foregoing by CM/ECF, which will send notification to the following counsel of record:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC  29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL  35801

Leonard A Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA  23606
Email: lenbennett@clalegal.com


 /s/ *Jason B. Tompkins*
Of Counsel