UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **Jamon T. Brim,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) Civil No. 5:10-CV-369-IPJ |
| | ) |
| **Dell Financial Services, LLC,** | ) |
| **Midland Credit Management,** | ) |
| **Inc., Midland Funding, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE 1, 2, 3 AND 6

Comes now the Plaintiff and hereby responds to Defendant's Motions in Limine 1, 2 and 3 as follows:[1]

**1.   Evidence or reference to Midland's small claims court collection action.**

Plaintiff concurs with this Motion in Limine to the extent that it would limit the Plaintiff from arguing to the jury that he recover damages because of the small claims court lawsuit, but opposes the Motion to the extent it seeks to bar any evidence or mention of the events surrounding the Plaintiff's interactions with Midland, including the collection lawsuit. Midland sued the Plaintiff in Small Claims Court and then

---

[1] Mr. Brim will file a separate response regarding the Fourth and Fifth of Defendant's Motions. He offers the present response as to the first three motions so that the Court and the Defendant may more promptly consider the issues therein instead of waiting for the longer response to all five motions.

dismissed its collection lawsuit. It did so because the Statute of Limitations had expired and before the Plaintiff even opposed the case. This evidence is relevant and probative for at least three important reasons. First, the Plaintiff will argue that Midland purchased the debts that are at issue from Dell Financial knowing full well that the statute of limitations to collect the debt had expired. Therefore its only means to make a profit from its "pennies on the dollar" purchase was to attempt to force payment by parking the account on Mr. Brim's credit report. The ineffectiveness of any alternate means to profit from the account was highlighted by the deadend Midland faced in the small claims attempt. Second, the conduct of Midland in attempting to force payment in the deadend collection action is consistent with its operations in using credit reporting system to collect. Finally, the evidence also provides necessary context for the Plaintiff's frustration and distress damages. He did not simply begin the path and struggle with Midland in isolated credit reporting disputes.

However, Plaintiff will not argue to the jury that the Plaintiff should be compensated for damages that arise solely from the small claims lawsuit.

**2.     Evidence of Plaintiff's direct contacts with Midland.**

Plaintiff concurs with this Motion in Limine to the extent that it would limit the Plaintiff from arguing to the jury that he recover damages because of the direct contacts with Midland, but in all other respects he opposes the Motion. Mr. Brim will

not seek, ask for or argue damages caused by Midland's conduct in responding to his direct contacts.  However, all of the credit reporting disputes that Midland received arrived after it had actual notice of the Plaintiff's Bank Statement and of the facts of his dispute.  Evidence of what Midland knew and when it knew it – whether from Mr. Brim directly, from Dell or from its own research – is relevant to consider whether its subsequent responses and handling of the Plaintiff's credit reporting disputes was negligent and/or willful.  See e.g. *Saunders v. Equifax Info. Services, L.L.C.*, 469 F. Supp. 2d 343, 352 (E.D. Va. 2007) *aff'd sub nom. Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (detailing "direct contact" facts that properly informed the jury as to the degree of reprehensibility of the furnisher's conduct).

　　　Plaintiff's position is easy to support.  Imagine two cases:  (1) The furnisher had never received any previous contact from the consumer.  No direct disputes. No bank statements, telephone calls or letters.  No failed collection lawsuit.  Then, Midland received an ACDV from the credit reporting agency that disputes the account for the first time; and (2) The furnisher receives the ACDV after having received letters and a bank statement, in addition to telephone contacts from the consumer explaining that the account had been previously paid.  It had already received and had in its possession a copy of the consumer's bank statement. Midland's motion would argue that the evidence of the reasonableness of its response

to the ACDV credit reporting disputes in the two cases was the same. That a jury should find that the rejection of the Plaintiff's disputes in the second example was just as reasonable as its rejection or superficial handling of the disputes in the second one. This is not a defensible position. Such "direct contact" evidence, while not establishing a private cause of action is certainly relevant to the reasonableness of Midland's later conduct under 15 U.S.C. § 1681s-2(b).

**3. Pre-dispute credit reports.**

Plaintiff concurs with this Motion in Limine to the extent that it would limit the Plaintiff from arguing to the jury that he recover damages because of the inaccurate Midland credit reports dated before he made his credit reporting disputes, but in all other respects he opposes the Motion. As with its two previous motions, Midland asks the Court to strip the Plaintiff's case of its context. Apparently the jury should learn only that Midland received the numerous ACDVs and nothing else. There is no legal or evidentiary basis for Defendant's request. The fact that there is no cause of action for a fact or piece of evidence does not mean it is irrelevant. In this case the Plaintiff will present a case that roughly proceeds as follows: Mr. Brim purchased a Dell computer on credit; he paid the account in full shortly thereafter; sometime later he learned that Midland had reported the account as a collection debt owed to it on his credit report; he therefore began disputing the debt directly; when that didn't work he wrote to the credit bureaus. If the Plaintiff cannot prove his case to the jury

by evidencing how he knew of the Midland debt and why he began making credit reporting disputes, the jury will have an incomplete factual picture and one that inaccurately reflects the events and history of Midland's conduct and Mr. Brim's damages.

What Midland really is arguing – or at least what it should properly be arguing – is that the Plaintiff should not be allowed to ask the jury to award damages or find liability based upon the pre-dispute credit report.  To that argument, Plaintiff has no objection and would agree.

**6.     Deposition testimony of Grant Johnson**

As Plaintiff stated at the pre-trial conference, the Plaintiff agrees that the deposition testimony of Grant Johnson will not be used.

Wherefore, the Plaintiff respectfully requests this Court to deny the Defendant's first three Motions in Limine and simply allow for a jury instruction with respect to the issue of damages.  Plaintiff consents to Defendant's sixth motion.

/s/ Penny Hays Cauley
Penny Hays Cauley, ASB-6309-A63P
Attorney for Plaintiff

**HAYS CAULEY, P.C.**
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717

(843) 665-1718 Facsimile
phc917@hayscauley.com

Ronald C. Sykstus, Esq.
**BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.**
415 Church Street, Suite 100
Huntsville, AL 35801
(256) 539-9899
(256) 539-9895 Facsimile
rsykstus@bondnbotes.com

Leonard A. Bennett, Esq.
**CONSUMER LITIGATION ASSOCIATES, P.C.**
VSB #37523
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Phone: (757) 930-3660
Fax:   (757) 930-3662

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2011, I electronically filed the foregoing via the CM/ECF System, which will notify the following counsel of record:

Eric B. Langley, Esq.
Jason B. Tompkins, Esq.
BALCH & BINGHAM LLP
P. O. Box 306
Birmingham, AL 35201-0306


                                   /s/ Penny Hays Cauley
                                   Of Counsel