# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Jamon T. Brim,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 5:10-CV-369-IPJ** |
| | ) | |
| **Dell Financial Services, LLC,** | ) | |
| **Midland Credit Management,** | ) | |
| **Inc., Midland Funding, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OMNIBUS MEMORANDUM (1.) IN SUPPLEMENTAL RESPONSE TO DEFENDANT'S FIRST, SECOND AND THIRD MOTIONS IN LIMINE, (2.) IN RESPONSE TO DEFENDANT'S FOURTH AND FIFTH MOTIONS IN LIMINE, AND (3.) IN SUPPLEMENTAL SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DEFENDANT'S USE OF SETTLEMENTS WTH OTHER DEFENDANTS.**

### A.    Midland's First, Second and Third Motions in Limine

Plaintiff previously opposed Defendant's First, Second and Third Motions in Limine, each which asked the Court to preclude the Plaintiff from discussing facts, documents or communications that pre-dated or did not directly establish liability of the Fair Credit Reporting Act (FCRA) claim under 15 U.S.C. ¶1681s-2(b).[1]  Plaintiff opposed the motion in her February 18, 2011 filing (Docket No. __) in order that the Court would have as much time as possible to consider the parties' argument.  This brief supplements that opposition.

---

[1] Midland also opposes the use of certain portions of its Rule 30(b)(6) deposition (deposition of Angelique Ross) upon the same grounds asserted in its Second Motion in Limine.

Plaintiff opposes the exclusion of all "direct dispute" evidence:  Plaintiff's testimony as to his numerous written and telephonic communications with Midland; Midland's handling of such disputes; Midland's internal procedures for responding to consumers who seek to establish that the Midland collection account had been previously paid and Midland's failed attempt to leverage money from the Plaintiff by a means other than its credit reporting (small claims collection court).  He of course incorporates his previous arguments.

However, the Plaintiff also argued that the challenged evidence was necessary in order to place the actual FCRA claims in context.   Background evidence is necessary in order that the jury understand the Plaintiff's claim in its full context and as well in order for it to be able to measure the reasonableness of the Defendant's conduct in responding to the ACDV disputes.  This is not a remarkable conclusion, and while Plaintiff's counsel is unaware of any case that has found as Midland asks, there are plenty of cases that did just the opposite.  In *Bryant v. TRW* , one of the most-oft cited and earliest FCRA cases, the Ohio United States District Court explained:

> Rule 401 of the Federal Rules of Evidence defines relevancy; Rule 402 provides that relevant evidence is admissible; Rule 403 excludes relevant evidence if in the discretion of the Court it determines its prejudicial effect outweighs its probative value. As will be seen from the discussion of the evidence adduced at trial, the only way a jury could reasonably determine whether the defendant followed reasonable procedures to assure maximum possible accuracy of information furnished about plaintiff was to know the history of the relationship between plaintiff and defendant and assess defendant's conduct in the context of that history. The causes of action created by s 616 and s 617 [FCRA Act section numbers] are personal to a consumer and the obligations imposed on a consumer reporting agency are expressed in terms of the particular consumer alleging violation. Without the history of the relationship the jury could not make the judgment required of it under s 616 and s 617.

*Bryant v. TRW, Inc.*, 487 F. Supp. 1234, 1236 (E.D. Mich. 1980) *aff'd,* 689 F.2d 72 (6th

Cir. 1982).  (Emphasis added).  More recently, the South Carolina United States District

Court agreed and permitted the admission of evidence going back years (though not 25

years) before the subject FCRA violations and claims arose.  *Byrd v. Trans Union LLC*,

C/A 3:09-609-JFA, 2010 WL 2555119 (D.S.C. June 18, 2010).  The South Carolina court

explained:

> Byrd asks this court to go back 25 years to provide context for the purpose
> of assessing reasonableness. This the court will not do. Concerns of undue
> prejudice, relevance, and confusion compel the finding that the entire 25
> year period not be admitted into evidence. Fed.R.Evid. 402, 403. The
> court will, however, allow evidence of the parties relationship beginning
> with Byrd's alleged call to Equifax in May of 2002. The court finds that
> Byrd's notifying Equifax of issues with his credit report beginning at this
> time is relevant to an assessment of the reasonableness of the procedures
> by which Equifax created the admittedly erroneous 2008 credit report.
> This temporal limitation is in line with *Bryant* and *Lazar* and the court
> finds that, with a proper limiting instruction to the jury, the admittance of
> the evidence should not unduly prejudice Equifax.

