FILED

2011 Mar-02  AM 08:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED

FEB 2 4 2011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMON T. BRIM,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **MIDLAND CREDIT** | ) | **5:10-cv-0369-IPJ** |
| **MANAGEMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR JUDGMENT AS A MATER OF LAW
## AT THE CLOSE OF PLAINTIFF'S CASE

Pursuant to Fed. R. Civ. P. 50(a), defendant Midland Credit Management, Inc. ("Midland") moves this Court for Judgment as a Matter of Law, in whole or in part, on grounds that there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff Jamon Brim on any claim under the Fair Credit Reporting Act ("FCRA"), and Plaintiff cannot under law prevail on the sole remaining claim alleged in the complaint.  In support of this motion, Midland states as follows:

**I.     Because Plaintiff has offered no evidence of the standard of care for a reasonable investigation under the FCRA, Midland is entitled to judgment as a matter of law.**

Plaintiff has not offered any evidence of the standard of care for a "reasonable investigation."  "The burden of showing the investigation was

unreasonable is on the plaintiff." *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010). Without any evidence of what constitutes a "reasonable investigation," Plaintiff's claim should not survive directed verdict.

Plaintiff has at least implied that a reasonable investigation would have required Midland to contact the Plaintiff upon receiving the ACDVs. But this simply is not the law. "Although a furnisher may choose to contact a consumer directly about a dispute reported to the furnisher by a CRA, 'requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA.'" *Chiang*, 595 F.3d at 36 (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

## II.     Plaintiff has not offered any evidence that Midland's investigation caused his alleged injuries.

Plaintiff has not offered sufficient evidence that Midland's investigation, even if unreasonable, caused any of his alleged injuries. "[T]o carry his burden, the plaintiff had to demonstrate some causal relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account. We hold that plaintiffs suing furnishers under § 1681s-2(b) must make the same showing, for several reasons." *Chiang*, 595 F.3d at 37.

Under the "substantial factor" causation test of the FCRA, a plaintiff must present sufficient evidence of causation of "actual damages" to survive summary

judgment. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir. 1991) (stressing that plaintiff has an affirmative duty to present evidence supporting his claim that the alleged inaccurate report caused him damage). This requires a plaintiff to produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a "substantial factor" that brought about the denial of credit. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3d Cir. 1996), *abrogated on other grounds*, *Cortez v. Trans Union, LLC*, 617 F.3d 688. Essentially, the inaccuracy in the credit report must proximately cause actual damage to the plaintiff. *Whelan v. Trans Union Reporting Agency*, 862 F.Supp. 824, 829 (E.D.N.Y. 1994) (citations omitted).

In a case from the Southern District of New York, the court granted the defendant CRA's (Experian) motion for summary judgment on the plaintiff's claim for compensatory damages where the plaintiff failed to prove that the alleged inaccurate information on the Experian credit report caused actual damages, either in the form of out-of-pocket expenses or emotional distress. *Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, *7 (S.D.N.Y. 2008). In *Gorman*, the plaintiff alleged that inaccurate information about a mortgage contained on the Experian report caused three lenders to deny his applications for mortgages in January of 2007. 2008 WL at *6. However, the court granted Experian's motion for summary judgment, because the plaintiff "failed to take discovery from any of

the third-party lenders who allegedly denied the loans and [] failed to present evidence showing that (1) the lenders relied on the Experian report; and (2) the inaccurate information regarding the [mortgage loan at issue] was a substantial factor in the lenders' denial of the loans." *Id.*

Brim can offer nothing more than speculation as to the effect, if any, that the Midland account had on any credit application. He has not offered the testimony (or any other evidence) suggesting that the Midland account was a factor at all in any credit decision.

