IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
FEB 2 5 2011

| | | |
|---|---|---|
| JAMON T. BRIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:10-cv-0369-IPJ |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## RENEWED MOTION FOR JUDGMENT AS A MATER OF LAW

Pursuant to Fed. R. Civ. P. 50(a), defendant Midland Credit Management, Inc. ("Midland") moves this Court for Judgment as a Matter of Law, in whole or in part, on grounds that there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff Jamon Brim on any claim under the Fair Credit Reporting Act ("FCRA"), and Plaintiff cannot under law prevail on a claim for either negligent or willfull violation of the FCRA. In support of this motion, Midland incorporates by reference the arguments set forth in it Motion for Judgment as a Matter of Law at the Close of Plaintiff's Case, which was filed in open court on February 24, 2011, and further states as follows:

## I. Plaintiff has not offered sufficient evidence that Midland's actions, even if unreasonable, caused Plaintiff's alleged injuries.

Plaintiff has not offered sufficient evidence that Midland's investigation, even if unreasonable, caused any of his alleged injuries. "[T]o carry his burden, the plaintiff had to demonstrate some causal relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account. We hold that plaintiffs suing furnishers under § 1681s-2(b) must make the same showing, for several reasons." *Chiang*, 595 F.3d at 37; *see Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir. 1991) (stressing that plaintiff has an affirmative duty to present evidence supporting his claim that the alleged inaccurate report caused him damage).

Plaintiff has not offered sufficient evidence that Midland's investigation of his disputes to the CRAs, even if unreasonable, caused any of his alleged injuries. Plaintiff suggested that there were three additional steps Midland should have taken in responses to his disputes, but each is a dead end;

### 1. Contact Dell Financial Services

Plaintiff has suggested that Midland should have contacted Dell Financial Services in response to his disputes. The uncontroverted evidence, however, is that such a step would have been inconsequential. Rachel Garlock on behalf of Dell Financial Services, testified as follows:

> Q. So if someone had inquired about the status of Mr. Brim's account prior to August of 2010, what would Dell Financial Services' response have been?
>
> A. That the customer still had a balance on the account and it was still owed.

(Garlock Dep. 14:13-17).

### 2. Contact Redstone Federal Credit Union

Anthony Cox, on behalf of Redstone Federal Credit Union testified that Redstone's policy prohibits disclosure of any information about a member's account to a third-party. Had Midland contacted Redstone in response to Plaintiff's dispute, it would not have received any information confirming Plaintiff's prior payment to Dell Financial Services.

### 3. Contact the Plaintiff

Plaintiff has not offered any evidence that had Midland contacted him the results would have been any different. Plaintiff testified that he obtained no documentation when he made the payment over the phone in November 2004. Therefore, Dell was the only entity that could confirm that the payment was actually received, and Ms. Garlock testified that Dell needed the transactional detail report to trace the funds. Rather than provide Dell with that document, Plaintiff repeatedly provided his bank statement, which Mr. Cox (from Redstone) testified does not show tracing information.

Moreover, the law does not require a furnisher to contact consumers in response to their disputes: Although a furnisher may choose to contact a consumer directly about a dispute reported to the furnisher by a CRA, 'requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA.'" *Chiang*, 595 F.3d at 36 (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

Taking these steps would not have changed the outcome of Midland's investigation—Midland still would have been unable to discover that Plaintiff had previously paid the account directly to Dell. Without evidence that the results would have differed had Midland investigated differently, Plaintiff has not met his burden to demonstrate that an action or inaction my Midland *caused* his alleged injuries, if they exist.

The very existence of most of the alleged injuries are likewise unsupported by sufficient proof. For instance, Plaintiff has offered absolutely no evidence that he was denied for a mortgage—only inferences from the fact that he was no offered mortgages by companies that checked his credit report. Even so, there is no evidence of what information those companies requested, obtained, or viewed from Plaintiff's credit report. There was not any evidence, such as testimony from the mortgage companies, that the credit report—or Midland's specific entry on the

credit report—caused them to deny Plaintiff's alleged mortgage applications. *Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, *7 (S.D.N.Y. 2008) (granting Experian's motion for summary judgment, because the plaintiff "failed to take discovery from any of the third-party lenders who allegedly denied the loans and [] failed to present evidence showing that (1) the lenders relied on the Experian report; and (2) the inaccurate information regarding the [mortgage loan at issue] was a substantial factor in the lenders' denial of the loans.")

The only document offered in the trial purportedly denying Plaintiff credit also does not state that the denial was based on Midland's reporting of information about the Plaintiff. It states instead:

> [W]e are unable to open an account for you at this time for the following reason(s):
>
> **Your consumer credit bureau score from Trans Union is too low.**

(Pl.'s Ex. 7) (emphasis added). The letter went on list some factors that may have contributed to Plaintiff's credit score from TransUnion. Testimony from TransUnion, however, clearly establishes that the Midland account was not a factor that affected Plaintiff's TransUnion score:

> Q. What is the impact in terms of credit score on an account being marked as disputed?
>
> A. It does not get factored into the credit score.
>
> Q. And so from early August 2008 through September 2010 **the Midland account would not have been factored into Mr. Brim's credit score?**

A.  That is correct.

(Newnom Dep. 65:7-15) (emphasis added); *see Anderson v. Trans Union, LLC*, 345 F.Supp. 2d 963, 975 (W.D. Wis. 2004) (granting defendant CRA's motion for partial summary judgment where "plaintiffs have not shown that they would have received approval of their request for refinancing even if the [defendant CRA] report had been accurate. ... Thus, [plaintiffs] cannot show the prerequisite causal relation between the violation of the statute and the loss of credit").

