# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMON T. BRIM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** | ) | |
| **MANAGEMENT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, THAT THE JUDGMENT BE VACATED

Pursuant to Fed. R. Civ. P. 50(b), defendant Midland Credit Management, Inc. ("Midland") renews its motion for judgment as a matter of law, in whole or in part, on the ground that plaintiff has failed to provide legally sufficient evidence of several essential elements of his cause of action.[1]   In support of this motion, Midland incorporates by reference the arguments set forth in its Motion for Judgment as a Matter of Law at the Close of Plaintiff's Case (doc. 75) and Renewed Motion for Judgment as a Matter of Law at the Close of All Evidence (doc. 76), and further states as follows:

---

[1] Alternatively, as explained in Midland's contemporaneously filed Motion for a New Trial, Midland moves the Court, pursuant to Fed. R. Civ. P. 59(a), to vacate the judgment on ground that the jury's verdict is against the great weight of the evidence.

## **INTRODUCTION**

The judgment in this case stands or falls based on the sufficiency of the record evidence to support plaintiff's claim for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681n ("FCRA").  Midland is entitled to judgment as a matter of law because plaintiff failed to offer legally sufficient evidence on three elements necessary to prevail on his willful violation claim:  (1) that Midland knowingly or recklessly violated the law; (2) that plaintiff suffered a cognizable injury; and (3) that Midland's conduct actually caused the harm alleged.  If the evidence is legally insufficient with respect to any one of these elements, Midland is entitled to judgment in its favor on the claim that it willfully violated the FCRA.

Plaintiff has failed to prove *any* of these three elements.  First, the evidence is insufficient to support a finding that Midland's investigation or procedures were knowingly or recklessly in violation of the FCRA.  The mere fact that the investigation was ultimately shown to have reached the wrong result is not enough.  Moreover, even if Midland willfully violated the FCRA, plaintiff did not offer sufficient competent evidence that he suffered any cognizable injury.  The only documented credit injury—an alleged credit denial by American Express—was based entirely on unauthenticated hearsay; plaintiff asserted mental anguish only conclusorily and without corroboration of any kind.  Finally, even if plaintiff had proven a willful violation and a cognizable injury, he failed to offer sufficient

evidence that either alleged injury—economic or emotional—was actually caused by Midland's actions.  In fact, the record evidence clearly demonstrates that the investigation would have yielded exactly the same result even if Midland had done everything plaintiff says it should have.

## ARGUMENT AND AUTHORITY

To prevail on a willful violation claim under the FCRA alleging failure to conduct a reasonable investigation, a plaintiff must show that the defendant knowingly or recklessly failed to conduct a reasonable investigation of disputed information upon receiving notice from a consumer reporting agency.  *See Akalwadi v. Risk Management Alternatives, Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004); *Spector v. Experian Info. Servs., Inc.*, 321 F. Supp. 2d 348 (D. Conn. 2004). To recover actual damages, a plaintiff "'must present evidence of a causal relation between the violation of the statute and the loss of credit, or some other harm.'" *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008), *aff'd*, 360 F. App'x 255 (2d Cir. 2010) (quoting *Whiting v. Harley-Davidson Fin. Servs.*, 534 F. Supp. 2d 823, 833-34 (N.D. Ill. 2008)).

Because plaintiff offered no legally sufficient evidence that Midland willfully violated the FCRA, that plaintiff suffered any cognizable injury, or that Midland's alleged violation actually caused plaintiff's harm, Midland is entitled to judgment as a matter of law.

3

I.   **PLAINTIFF OFFERED NO LEGALLY SUFFICIENT EVIDENCE THAT MIDLAND KNOWINGLY OR RECKLESSLY DISREGARDED THE LAW.**

   A.   **Willfulness Is High Standard That Is Not Satisfied By Mere Evidence Of Inaccuracy Or Unreasonableness.**

A plaintiff may succeed on a claim for willful violation of the FCRA only by proving that the defendant knowingly or recklessly disregarded the law.  *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009); *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253 (S.D. Fla. 2009) (granting summary judgment for furnisher on claim for willful violation of FCRA).  In particular:

> To prove a willful violation, a consumer must prove that a [defendant] either knowingly or recklessly violated the requirements of the Act. To prove a reckless violation, a consumer must establish that the action of the [defendant] "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."