*Byrd*, 2010 WL 2555119.  See also *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 672

(C.D. Cal. 2000) (Refusing to strike allegations in Complaint that did not directly pertain

to the alleged FCRA violations because they provided background to assess defendant's

conduct: "Although Plaintiff cannot recover for the alleged violations contained in

Paragraphs 10 through 23 of the FAC, this Court finds that, because of their relevance to

Plaintiff's timely claims, TUC's motion to strike these paragraphs must be denied.")

    **B.**       **Midland's Fourth Motion in Limine**

       Defendant also asks the Court to exclude the Plaintiff's evidence and claim for

actual economic damages caused by his damaged credit and lost credit opportunities.  In

particular Midland challenges Plaintiff's American Express denial, but more generally

Midland's motion seems to also suggest that Plaintiff be precluded from testifying about

the difficulties he faced in attempting to purchase a home – that effort was delayed for at least a year because the Plaintiff could not obtain a mortgage.  Because Defendant asserts an evidentiary theory or view that is in conflict with the more remedial and common sense thresholds established in FCRA jurisprudence, its motion should be denied.

   As an initial matter, the dispute between the parties as to the authenticity of the American Express denial letter is resolved with American Express' execution of its custodian declaration in lieu of its noticed deposition.  (Exhibit "1").  There is no proper hearsay objection to the document.

   However, regardless of such hurdle, the Plaintiff will present at trial sufficient evidence – both direct and circumstantial – by which the jury should find economic damages for Mr. Brim's credit denial, credit delays and/or lost credit opportunities. Consumers regularly face two basic arguments in FCRA accuracy cases.  First, Defendants challenge the proofs available to consumers to establish full causation for an adverse credit decision.   More often than not the consumer will not receive a detailed explanation of the denial sufficient to survive beyond any reasonable doubt against a defense spray of arguments.    The second defense argument is that of alternate causation. Defendants argue that there were multiple potential causes of a credit denial or adverse action – multiple credit reporting agencies; other inaccurate accounts in a report; possible problems with income or other disqualifying factors, etc.  In enacting the FCRA, in addition to enabling a consumer to overcome the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file," "Congress also hoped to address a number of related problems, including <u>'the inability at times of the consumer to know he is being damaged by an adverse credit</u>

report' [and] the lack of 'access to the information in [his] file[.]' " S.Rep. No. 91-517, at

3 (1969). *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010). (emphasis

added).

Accordingly, traditional tort causation principles have been remedially applied to

the FCRA. The principle case in such regard is the Third Circuit's decision in *Philbin v.*

*Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996), cited by multiple Circuits, including the

Eleventh. See e.g. *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118, 1124.

437 F.3d 1118 (11th Cir. 2006). The Third Circuit considered a case in which the

consumer did not have direct evidence that any of his credit denials were caused by the

FCRA defendant, Trans Union. As a result, the agency challenged the consumer's credit

damage claim contending that there could be other factors to explain the adverse

decisions by Philbin's third party lenders. The Court of Appeals rejected such challenges

and permitted proof of the credit denials by circumstantial evidence and inference:

> More fundamentally, the district court erred by assuming that Philbin
> could satisfy his burden only by introducing direct evidence that
> consideration of the inaccurate entry was crucial to the decision to deny
> credit. While Philbin's case might have been stronger had he deposed or
> taken affidavits of those responsible for the decision, such evidence is not
> essential to make out a prima facie case pursuant to § 1681e(b). We deem
> it sufficient that, as with most other tort actions, a FCRA plaintiff produce
> evidence from which a reasonable trier of fact could infer that the
> inaccurate entry was a "substantial factor" that brought about the denial of
> credit. Restatement (Second) of TortsS § 431(a); Keeton *et al.,* Prosser and
> Keeton on Torts § 41, at 266-68 (5th ed. 1984) [hereinafter Prosser &
> Keeton]. Philbin has met that burden in this instance as to each of the six
> credit denials encompassed by his complaint.

*Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996). This language:

"substantial factor" has become established law.

A consumer often cannot rule out every alternate explanation for an adverse credit decision.  Under the "substantial factor" analysis, "Courts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was *the* cause of the decision."  *Id*. at 969.  As Philbin explained,

> Forcing a plaintiff affirmatively to rule out other explanations for the credit denial ignores the fact that decisions to deny credit will frequently have more than one cause. For example, in some instances the inaccurate entry and another factor may each, considered separately, be insufficient to have caused the denial of credit but when taken together are sufficient. Each may then be considered a substantial factor in bringing about the denial of credit and therefore a cause of plaintiff's injury. *See* Prosser & Keeton § 41, at 266-67 & n. 25.

*Id.*

In practice, the "substantial factor" analysis and the permitted use of circumstantial evidence to establish credit injury makes sense.  A jury is permitted thereby to draw reasonable inferences and accept the impact of an inaccurate credit report as a relevant and substantial factor in a lender's denial decision.  For example, in Philbin, the Court of Appeals criticized the District Court's reversal of its initial willingness to allow a consumer "convince a jury, 'by process of elimination,' *Philbin I* at 19, that the credit granting agencies must have both used the inaccurate report and considered the inaccurate information on that report in reaching their decisions to deny credit."  *Philbin*, 101 F.3d at 967-68.  The better set of proofs required to circumstantially a credit inaccuracy as a substantial factor in causing credit damage is: (1.) proof of a credit inaccuracy and  (2.) proof that the consumer applied for credit and (3.) proof that the consumer did not obtain the credit.  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281

(E.D. Pa. 2010) ("a consumer-plaintiff is minimally required to present some evidence of a credit inaccuracy and then some evidence of applying for and not obtaining credit.").

It is more common than not that the consumer must properly ask for a reasonable inference that the disputed inaccuracy was one of the causes of the credit injury or denial. This District has shares this view of the law.  In *Heupel v. Trans Union LLC*, No. 00-CV1463-NW, 193 F.Supp.2d 1234 (N.D. Ala. 2002) (J. Blackburn), the Court permitted the inference that because a credit denial letter identified "Bankruptcy": as the reason for the denial, the tradeline that caused the denial had to be the only one that listed a bankruptcy status, even if the denial letter was not as precise in its explanation.

Midland also argues that because a Trans Union witness testified that a disputed account would not be scored, the American Express denial could not have been based on the Midland account – which Midland infers would not have been scored for the AMEX application.  But the actual American Express denial letters proves otherwise.  It lists a collection account as the cause of the denial and scored or not, disputed or not, the inaccurate Midland account was the only collection tradeline in the Plaintiff's credit report.  Other courts have considered such "it can't be us" theories from other FCRA defendants and upon the same inferences as Plaintiff now suggests, each court left resolution of the factual dispute to the jury.  See e.g. *Lendino v. Trans Union Credit Info. Co.*, 970 F.2d 1110, 1112-13 (2d Cir. 1992) ("Trans Union denies forwarding to Bloomingdale's the bad credit history of Lendino. … [Lendino] argues that a reasonable inference can be drawn from the documentary exhibits that Trans Union did issue the obsolete information to Bloomingdale's. Lendino relies upon (1) Bloomingdale's letter to Lendino[4] indicating that its rejection was based in part or in full on Trans Union