## III.   Plaintiff has presented insufficient evidence of injury, an essential element of his claim.

### A.   Plaintiff has offered no evidence of economic injury.

A plaintiff will not necessarily meet his requirement of showing actual damages simply by offering a loan or credit denial letter or similar document, even if the document specifically references the defendant. *See, e.g., Heupel v. Trans Union LLC*, 193 F.Supp. 2d 1234, 1241 (N.D. Ala. 2002) (although plaintiff's application for credit was denied because of an inaccurate credit report issued by defendant CRA, plaintiff's § 1681e(b) claim nonetheless was dismissed where "there [was] no evidence that [defendant]'s reporting of the [inaccurate] accounts had any bearing on [credit issuer]'s decision"); *Murphy v. Midland Credit Mngmt., Inc.*, 456 F.Supp. 2d 1082, 1092 (E.D. Mo. 2006) (even though the defendant was

4

specifically referenced in the denial letter at issue, the credit reporting agency was not liable under the "reasonable reinvestigation" provision of the FCRA where "[t]he [] denial letter states that the principal reasons for the denial included 'excessive obligations in relation to income,' 'delinquent past or present credit obligations with others,' and 'garnishment, attachment, foreclosure, repossession, collection action or judgment.' In addition to the delinquent [] account [at issue], [plaintiff's] credit report contained other negative tradelines. ... [Plaintiff] has put forth no evidence from [the denier of the loan] that the [delinquent] account was a substantial factor in the loan denial, and as a result, [plaintiff] has failed to meet her burden on this issue"); *Anderson v. Trans Union, LLC*, 345 F.Supp. 2d 963, 975 (W.D. Wis. 2004) (granting defendant CRA's motion for partial summary judgment where "plaintiffs have not shown that they would have received approval of their request for refinancing even if the [defendant CRA] report had been accurate. ... Thus, [plaintiffs] cannot show the prerequisite causal relation between the violation of the statute and the loss of credit"); *Evans v. Credit Bureau*, 904 F.Supp. 123, 126 (W.D.N.Y. 1995) (in granting summary judgment in favor of defendant CRA on plaintiff's FCRA claims, court noted "[t]he only evidence supplied in support of plaintiff's claim for damages is an affidavit from a [] loan officer which indicated that he read a credit report prepared by the defendant which he referred to in the process of evaluating plaintiff's loan application. However, the

[loan officer] also explain[ed] that he denied the pre-screening application because plaintiff did not meet the minimum standard requirements for the loan packages because the records revealed that he had filed for bankruptcy within two years prior to the application. Therefore, plaintiff cannot demonstrate any connection between any inaccuracy in the credit report issued by defendant and plaintiff's failure to obtain pre-approval for a loan application from [lender]").

The FCRA provides for civil liability for both negligent violation, 15 U.S.C. § 1681o, and willful violation, 15 U.S.C. § 1681n. Because there is no evidence that Plaintiff suffered any damages as a result of MCM's alleged wrongdoing, summary judgment is appropriate on any claim for a negligent FCRA violation. "One of the essential elements of maintaining an FCRA claim is that a plaintiff must present evidence that she suffered an injury." *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007). "[E]ven assuming *arguendo*, that [the furnisher] violated § 1681s-2(b), summary judgment in favor of [the furnisher] would still be appropriate because 'no reasonable factfinder could find that [Plaintiffs are] entitled to damages under the FCRA.'" *Id.* at *6; *Reed*, 321 F. Supp. 2d at 1115 ("Further, plaintiff has presented no evidence that, but for the erroneous bankruptcy notation, he would have sought and obtained additional or more favorable credit. Mere speculation is not evidence of actual damages.").

**B.**   **Plaintiff's testimony regarding mental anguish or emotional distress is insufficient as a matter of law.**

Plaintiff likewise has not properly supported his own allegations of mental or emotional distress.    Plaintiff's allegations of emotional distress must be supported with "a degree of specificity which may include corroborating testimony or medical or psychological evidence . . . [or] evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Riley*, 194 F. Supp. 2d at 1248 (granting summary judgment for defendant) (internal quotation marks and citation omitted).