Plaintiff likewise has not properly supported his own allegations of mental or emotional distress. Plaintiff's allegations of emotional distress must be supported with "a degree of specificity which may include corroborating testimony or medical or psychological evidence . . . [or] evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Riley*, 194 F. Supp. 2d at 1248 (granting summary judgment for defendant) (internal quotation marks and citation omitted); *see, e.g., Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d 1253, 1267 (S.D. Fla. 2009) ("Plaintiff provided only conclusory and self-serving statements regarding the alleged emotional distress; Plaintiff did not seek treatment for his alleged emotional distress; and Plaintiff failed to explain his alleged emotional distress in detail."). "[A]n FCRA plaintiff 'must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for

emotional distress.'" *Id.* at 1268 (quoting *Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005)). Consequently, Midland is entitled to judgment as a matter of law because Plaintiff has not presented sufficient evidence of actual damages caused by Midland's actions.

## II. Plaintiff has offered no evidence that Midland consciously or recklessly disregarded the law, and therefore his claim for willful violation of the FCRA should not survive directed verdict.

The Eleventh Circuit has stated:

> To prove a willful violation, a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act. To prove a reckless violation, a consumer must establish that the action of the agency "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."

*Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

In the *Rambarran* case cited, the furnisher's own records reflected that the plaintiff's account was paid in full, and the furnisher had twice confirmed to the plaintiff in writing that his account was paid, yet his credit report continued to show a charged-off account. The furnisher responded to disputes from the CRAs by verifying the existence of a charged-off account. Notwithstanding this evidence, the court held that "a factfinder could not reasonably infer that [the furnisher's] mistaken verification of Plaintiff's charged off account was willful or

reckless, as opposed to merely negligent." *Id.* at 1270 (granting summary judgment for furnisher). There was no evidence in the record to support a degree of liability beyond negligence, such as "(1) committing an FCRA violation that amounts to more than 'an isolated instance of human error which was properly cured'; (2) engaging in misrepresentation or concealment; or (3) failing to follow its own FCRA reinvestigation procedures." *Id.* at 1272.

Under this standard, "the failure to delete erroneous information after receipt of notice by the consumer and even the reinsertion of incorrect information after it had previously been deleted have been found to fall short of the knowing and intentional disregard standard." *Reed*, 321 F. Supp. 2d at 1116; *Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) (granting summary judgment on willfulness claim because "fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights). Rather, the evidence must show an "intention to thwart consciously [plaintiff's] right to have inaccurate information removed promptly from his report." *King*, 452 F. Supp. 2d at 1280 (citing *Stevenson*, 987 F.2d at 294). *See Reed*, 321 F. Supp. 2d at 1116 ("Here, plaintiff simply alleges that defendants procedures were unreasonable and therefore violated the Act. Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute."). The Fifth Circuit has

similarly rejected a plaintiff's argument that the failure to implement a better computerized system willfully violated the FCRA:

> The system was not perfect, but it was effective for a few months, and Trans Union never attempted to mislead Cousin with respect to his consumer report or his rights. We may fault the failure to implement a full-proof [*sic*] cloaking procedure as unreasonable, but we cannot say that it was willful

*Cousin*, 246 F.3d at 374; *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349 (N.D. Ga. 2006) (CRA could not be held liable for a willful violation of the FCRA in connection with its report of fraudulent loan attributed to victim of identity theft, where CRA provided plaintiff's credit report on request, did not conceal information about the report, investigated the disputed account, and attempted to resolve the dispute; moreover, while a "glitch" in CRA's system allowed the account to reappear, there was no evidence of any intention to thwart plaintiff's right to have inaccurate information removed from his report); *Moore v. Equifax Info. Servs., Inc.*, 333 F. Supp. 2d 1360 (N.D. Ga. 2004) (although CRA may have failed to follow reasonable procedures to assure maximum possible accuracy of information in its credit files, and may have failed to fully and adequately investigate a disputed bad check report included in consumer's file, its conduct was at most negligent and did not reveal any intention consciously to thwart consumer's right to have inaccurate information removed promptly from his report, as required to support punitive damages award against it in lawsuit under

the FCRA). Plaintiff has not offered sufficient evidence to show that Midland willfully violated FCRA, and therefore that claim should not survive directed verdict.

## CONCLUSION

Plaintiff's failure to offer sufficient evidence of causation of an injury entitled Midland to judgment as a matter of law. Even if the Court concludes otherwise and submits negligence to the jury, Plaintiff has not met the higher burden of proving willfulness.

Respectfully submitted this 25th day of February, 2011.

_____
One of the Attorneys for Defendant
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205)251-8100
Facsimile: (205)226-8798
elangley@balch.com
jtompkins@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February 2011, I have filed the above and foregoing in open court, and have provided the same to the following counsel of record in open court:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL 35801

Leonard A Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA 23606
Email: lenbennett@clalegal.com

/s/ _____
Of Counsel