*Levine*, 554 F.3d at 1318 (quoting  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).  Plaintiff did not meet his burden in this case.

*Rambarran* demonstrates just how high the willfulness threshold is.  There, *the furnisher's own records* reflected that the plaintiff's account was paid in full, and the furnisher had twice confirmed to the plaintiff in writing that his account was paid.  Even so, the plaintiff's credit report continued to show a charged-off account.  And despite the evidence in its own records and its repeated reassurances to the plaintiff, the furnisher responded to disputes from the CRAs by verifying the

existence of a charged-off account.  Notwithstanding this evidence—far more aggravated than anything that occurred in the case at bar—the court held that "a factfinder could not reasonably infer that [the furnisher's] mistaken verification of Plaintiff's charged off account was willful or reckless, as opposed to merely negligent." *Rambarran*, 609 F. Supp. 2d at 1270 (granting summary judgment for furnisher).  There was, in particular, no evidence of the furnisher "(1) committing an FCRA violation that amounts to more than 'an isolated instance of human error which was properly cured'; (2) engaging in misrepresentation or concealment; or (3) failing to follow its own FCRA reinvestigation procedures." *Id.* at 1272.  Nor is there any such evidence in this case.

Under the standards for proving willful violation of the FCRA, "the failure to delete erroneous information after receipt of notice by the consumer and even the reinsertion of incorrect information after it had previously been deleted have been found to fall short of the knowing and intentional disregard standard." *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1116 (D. Minn. 2004); *see also Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) (granting summary judgment on willfulness claim because "fail[ure] to produce immediate eradication of inaccurate information" is not a knowing and conscious disregard for the plaintiff's rights).  Rather, the evidence must show an "intention to thwart consciously [plaintiff's] right to have inaccurate information

removed promptly from his report." *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1280 (N.D. Ga. 2006) (citing *Stevenson v. TRW Inc.*, 987 F.2d 288, 294) (5th Cir. 1993); *see also Reed*, 321 F. Supp. 2d at 1116 ("Here, plaintiff simply alleges that defendant's procedures were unreasonable and therefore violated the Act. Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute.").

The Fifth Circuit has similarly rejected a plaintiff's argument—not unlike plaintiff's argument here—that the failure to implement a better computerized system constituted a willful violation of the FCRA:

> The system was not perfect, but it was effective for a few months, and Trans Union never attempted to mislead [the plaintiff] with respect to his consumer report or his rights. We may fault the failure to implement a full-proof [*sic*] cloaking procedure as unreasonable, but we cannot say that it was willful

*Cousin v. Trans Union Corp.*, 246 F.3d 359, 374 (5th Cir. 2001); *see Moore v. Equifax Info. Servs., Inc.*, 333 F. Supp. 2d 1360 (N.D. Ga. 2004) (concluding that conduct was at most negligent and did not reveal any intention consciously to thwart consumer's right to have inaccurate information removed promptly from his report).

### B.    Plaintiff Offered No Evidence That Midland Knowingly Or Recklessly Disregarded His Rights Under The FCRA.

Plaintiff did not remotely meet the high willfulness threshold here. *First*, plaintiff did not offer any testimony, expert or otherwise, concerning the standard

of care, from which a reasonable jury could conclude that Midland actions constituted a violation—let alone a willful violation—of the FCRA.  There was no evidence that Midland's investigation of plaintiff's disputes did not comply with the applicable standard of care.  In fact, the only other evidence in the case bearing on any furnisher's investigation or procedures was from Dell Financial Services, the original creditor from whom Midland purchased plaintiff's account.   The undisputed evidence showed that even Dell Financial, when presented with identical information regarding plaintiff's dispute, came to the same conclusion that Midland did.  The mere fact that the result of Midland's investigation turned out to be wrong does not prove that Midland willfully violated the FCRA.  *Reed*, 321 F. Supp. 2d at 1116.  Given the absence of standard-of-care evidence, it is doubtful whether there was sufficient evidence from which a reasonable jury could even have determined that Midland's investigation of plaintiff's disputes was "unreasonable."  But the court need not address that issue, because the jury found for plaintiff only on his willfulness claim (doc. 74), and the evidence most certainly does not rise to the level of a *willful* violation of the FCRA.