information, and (2) the fact that the good credit rating shown in the "James R. Lending" report would have afforded no reasonable  basis for Bloomingdale's to deny Lendino's credit application."); *Alley v. First Am. Credco, Inc.*, 05 C 2130, 2007 WL 188036 (N.D. Ill. Jan. 19, 2007) ("Although [the mortgage broker] also testified that he did not personally know why Alley's loan was denied. Nevertheless, material issues of fact remain. Specifically, CREDCO concedes that the Shell Management account was the only delinquency on Alley's credit report. … Further, the item complained of by Alley was an account that she had paid off completely nearly two years before her application with Lending Tree. As noted above, Lending Tree's applications considered 24-month histories and, as such, had the Shell Management account been properly reported, the late payment date would have been almost beyond the scope of consideration.   As in *Koropoulos v. Credit Bureau, Inc.,* 274 F.2d 37 (D.C.Cir.1984), the plaintiff presented a material question of fact as to whether "the only reasonable interpretation" was that this was the reason for the denial."); *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 501 (4th Cir. 2007) (Equifax next argues that the evidence does not support any award for economic losses. Equifax claims that only speculation and conjecture support such an award … We disagree. The evidence at trial in this case clearly demonstrates that on numerous occasions Suzanne attempted to secure lines of credit from a variety of financial institutions, only to be either denied outright or offered credit on less advantageous terms that she might have received absent Equifax's improper conduct. At times, these financial institutions consulted credit reports from other agencies, but at other times these institutions relied exclusively on the erroneous credit information provided by Equifax. Based on these incidents, we find that there is a legally sufficient

evidentiary basis for a reasonable jury to have found that Equifax's conduct resulted in economic losses for Suzanne."); *Bach v. First Union Nat. Bank*, 149 F. App'x. 354, 361 (6th Cir. 2005) ("FUNB also argues that the district court erred in relying on Bach's rejected credit card application in finding that Bach had proved actual damages resulting from FUNB's FCRA violation. FUNB asserts that the credit report on which Bank One relied in rejecting Bach's application did not include the false FUNB information from Bach's file and says this false information had already been deleted. However, the letter Bank One sent to Bach rejecting her credit card application stated that her application was being rejected due to "credit accounts now delinquent[,] number of accounts ever delinquent[, and] total available revolving credit." Viewing this evidence in the light most favorable to Bach, the district court did not err in finding that sufficient evidence was presented from which a jury could reasonably conclude that a causal link existed between the rejected credit card application and FUNB's FCRA violation.")

In this case, in addition to the American Express denial, Mr. Brim will establish that over the period after he made his first FCRA dispute regarding the Midland account and through the date a year later on which he was finally able to purchase a home, (1.) he applied for a mortgage on multiple occasions, (2.) each was recorded as in inquiry in his credit history and reports and (3.) he did not receive any of these mortgage loans.  There was no alternate explanation, or more appropriately stated there was no scenario in which the jury could not fairly infer that the inaccurate Midland account, a growing unpaid collection account and "major derogatory", was not at least a "substantial factor" in his inability to obtain a mortgage.  Coupled with the details stated in his unobjected credit reports, Mr. Brim's own testimony is more than sufficient to prove his credit damage.

See e.g. *Bach v. First Union Nat. Bank*, 149 F. App'x. 354, 361 (6th Cir. 2005) ("FUNB argues further that the district court erred in relying on this mortgage application at all in determining whether Bach had proven actual damages because she failed to produce any evidence other than her own testimony documenting the failed mortgage application."); *Drew v. Equifax Info. Services, LLC*, C 07-00726 SI, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010) ("Defendant also argues that the only evidence that could possibly support an award are tri-merge documents, which are hearsay and cannot be used to prove the contents of plaintiff's Equifax file. But other evidence-such as plaintiff's testimony-shows that plaintiff's Equifax file contained erroneous information both before and after plaintiff considered investing in the Chico properties. The jury was free to deduce from that evidence and from plaintiff's testimony that his emotional distress damages were caused by defendant's FCRA violation."); *Adams v. Phillips*, CIV.A. 01-3803, 2002 WL 31886737, *2-3 (E.D. La. Dec. 19, 2002) ("In order to prove the amount of his economic loss damages, Adams testified that his access to credit was severely damaged as a result of Phillips' actions. … Adams also testified that his damaged credit reputation has prevented him from carrying on his construction business in which he was earning more than $100,000 a year. Adams additionally testified that his construction business has still not fully recovered from the damage suffered due to Phillips' actions. Lastly, Adams testified that he also lost an opportunity to make a $35,000 profit on the purchase and sale of a condominium in Florida.   A review of Adams' testimony supports the finding that the jury's verdict in regards to compensatory damages was not against the great weight of the evidence produced at trial. While it is true that much of Adams' testimony was not