Under these principles, the Fifth Circuit vacated judgment in favor of a plaintiff on his claims for negligent and willful violation of the FCRA and "render[ed] that [plaintiff] take[] nothing with respect to his claims." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 376 (5th Cir. 2001).  The Court held that there was "insufficient evidence of actual damages" based on the plaintiff's own testimony, *id.* at 371, which is strikingly similar to Plaintiff's "damages" testimony in this case:

| Cousin's Testimony |
|---|
| "I felt real frustrated, real irritated to know that this information was continuing to be reported over and over again." *Cousin*, 246 F.3d at 370 n. 17. |
| "I already told them that it was not me. I wanted to say that it was a feeling of like being in jail knowing that I – I mean, I didn't do this. I'm not guilty, but I was continuing to be punished for it." *Cousin*, 246 F.3d at 370 n. 17. |
| "Very upset, angry. And it just was that, you know, all things I had done, the |

> company to not—they didn't hear me. I had told them over and over again but they didn't listen to me, you know. So that's how I felt." *Cousin*, 246 F.3d at 371. "Q. You felt like nobody was listening? A. Felt like nobody was listening." *Id.*

> "I felt like, if you [k]now anything about a maze, it's like being trapped inside of something that you can't get out of." *Cousin*, 246 F.3d at 371.

Plaintiff never offered more than such conclusory allegations. *See, e.g., Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d 1253, 1267 (S.D. Fla. 2009) ("Plaintiff provided only conclusory and self-serving statements regarding the alleged emotional distress; Plaintiff did not seek treatment for his alleged emotional distress; and Plaintiff failed to explain his alleged emotional distress in detail."). "[A]n FCRA plaintiff 'must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress.'" *Id.* at 1268 (quoting *Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005)). Consequently, Midland is entitled to judgment as a matter of law because Plaintiff has not presented sufficient evidence of actual damages caused by Midland's actions.

Not only must Brim produce corroborating testimony relating to his alleged emotional distress, but he must also link such emotional distress with the alleged improper furnishing of information. *See, e.g., Okocha v. HSBC Bank USA, N.A.*, 2010 WL 5122614, *6 (S.D.N.Y. 2010) (court dismissed plaintiff's FCRA claim

seeking emotional distress damages, noting that "[e]ven if the brief testimony of [plaintiff's] friend, Dr. Nwokedi, sufficiently corroborate[d] plaintiff's own testimony regarding his pain and suffering, he still has failed to link such distress with the release of inaccurate information to creditors").

## III.   Plaintiff has offered no evidence that Midland consciously or recklessly disregarded the law, and therefore his claim for willful violation of the FCRA should not survive directed verdict.

Plaintiff attempts to hold Midland liable under the FCRA's *willfulness* provision, 15 U.S.C. § 1681n. (*See* Compl., p. 15). The evidence Plaintiff offered in his case-in-chief simply cannot support a claim for willfulness, even if there was a technical violation, because "there is an absence of evidence to support" that Midland consciously or recklessly disregarded the law. *Riley*, 194 F. Supp. 2d at 1243; *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007) ("Thus, a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). This is a high standard:

> While the Eleventh Circuit has not specifically addressed the meaning of "willful" under the FCRA, the Ninth Circuit has held that "as used in the FCRA, 'willfully' entails a 'conscious disregard' of the law, which means 'either knowing that policy [or action] to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy [or action] contravened those rights.'"

*King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279 (N.D. Ga. 2006) (granting summary judgment on plaintiff's claim for willful violation of the FCRA) (citation omitted).   In other words, "[t]o be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'"   *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993) (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (describing cases finding willfulness where reports were "rife with innuendo, misstatement, and slander" or "contained statements about the plaintiff regarding her excessive drinking"), *cert. denied*, 483 U.S. 1022 (1987)); *see also Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1241 (N.D. Ala. 2002) (granting summary judgment for defendant; "Courts have consistently disallowed punitive damages absent special and aggravating circumstances.").