Second, even if Midland's investigation *was* somehow unreasonable, it does not follow that a willful violation of FCRA occurred.  Plaintiff offered nothing to show that Midland's compliance with its own procedures constitutes a willful violation of the FCRA.  *See Spector v. Experian Info. Servs., Inc.*, 321 F. Supp. 2d

348, 358 (D. Conn. 2004) ("[T]here is no evidence that [defendant] engaged in deliberate or reckless conduct that would warrant punitive damages.  In fact, plaintiff admits that '[defendant] followed its normal procedure in responding to plaintiff's dispute and has no information indicative of any departure from normal procedures.' [] Accordingly, summary judgment is also granted in favor of defendants on plaintiff's claim of willful non-compliance.") (internal citation omitted).   Plaintiff's personal viewpoint—or more accurately, his lawyer's arguments in opening and closing—regarding the sufficiency of Midland's investigation or procedures is not evidence of willful violation of the FCRA.

Because plaintiff failed to offer sufficient evidence of a willful violation of the FCRA, Midland is entitled to judgment as a matter of law in its favor.

## II.   PLAINTIFF OFFERED NO LEGALLY SUFFICIENT EVIDENCE THAT HE SUFFERED ANY COGNIZABLE INJURY, EITHER ECONOMIC OR EMOTIONAL.

Even if plaintiff had proven that Midland willfully violated the FCRA, his claim would fail as a matter of law—and Midland would be entitled to judgment—because he failed to offer legally sufficient evidence of a cognizable injury.

### A.   Plaintiff Offered Insufficient Evidence Of An Economic Injury As A Matter Of Law.

Plaintiff did not offer sufficient competent evidence that he suffered a credit injury.  Plaintiff's only documentary evidence that he was ever denied credit was a letter purportedly sent by American Express.  That "evidence" fails to establish the

necessary credit injury for two reasons.  First, as explained in detail in Midland's contemporaneously filed Motion for a New Trial, the American Express letter was unauthenticated hearsay and thus doubly inadmissible.  Second, and in any event, the undisputed evidence demonstrates that the purported credit denial by American Express was *not* based on the Midland account.  The denial letter stated as the basis of denial only that "Your consumer credit bureau score from TransUnion is too low," (Pl.'s Ex. 7), and a TransUnion witness testified, unequivocally, that "from early August 2008 through September 2010"—*i.e.*, the relevant timeframe here—"the Midland account would not have been factored into Mr. Brim's credit score."  (Trial Tr. vol. 3, 58:11-14; *see also infra* at 21-22).  Accordingly, as a matter of law, the American Express letter cannot prove credit injury.

Moreover, the supposed American Express denial could not legally form the basis of any damages under the FCRA.  The FCRA applies only to credit obtained "to be used primarily for personal, family, or household purposes."  15 U.S.C. § 1681a(d)(1)(A).  "An applicant denied credit for a commercial purpose does not have a claim under the FCRA."  *Thomas v. Cendant Mortgage*, No. Civ.A. 03-1672, 2004 WL 2600772, at *3 (E.D. Pa. Nov. 15, 2004) (citing *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996)).  At trial, plaintiff testified that he applied for credit from American Express for business purposes:

> Q.  Mr. Brim, were you seeking to obtain that [American Express] card for business purposes?

A.    Correct.

Q.    And that was not going to be a personal credit card, was it?

A.    No.

(Trial Tr. vol. 2, 131:14-19).  Consequently, as a matter of law, plaintiff did not have a claim under the FCRA for any damages related to this supposed denial.

Separately from the supposed American Express denial, plaintiff insinuated that he had been denied a mortgage, but he offered absolutely *no* evidence of any such denial.  (Trial Tr. vol. 3, 95:25-96:3).  Plaintiff could not even testify that any lender denied his application for a mortgage.  (Trial Tr. vol. 3, 128:10-131:1). Rather, all he could show was that he *was not offered* mortgages by companies that checked his credit report.  The inference of an actual denial is pure speculation. There is no evidence of what information those companies requested, obtained, or viewed from plaintiff's credit report.  Plaintiff introduced no evidence, such as testimony from an employee of one of the mortgage companies, that plaintiff's credit report—let alone Midland's specific entry on the credit report—caused them not to offer plaintiff a mortgage.  *See Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, *7 (S.D.N.Y. 2008) (granting Experian's motion for summary judgment, because the plaintiff "failed to take discovery from any of the third-party lenders who allegedly denied the loans and [] failed to present evidence showing that (1) the lenders relied on the Experian report; and (2) the inaccurate

information regarding the [mortgage loan at issue] was a substantial factor in the lenders' denial of the loans").