corroborated by any documentary evidence, the jury was entitled to base its

determination on the credibility of Adams as a witness.")

### C.    Midland's Fifth Motion in Limine

Midland seeks to exclude various parts of its own Rule 30(b)(6) deposition

(Deposition of Angelique Ross) for a range of reasons stated in its incorporated table.

The most common objection is that the testimony within the deposition would not pertain

directly to Midland's procedures for investigating a consumer's ACVD dispute.  This

objection of course has been addressed more fully above and in Plaintiff's earlier filing.

Nevertheless, for the sake of clarity, Mr. Brim includes herein his own Table

corresponding to that offered by Midland and therein detailing his response and position

to each of Midland's objected deposition portions:

| Excerpt | Defendant's Objection | Basis | Plaintiff's Position |
|---|---|---|---|
| 7:11-25 | Relevance FRE 402 & 403 | Form letters to consumers; not part of CRA dispute | Agrees to exclude |
| 25:2-5 | Form | | Agrees to exclude |
| 25:7-41:24 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | Defendant groups more in this section than is appropriate. Plaintiff is agreed as exclusion of all parts within this range except as indicated hereafter. |
| 30:21-31:2 31:13-32:1 | | | This testimony explains how Midland receives, opens and scans consumer dispute |

| | | | |
|---|---|---|---|
| | | | letters. It is relevant for the reasons addressed in Plaintiff's response to Midland's Second MIL. |
| 38:6-18<br>38:23-39:9<br>39:13-15<br>40:1-10 | | | This testimony explains Midland's procedures for receiving "proof" documents evidencing that an account has been previously paid in full. "Bank statement" is not in the list (the list only includes two documents). Neither is any other bank-generated document such as a "transaction detail." |
| 40:24-41:5<br>41:12-24 | | | This testimony explains the limited circumstances in which Midland will actually contact the company from whom it acquired an account as well as the fact that this would not change its credit reporting. |
| 41:25-42:4 | Form | | Intends to use: 41:25-42:3;<br>Agrees to exclude remainder.<br>Defendant's form objection is |

| | | | |
|---|---|---|---|
| | | | unexplained and without merit. |
| 46-49:7 | Relevance FRE 402 & 403 | Consumer Relations Training | Agrees to exclude |
| 49:10-51:19 | Relevance FRE 402 & 403 | Prior testimony on behalf of Midland in other cases | Plaintiff intends to use: 50:1-5 50:12-17 51:14-19 This testimony provides information regarding the witness' previous participation in other cases and is relevant to inform the jury of potential bias given that an obvious significant part of the witness' job is to testify and presumably help Midland prevail in such cases.  Further, the testimony includes an explanation of Midland's responses to Plaintiff's Interrogatories. |
| 52:17-53:16 | Relevance FRE 402 & 403 | Relates to FDCPA | Agrees to exclude |
| 53:17-22 | Relevance FRE 402 & 403 | Other FCRA cases | Agrees to exclude |
| 55:4-56:3 | Relevance FRE 402 & 403 | Duties under FDCPA and inapplicable sections of FCRA | Intends to use: 55:1-11 This testimony asks Midland if it agrees and understands that it is responsible for |