In the *Rambarran* case, the furnisher's own records reflected that the plaintiff's account was paid in full, and the furnisher had twice confirmed to the plaintiff in writing that his account was paid, yet his credit report continued to show a charged-off account.  The furnisher responded to disputes from the CRAs by verifying the existence of a charged-off account.   Notwithstanding this evidence, the court held that "a factfinder could not reasonably infer that [the furnisher's] mistaken verification of Plaintiff's charged off account was willful or reckless, as opposed to merely negligent."   *Id.* at 1270 (granting summary

judgment for furnisher).  There was no evidence in the record to support a degree of liability beyond negligence, such as "(1) committing an FCRA violation that amounts to more than 'an isolated instance of human error which was properly cured'; (2) engaging in misrepresentation or concealment; or (3) failing to follow its own FCRA reinvestigation procedures."  Id. at 1272.    Cf. *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1139-40 (D. Nev. 2008) (denying summary judgment because plaintiff had met his burden by showing that, after expressly acknowledging in writing that it had erroneously misapplied the plaintiff's payment, the furnisher continuously refused to correct its own error because the plaintiff had another loan that was delinquent.).

Under this standard, "the failure to delete erroneous information after receipt of notice by the consumer and even the reinsertion of incorrect information after it had previously been deleted have been found to fall short of the knowing and intentional disregard standard." *Reed*, 321 F. Supp. 2d at 1116; *Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) (granting summary judgment on willfulness claim because "fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).  Rather, the evidence must show an "intention to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report." *King*, 452 F. Supp. 2d at 1280 (citing *Stevenson*, 987 F.2d at

294).  *See Reed*, 321 F. Supp. 2d at 1116 ("Here, plaintiff simply alleges that defendants procedures were unreasonable and therefore violated the Act.  Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute.").  The Fifth Circuit has similarly rejected a plaintiff's argument that the failure to implement a better computerized system willfully violated the FCRA:

> The system was not perfect, but it was effective for a few months, and Trans Union never attempted to mislead Cousin with respect to his consumer report or his rights.  We may fault the failure to implement a full-proof [*sic*] cloaking procedure as unreasonable, but we cannot say that it was willful

*Cousin*, 246 F.3d at 374; *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349 (N.D. Ga. 2006) (CRA could not be held liable for a willful violation of the FCRA in connection with its report of fraudulent loan attributed to victim of identity theft, where CRA provided plaintiff's credit report on request, did not conceal information about the report, investigated the disputed account, and attempted to resolve the dispute; moreover, while a "glitch" in CRA's system allowed the account to reappear, there was no evidence of any intention to thwart plaintiff's right to have inaccurate information removed from his report); *Moore v. Equifax Info. Servs., Inc.*, 333 F. Supp. 2d 1360 (N.D. Ga. 2004) (although CRA may have failed to follow reasonable procedures to assure maximum possible accuracy of information in its credit files, and may have failed to fully and

adequately investigate a disputed bad check report included in consumer's file, its conduct was at most negligent and did not reveal any intention consciously to thwart consumer's right to have inaccurate information removed promptly from his report, as required to support punitive damages award against it in lawsuit under the FCRA).   Plaintiff has not offered sufficient evidence to show that Midland willfully violated FCRA, and therefore that claim should not survive directed verdict.

## CONCLUSION

In his case in chief, Plaintiff has failed to present evidence concerning the standard of care for a "reasonable" investigation.  Even if one could overlook this omission, Plaintiff has not offered evidence that he suffered any injury, much less that Midland's investigation caused that injury.

Respectfully submitted this 23rd 24th day of February, 2011.

_____
One of the Attorneys for Defendant
Midland Credit Management, Inc.

**OF COUNSEL:**
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February 2011, I have filed the above and foregoing in open court, and have provided the same to the following counsel of record in open court:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC  29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL  35801

Leonard A Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA  23606
Email: lenbennett@clalegal.com

_____
Of Counsel