Far from there being any evidence that plaintiff was denied a mortgage, the record evidence showed that, in fact, plaintiff actually *did* receive a mortgage from Platinum Mortgage.  (Trial Tr. vol. 3, 99:19-100:2; 126:11-14).  In fact, plaintiff testified that Platinum Mortgage actually disregarded the Midland account when approving his mortgage application.  (Trial Tr. vol. 3, 119:15-22).  And plaintiff offered absolutely no evidence (or even argument, for that matter) that the terms of this mortgage were less favorable than any other mortgage plaintiff might have otherwise received.

The jury's verdict was not supported by sufficient evidence, as plaintiff failed to produce evidence of actual economic injury.  *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir. 1991) (stressing that an FCRA plaintiff has an affirmative duty to present evidence supporting his claim that the alleged inaccurate report caused him damage); *Ruffin-Thompkins v. Experian Info. Sys., Inc.*, 2003 WL 25719228, *5 (N.D. Ill. 2003) ("Because [plaintiff] has failed to adduce any evidence of actual damages, she obviously cannot show a causal link between the inaccuracy in her report and her alleged damages.").

## B.    Plaintiff Offered Insufficient Evidence Of Emotional Distress As A Matter Of Law.

Plaintiff's emotional distress allegation is insufficient as a matter of law to show a cognizable injury, for two reasons.

First, as a threshold matter, because plaintiff failed to provide legally sufficient evidence of any actual *credit* injury, Midland is entitled to judgment as a matter of law without respect to plaintiff's emotional distress allegations.   An FCRA plaintiff's alleged emotional distress is not a cognizable stand-alone injury; rather, it must be accompanied by an actual credit injury.   *See Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 648 (S.D. Ala. 2007) ("To the extent [plaintiff] seeks damages for mental stress and emotional distress, she has failed to demonstrate that she suffered any actual injury (credit denial) caused by [defendant], a requisite to recovery of such damages.") (citing *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1248 (S.D. Ala. 2002) (providing that the plaintiff's claim of damages for being upset at credit denials failed where the plaintiff provided no evidence he was denied credit based on a Trans Union report)); *see also Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (noting that an FCRA plaintiff must show proof of actual injury for damages to be awarded for mental or emotional distress).   Because, as already explained, plaintiff proved no cognizable credit injury, his emotional-distress allegations are of no avail.

Second, and separately, a plaintiff's allegations of emotional distress (even if accompanied by proof of an actual credit injury) must be supported with "a degree of specificity which may include corroborating testimony or medical or psychological evidence . . . [or] evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1248 (S.D. Ala. 2002) (granting summary judgment for defendant) (internal quotation marks and citation omitted); *see, e.g.*, *Rambarran*, 609 F. Supp. 2d at 1267 ("Plaintiff provided only conclusory and self-serving statements regarding the alleged emotional distress; Plaintiff did not seek treatment for his alleged emotional distress; and Plaintiff failed to explain his alleged emotional distress in detail."). "[A]n FCRA plaintiff 'must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress.'" *Id.* at 1268 (quoting *Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005)).

In *Bagby v. Experian Info. Solutions, Inc.*, 162 Fed. App'x 600 (7th Cir. 2006), the plaintiff-consumer brought an FCRA claim against the defendant-CRA for its alleged failure to conduct a reasonable investigation into disputed information contained in the plaintiff's credit report. The district court granted summary judgment for the CRA on the ground that the plaintiff's allegations of

emotional distress were insufficient as a matter of law: "[Plaintiff]'s allegations, that she 'stress[es],' gets tension headaches, and clashes with her fiancé over her credit problems, are, at most, self-serving and conclusory statements about her emotional distress. [] According to the record before us, [plaintiff] did not seek any medical or psychological treatment for the emotional distress she claims resulted from [defendant]'s actions." *Id.* at 605 (internal citations omitted).  Similarly, in the case at bar, plaintiff has offered no sort of corroborating evidence of his alleged emotional distress—either through evidence that he sought medical or psychological treatment or even the testimony of a family member or friend to corroborate his claim. *See McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360 (S.D. Fla. 2009) (granting summary judgment on claim under the Real Estate Settlement Procedures Act where plaintiffs failed to produce "other evidence through affidavits or sworn testimony from witnesses supporting their emotional distress claim"), *aff'd*, 398 Fed. App'x 467 (11th Cir. 2010); *cf. also Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (observing, in a constitutional case, that "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a ... violation occurred supports an award for compensatory damages").