|  |  |  | the accuracy of the information it reports to the credit reporting agencies.<br><br>Plaintiff agrees to exclude the remainder of this section. |
|---|---|---|---|
| 56:8-57:10 | Relevance<br>FRE 402 & 403 | Consumer Relations Training | Intends to use: 56:5-7.  This portion is a single question asking Midland's Rule 30(b)(6) witness if she is familiar with the FCRA.<br><br>Plaintiff agrees to exclude remainder |
| 59:6-24 | Relevance<br>FRE 402 & 403 | Consumer Relations Training | Intends to use: 59:12-24.  This section asks the witness about the training Midland employees received in handling ACDV disputes from the credit reporting agencies – just like the ones in this case.<br><br>Plaintiff agrees to exclude remainder |
| 61:10-64:10 | Relevance<br>FRE 402 & 403 | Validation letter; not part of CRA dispute | Agrees to exclude |
| 64:13-67:13 | Relevance<br>FRE 402 & 403 | Brim's direct dispute of Midland | Intends to use: 64:13-65:13<br>65:22-23<br>66:15-24<br>67:2-7. |

| | | | These portions regard Midland's receipt of Plaintiff's dispute letters and the enclosed bank statement.

Plaintiff agrees to exclude remainder. |
|---|---|---|---|
| 67:14-72:23 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | Intends to use: 67:14-68:6 68:12-13 69:2-70:14 70:24-71:3 71:13-72:23 These portions regard Midland's receipt of Plaintiff's dispute letters and telephone calls between the parties.

Plaintiff agrees to exclude remainder. |
| 73:15-75:3 | Relevance FRE 402 & 403 | Not related to CRA dispute or accuracy info challenged | Intends to use: 73:15-74:9. This portion explains that Midland was still adding interest as well as the fact that it purchased the Dell account after it knew the statute of limitations was expired.  This is relevant as it proves the importance of credit reporting as Midland's only viable collection tool |

|  |  |  | and means to make a profit on such accounts.<br><br>*Plaintiff agrees to exclude remainder* |
|---|---|---|---|
| 76:10-78:11 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | Intends to use: 77:11-77:19 This portion asks if Midland ever told Mr. Brim that he needed to send additional documentation to support his dispute.<br><br>78:1-11 This portion confirms that Midland did not accept the Bank statement as proof and did not contact Dell.<br><br>*Plaintiff agrees to exclude remainder* |
| 79:22-80:1 | Relevance FRE 402 & 403 | Question contains reference to materials sent via Brim's direct dispute | Plaintiff intends to use. This portion confirms that Midland did not contact Dell or Redstone Credit Union. |
| 84:6-85:1 | Relevance FRE 402 & 403 | Relates to collection issues | Agrees to exclude |
| 86:12-89:4 | Relevance FRE 402 & 403 | Relates to collection issues | Agrees to exclude |
| 89:5-90:4 | Relevance FRE 402 & 403 | Relates to collection lawsuit | Intends to use: 89:9-24; |

| | | | Agrees to exclude remainder |
|---|---|---|---|
| 90:16-91:11 | Relevance FRE 402 & 403 | Relates to collection lawsuit | Agrees to exclude |
| 98:3-5 | Relevance FRE 402 & 403 | Letter history; not part of CRA dispute | Agrees to exclude |
| 99:11-100:25 | Relevance FRE 402 & 403 | Relates to balance of account | Intends to use: 99:11-13 99:17-100:22 This portion of the testimony discusses what Midland was reporting to the credit reporting agencies. Plaintiff agrees to exclude remainder |
| 102:4-102:17 | Relevance FRE 402 & 403 | Relates to collection lawsuit | Agrees to exclude |
| 110:24-112:24 | Relevance FRE 402 & 403 | Brim's direct dispute to Midland | Agrees to exclude |
| 113:16-114:16 | Relevance FRE 402 & 403 | Relates to "soft hits" on credit report and other litigation against Midland | Intends to use: 114:13-16 Midland by its Rule 30(b)(6) witness testified that she was unaware of any other FCRA litigation against Midland in Alabama.  She testified that she was not aware of any despite that Midland has been sued numerous times here for claims nearly the same as in this case and in cases in which the deponent had herself execute |