Here, plaintiff offered no evidence at trial of his emotional distress other than his own "self-serving and conclusory statements." *Bagby*, 162 Fed. App'x at 605. Even that testimony constitutes *at most* a mere 28 lines of the transcript—barely one page of the 674-page transcript—in which plaintiff offered the most general of testimony: that he was "kind of saddened" (Trial Tr. vol. 3, 108:16-19); that it "was rough" (Trial Tr. vol. 3, 109:3-9); that "[i]t added a lot of stress" (Trial Tr. vol. 3, 121:3-6); that he "los[t] … sleep because worrying about trying to get a loan to get a house" (Trial Tr. vol. 3, 121:7-11); and that the inability to get a loan "was a headache in itself" (Trial Tr. vol. 3, 121:14-16). He testified that he could not sleep "out of a month, I would say at least one week, maybe." (Trial Tr. vol. 3, 121:21-24). Plaintiff testified that he medicated himself with Nyquil (Trial Tr. vol. 3, 121:18-20) and BC "headache medicine." (Trial Tr. vol. 3, 122:13-15). As a matter of law, this type of self-serving, conclusory and uncorroborated testimony cannot form the basis of an award for emotional distress damages.

* * *

Because plaintiff has not presented sufficient evidence of any actual damages—economic or emotional—Midland is entitled to judgment as a matter of law.

III.   **PLAINTIFF OFFERED NO LEGALLY SUFFICIENT EVIDENCE THAT MIDLAND'S ACTIONS CAUSED PLAINTIFF'S ALLEGED INJURIES.**

Even if plaintiff had proven that Midland willfully violated the FCRA and, further, that he had suffered a cognizable injury, Midland would be entitled to judgment as a matter of law because plaintiff has not offered sufficient evidence that Midland's conduct actually caused the harm he alleges.

A.   **Plaintiff Did Not Prove That Midland's Conduct Caused His Alleged Injuries Because The Evidence Showed That The Results Of Midland's Investigation Would Have Been The Same Even If It Had Done Everything Plaintiff Says It Should Have.**

To prove his case, plaintiff had to demonstrate a causal relationship between Midland's allegedly unreasonable reinvestigation and the failure to discover inaccuracies in his account. *Chiang v. Verizon*, 595 F.3d 26, 37 (1st Cir. 2010). In particular, to establish the required causal link, plaintiff had to show that a different investigation would have yielded a different result. *See Donovan v. Bank of Am.*, 574 F. Supp. 2d 192, 206 (D. Me. 2008) ("If a reasonable investigation would not have changed the outcome, [plaintiff] cannot show that he has been harmed by any alleged flaws in the [defendant]'s investigation."); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 843-44 (N.D. Ill. 2005) (holding that the CRA's investigation was reasonable as a matter of law because the plaintiff failed to identify information that a more extensive investigation would have revealed so as to provide a more accurate report); *cf. also Cushman v. Trans Union*, 115 F.3d 220,

226 (3d Cir. 1997) (quoting with approval the district court's summation, in a §

1681i(a) case against a CRA, that "the decisive inquiry is whether [the CRA] could

have determined that the [plaintiff's allegation was correct] if it had reasonably

investigated the matter").

Plaintiff failed utterly to establish this necessary causal link.   Plaintiff

offered no legally sufficient evidence that Midland's investigation of his disputes

to the CRAs, even if reckless, *caused* any of his alleged injuries.   Plaintiff argued

at trial (albeit without any supporting evidence) that there were three additional

steps Midland should have taken in response to plaintiff's disputes: (1) contact

Dell Financial; (2) contact Redstone Federal Credit Union ("Redstone"); and (3)

contact the plaintiff himself.   (*See* Trial Tr. vol. 2, 34:24-35:2; 55:20).   None of

those steps, even if taken, would have yielded a different result.   Accordingly,

plaintiff's causation evidence fails, and Midland is entitled to judgment as matter

of law.