|  |  |  | affidavits identical to the one Midland provided in this case. |
|--|--|--|--|
|  |  |  | This evidence is relevant to impeach the Defendant and its witness. It is also relevant because whether or not there is "evidence that other consumers have lodged complaints similar to" the Plaintiff's is relevant to show notice under the FCRA. The Fourth Circuit explained in *Dalton*: |
|  |  |  | "Dalton has not shown, for example, *(1.)* that CAI was aware that its subvendors relied upon informal legal opinions from court clerks. *(2.)* There is no evidence that other consumers have lodged complaints similar to Dalton's against CAI. *(3.)* Indeed, CAI had used SafeHands for about a year and had found the firm to be reliable. Further, CAI corrected its mistake |

| | | | one day after Dalton challenged the accuracy of the report." *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). *(numbering added).*<br><br>Plaintiff agrees to exclude remainder |
|---|---|---|---|
| 120:8-24 | Relevance FRE 402 & 403 | Relates direct dispute letters | Agrees to exclude |

**D.      Plaintiff's Motion in Limine to Exclude Evidence of Settlements and Litigation with other Defendants.**

The Court has preliminarily addressed this Motion and barred the evidence at trial. However, Plaintiff understands that Midland will continue to attempt to insert such evidence at trial and Plaintiff thus supplements his initial Motion.   More specifically, the Plaintiff draws the Court's attention to a recent decision also on point, but involving Midland itself.  In a comparable FCRA case, Midland moved to compel the Plaintiff's production of settlement agreements with co-defendant credit bureaus and argued them relevant to show contribution or previous satisfaction of the damages sought by the consumer.  *Pennington v. Midland Credit Mgmt., Inc.*, 1:10CV112, 2010 WL 3187955 (E.D. Va. Aug. 9, 2010).  As the decision summarized:

> MCM's principal argument in support of its request for the settlement agreements is that the agreements may lead to discovery of admissible evidence in light of the "one satisfaction rule," which, MCM argues, limits

Pennington to a single recovery for all of the credit errors arising from the 2005 identity theft. ... Yet, MCM fails to show that the acts and injuries are the same. To the contrary, it appears the acts are separate and the injuries are distinct. In any event, counsel for Pennington has represented that the settlement agreements contain only broad dollar amounts with no itemization for particular types of damages.  …  There are net settlement amounts in each agreement to compensate the plaintiff for her actual damages, punitive damages, legal fees and expenses.   It would be impossible to look at those lump sum settlement amounts and determine what amount was attributable to actual damages as opposed to legal fees, costs and potential claims for punitive damages. … As such, the one satisfaction rule, even assuming its applicability, does not support a conclusion that the agreements are relevant or would lead to the discovery of relevant material.

MCM has also suggested that the settlement agreements would be relevant to other elements of Pennington's claims, such as causation. But neither the briefs nor the arguments made at the hearing have illuminated any connection between the settlement agreements and the material facts of this case.

*Id.*

*/s/ Penny Hays Cauley*
 Penny Hays Cauley (ASB-6309-A63P)
Attorney for Plaintiff

**OF COUNSEL:**
**HAYS CAULEY, P.C.**
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile

**OF COUNSEL:**
Ronald C. Sykstus
**BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.**
415 Church Street, Suite 100
Huntsville, AL 35801
(256) 539-9899
(256) 539-9895 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2011, I electronically filed the foregoing via the CM/ECF System, which will notify the following counsel of record:

Eric B. Langley, Esq.
Jason B. Tompkins, Esq.
BALCH & BINGHAM LLP
P. O. Box 306
Birmingham, AL 35201-0306

/s/ Penny Hays Cauley
Of Counsel