### 1.   The undisputed evidence demonstrates that contacting Dell Financial would not have yielded a different result.

The undisputed evidence shows that if Midland had contacted Dell Financial

Services in 2008 or 2009, as plaintiff says it should have, the result of the

investigation would not have changed.   A Dell Financial witness testified as

follows at trial:

17

> Q.   So if someone had inquired about the status of Mr. Brim's account prior to August of 2010 [*i.e.*, after plaintiff finally furnished Dell the transactional detail report], what would Dell Financial Services' response have been?
>
> A.   That the customer still had a balance on the account and it was still owed.

(Trial Tr. vol. 3, 226:24; Garlock Dep. 14:13-17).  In other words, it simply *would not have mattered* had Midland contacted Dell Financial.  That contact would have yielded precisely the same result that Midland's own investigation yielded— namely, that plaintiff owed a balance.  Accordingly, the failure to contact Dell Financial cannot serve as the basis of any liability because Midland did not *cause* plaintiff any harm.

### 2.   The undisputed evidence demonstrates that contacting Redstone Federal Credit Union would not have yielded a different result.

The undisputed evidence shows that, had Midland contacted Redstone in connection with plaintiff's dispute, Midland would not have received any information at all, let alone any information confirming plaintiff's prior payment to Dell Financial.  Redstone testified at trial that it will not disclose any information about a member's account to a third-party:

> Q.   Mr. Cox, does Redstone have any policies concerning its provision of account information to persons other than the accountholder?
>
> A.   Yes, we do.
>
> Q.   What are those policies?

> A.   We do not give out any information to anybody other
>       than the account owner.
>
> Q,   Have those policies been in place for the past ten years?
>
> A.   Yeah.
>
> Q.   Can a third party request a transactional detail report?
>
> A.   No.

(Trial Tr. vol. 3, 219:16-220:3).  Accordingly, whatever Midland's alleged conduct

and whatever plaintiff's injury, the failure to contact Redstone cannot serve as the

basis of any liability against Midland because it did not *cause* plaintiff any harm.

> **3.   Contacting the plaintiff directly was not required by the
>        law, and doing so would not have changed the result of the
>        investigation.**

Plaintiff's contention that Midland should have contacted him directly as

part of its investigation is doubly flawed.  First, as a matter of law, the law does not

require a furnisher to contact consumers in response to their disputes:  "'requiring a

furnisher to automatically contact every consumer who disputes a debt would be

terribly inefficient and such action is not mandated by the FCRA.'"  *Chiang*, 595

F.3d at 36 (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th

Cir. 2005)) (emphasis added).

Second, and in any event, plaintiff offered no evidence that, had Midland

contacted him directly, the results of its investigation would have been any

different.  Plaintiff admitted that he obtained no documentation when he made the payment over the phone in November 2004.   (Trial Tr. vol. 3, 148:9-19).  Therefore, Dell was the only entity that could confirm that plaintiff's payment was actually received.   The undisputed evidence showed that Dell needed the transactional detail report to trace the funds and confirm payment.  (Trial Tr. vol. 3, 226:24; Garlock Dep. 11:2-14:12).  But the undisputed evidence also showed that rather than provide Dell with the transactional detail report, plaintiff repeatedly provided his bank statement—even after he was told the bank statement was insufficient (*see* Trial Tr. vol. 3, 226:24; Garlock Dep. 10:16-13:25)—which the Redstone witness confirmed does not show tracing information.  (Trial Tr. vol. 3, 213:12-17).  Further, plaintiff's own testimony establishes the fact that he was aware, or at least should have been aware, that the bank statement was insufficient.  (Trial Tr. vol. 3, 156:3-158:3; 159:7-160:23).

* * *

Taking the steps plaintiff now urges would not have changed the outcome of Midland's investigation—Midland still would have been unable to discover that plaintiff had previously paid his account directly to Dell Financial.  Without evidence that the results of Midland's investigation would have differed had Midland investigated according to plaintiff's unsubstantiated protocol, plaintiff has not met his burden to demonstrate that an action or inaction by Midland *caused* his

alleged injuries.   Accordingly, even assuming that Midland's investigation was unreasonable and a willfull violation of the FCRA (it was not) and that plaintiff suffered a cognizable injury (he did not), plaintiff's FCRA claim fails as a matter of law.

**B.**   **The Undisputed Evidence Shows That The Alleged American Express Denial Of Credit Was Not Caused By Midland's Actions.**

As noted above, plaintiff actually alleged only one real credit injury—a supposed denial by American Express.   Even if the unauthenticated hearsay evidence were deemed sufficient to support plaintiff's credit-denial allegation, however, plaintiff failed to present any evidence that the alleged American Express denial was based in any way on the Midland account.   In fact, the record evidence leads to precisely the opposite conclusion.   *Gorman v. Experian Info. Solutions, Inc.*, 2008 WL 4934047, *7 (S.D.N.Y. 2008), is on point.   There, the court granted a CRA's motion for summary judgment on the ground that the plaintiff failed to prove that allegedly inaccurate information on his credit report caused actual damages, either in the form of out-of-pocket expenses or emotional distress.   *Id.* at *7.   The plaintiff claimed that inaccurate information about a mortgage contained on the credit report caused three lenders to deny his applications for mortgages in January of 2007.   *Id.* at *6.   The court, however, granted the CRA's motion for summary judgment, because the plaintiff "failed to take discovery from any of the third-party lenders who allegedly denied the loans and [] failed to present evidence

showing that (1) the lenders relied on the Experian report; and (2) the inaccurate information regarding the [mortgage loan at issue] was a substantial factor in the lenders' denial of the loans." *Id.*; *see Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1241 (N.D. Ala. 2002) (dismissing plaintiff's § 1681e(b) claim where "there [was] no evidence that [defendant]'s reporting of the [inaccurate] accounts had any bearing on [credit issuer]'s decision").

In support of his causation argument, the *Gorman* plaintiff offered: (1) two letters denying his application for loans; and (2) a notice disclosing his credit score made in connection with the home loan. *Gorman*, 2008 WL at *6-7. The district court noted that even if plaintiff's documents were admissible, "they are not sufficient evidence of causation to survive summary judgment" because "[a]n examination of each document shows it contains no evidence that Experian's report caused the lenders to deny his applications for a mortgage." *Id.* at *6.

This case presents the same situation. The American Express denial letter— even if admissible—affirmatively demonstrates that the denial was *not* caused by Midland's actions. The letter states only one reason for denial: "Your consumer credit bureau score from Trans Union is too low." (Pl.'s Ex. 7). But the uncontroverted testimony from TransUnion clearly established that the Midland account was not a factor affecting plaintiff's score:

> Q.   What is the impact in terms of credit score on an account being marked as disputed?

> A.   It does not get factored into the credit score.
>
> Q.   *And so from early August 2008 through September 2010 the Midland account would not have been factored into Mr. Brim's credit score?*
>
> A.   *That is correct.*

(Trial Tr. vol. 3, 58:7-14) (emphasis added).

That evidence is undisputed, and under settled law it requires entry of judgment in Midland's favor on the ground that plaintiff has failed to prove causation. *See Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963, 975 (W.D. Wis. 2004) ("[P]laintiffs have not shown that they would have received approval of their request for refinancing even if the [defendant CRA] report had been accurate. … Thus, [plaintiffs] cannot show the prerequisite causal relation between the violation of the statute and the loss of credit."); *see also Quinn v. Experian Solutions*, 2004 WL 609357, *5 (N.D. Ill. 2004) ("To prove causation, [plaintiff] must show that the reporting of inaccurate information in his credit report was a substantial factor that brought about damages.") (citation omitted).

## CONCLUSION

In order to prevail on his claim that Midland willfully violated the FCRA, plaintiff had to prove (1) that Midland knowingly or recklessly violated the law, (2) that plaintiff suffered a legally cognizable injury, and (3) that Midland's conduct in fact caused that injury.  Far from proving *all three* elements, plaintiff failed to offer legally sufficient evidence of *any one* of them.  Accordingly, his

FCRA claim fails as a matter of law, and Midland is entitled to the entry of judgment in its favor.

Respectfully submitted this 28th day of March, 2011.

/s/ Eric B. Langley
One of the Attorneys for Defendant
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March 2011, I have filed the above and foregoing via CM/ECF, which will notify the following counsel of record:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC  29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL  35801

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA  23606
Email: lenbennett@clalegal.com

*/s/ Eric B. Langley*
Of Counsel