IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMON T. BRIM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:10-cv-0369-IPJ |
| MIDLAND CREDIT | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR A NEW TRIAL

Pursuant to Federal Rule of Civil Procedure 59, Defendant Midland Credit Management, Inc. ("Midland"), requests that this Court grant a new trial or, in the alternative, alter, amend, or vacate its judgment entered on February 28, 2011 (the "Judgment").  This motion is due to be granted for several reasons:  *First*, the Court erred on several evidentiary rulings, including (1) admitting an unauthenticated hearsay credit-denial letter from American Express, (2) admitting evidence of collection efforts and a collection lawsuit filed by an affiliate of Midland, (3) admitting evidence concerning the structure and net worth of Midland's parent company; and (4) excluding certain testimony from Dell Financial Services.  *Second*, the Court erred in instructing the jury, including (1) by refusing to include a jury instruction on the plaintiff's duty to mitigate damages,

1145203.1

and (2) by giving an incorrect and misleading instruction regarding what actions constitute a "reasonable investigation." *Finally*, for all the reasons stated in Midland's contemporaneously filed Motion for Judgment as a Matter of Law, the jury's verdict is against the great weight of the evidence.

In support of this motion, Midland states as follows:

I.   **MIDLAND IS ENTITLED TO A NEW TRIAL BECAUSE THE COURT ERRED ON SEVERAL EVIDENTIARY RULINGS.**

   A.   **The Court Erred When It Admitted Unauthenticated Hearsay Evidence That American Express Denied Plaintiff Credit.**

The Court admitted, over Midland's objection, evidence regarding an alleged denial of credit from American Express, including Plaintiff's Exhibit 7. (Trial Tr. vol. 1, 15:2-19:20). Plaintiff's Exhibit 7 purports to be a letter from American Express denying plaintiff's credit application, but it was improperly authenticated and admitted, over objection, as a business record. The Court erred in admitting the letter into evidence.

To constitute a business record within the exception to the hearsay rule under Federal Rule of Evidence 803(6), a document must, among other requirements, be "kept in the course of a regularly conducted business activity." Similarly, to be a self-authenticating record of regularly conducted activity under Federal Rule of Evidence 902(11), a written declaration from the records custodian must certify, among other things, that the document "was kept in the course of the

regularly conducted activity."  The affidavit purporting to be from American Express does not state that the document attached to it was kept in the regular course of business.  Nor could it, because in response to Midland's subpoena, American Express stated that it "does not have records responsive to the subpoena request" and that plaintiff's "name/address and Social Security number . . . were not located in our database." (Trial Tr. vol. 1, 17:10-23; doc. 57, Ex. 2).  The letter attached to the affidavit is *plaintiff's own* copy of the purported denial letter, not a copy "kept in course of a regularly conducted business activity" of American Express; plaintiff's attached copy even included the exhibit sticker for this case. Because the evidence proves that the letter was not "kept" by American Express in the regular course of business, it was both unauthenticated and hearsay; it should have been excluded under Federal Rules of Evidence 803 and 906.

Even if these legal obstacles could be cleared, it remains that any evidence of denial is irrelevant to plaintiff's claims against Midland.  The unauthenticated hearsay denial letter produced by plaintiff in this case itself states as its sole reason for denial: "Your consumer credit bureau score from TransUnion is too low." (Pl.'s Ex. 7).  As TransUnion explained at trial without contradiction, the Midland account had no bearing on American Express' alleged credit denial:

> Q. What is the impact in terms of credit score on an account being marked as disputed?
>
> A. It does not get factored into the credit score.

> Q.  *And so from early August 2008 through September 2010 the Midland account would not have been factored into Mr. Brim's credit score?*
>
> A.  *That is correct.*

(Trial Tr. vol. 3, 58:7-14). (emphasis added).

The only stated basis for denying plaintiff's alleged American Express credit application was his TransUnion credit score, and the undisputed evidence shows that the Midland account did not factor into the score. Accordingly, even aside from the authentication and hearsay problems, any presentation of or reference to the denial letter was irrelevant under Rule 402 and unduly prejudicial under Rule 403. Indeed, admission of the unauthenticated hearsay letter was particularly prejudicial to Midland because it was the *only* documentary evidence purporting to show any actual credit injury, a necessary element of plaintiff's cause of action.

**B.  The Court Erred When It Admitted Evidence Concerning A Previously Dismissed Collection Lawsuit Filed By Midland Funding, LLC.**

At trial, over Midland's objection, the Court admitted testimony and other evidence concerning a previously dismissed collection lawsuit filed by Midland Funding LLC (as well as pre-lawsuit collection efforts) against plaintiff. (Trial Tr. vol. 1, 11:4-14:22). The plaintiff testified about the collection lawsuit at trial and the Court admitted exhibits and other testimony concerning the suit. (Trial Tr. vol.

3, 84:10-85:15; Trial Tr. vol. 2, 122:12-123:11; Pl.'s Exs. 17-21).  There are at least two reasons this evidence should have been excluded.

*First*, such evidence related only to plaintiff's Fair Debt Collection Practices Act ("FDCPA") claim—a claim dismissed at summary judgment—and only to Midland Funding, LLC—a party dismissed at summary judgment.  *See* doc. 43.  The sole remaining claim in the case under the FCRA implicated only the allegation that Midland Credit Management, Inc. failed to conduct a reasonable investigation of plaintiff's disputes.  *See* 15 U.S.C. § 1681s-2(b).  No provision of the FCRA purports to address the filing or pursuit of collection lawsuits.  Rather, collection activities are governed by the FDCPA, 15 U.S.C. § 1692 *et seq.*  Because only plaintiff's FCRA claim was pending before this Court at time of trial, plaintiff's evidence should have been limited to such evidence relevant to his FCRA claim.  Evidence relevant only to the FDCPA or other dismissed claims was irrelevant and inadmissible under Federal Rule of Evidence 402.  *See, e.g.*, *Allan v. Springville City*, 388 F.3d 1331, 1335 (10th Cir. 2004) (affirming trial court's exclusion of "evidence that was only relevant to the equal protection and disparate treatment claims against the [defendant] that had been dismissed on summary judgment"); *Washington v. Orleans Parish School Bd.*, 2002 WL 1066748, *1 (E.D. La. 2002) ("[A]ny evidence that relates solely to a claim previously dismissed … is irrelevant.").

*Second*, all of the evidence admitted by the court relating to the collection lawsuit (and pre-lawsuit collection efforts) pertained to events that occurred *before* plaintiff's first dispute of the Midland account in August 2008, which, under established law, was when Midland's duties under the FCRA first arose. It is settled that the section of the FCRA that enumerates Midland's investigation obligations, 15 U.S.C. § 1681s-2(b), is triggered only by notice of a dispute *from a CRA*. *See, e.g.*, *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003) ("The statutory language of this section makes clear that the duties created by § 1681s-2(b) do not arise until the furnisher of information receives notice from a consumer reporting agency . . . ."). Here, Midland first received notice of plaintiff's dispute, thereby triggering its FCRA investigation duties, in August 2008—a full three months *after* Midland Funding's collection suit was commenced.[1] By definition, then, evidence of Midland Funding's collection efforts had no bearing on Midland

---

[1] Although Midland Funding's lawsuit technically remained pending until February 2009, plaintiff was never served with the complaint and summons from that lawsuit. (Trial Tr. vol. 3, 85:11-15). Moreover, the undisputed evidence showed that Midland Funding's outside collection firm closed the account as "Effort Exhausted" on August 26, 2008. (Def.'s Ex. 13). Thus, no further action was taken in the lawsuit other than filing of the complaint.

Credit Management's FCRA liability, as it occurred prior to the time that Midland Credit Management's obligations under § 1681s-2(b) were triggered.

For both reasons, the "collection" evidence had no probative value to the issues at trial and was thus irrelevant under Federal Rule of Evidence 402. Even if the evidence was somehow relevant, its minimal probative value was substantially outweighed by the danger of unfair prejudice to Midland and was thus inadmissible under Federal Rule of Evidence 403. *See Nemir v. Mitsubishi Motors Corp.*, 2002 WL 482557, *2 (E.D. Mich. 2002) ("Discussion of dismissed claims is neither probative nor relevant.").

### C. The Court Erred When It Admitted Evidence Concerning The Financial Condition Of Midland's Parent Company.

Before trial began, the Court admitted, over Midland's objection, Plaintiff's Exhibit 82, portions of an SEC 10-K for Encore Capital Group Inc., Midland's parent company. (Trial Tr. vol. 2, 11:7-13:18). No witness ever testified about this document; in fact, plaintiff never even attempted to present it during his case. The evidence from this exhibit was mentioned only during plaintiff's opening statement and closing argument. In opening statement, plaintiff's counsel stated, while displaying Encore's financial information via PowerPoint presentation:

> But one of the pieces of evidence you will look at is net worth. The idea that how do you move a giant? Small pushes? Its annual report as of Valentines' Day, last week or so, this is the net worth of this debt collector.

(Trial Tr. vol. 2, 63:17-21). Likewise, in closing argument, plaintiff's counsel argued:

> 300 million dollars is what this annual report says. In excess of that. That's a lot of money. How do you make a 300-million-dollar company change its procedures?

(Trial Tr. vol. 4, 98:13-16).

The jury should not have been allowed to hear evidence of Midland's parent company's financial condition, for the purpose of assessing punitive damages or otherwise. *St. Croix Renaissance Group, LLC v. St. Croix Alumina, LLC*, 2010 WL 4723897 (D. V.I. 2010) ("[T]he wealth of a parent corporation is irrelevant to the jury's assessment of the appropriateness of punitive damages.") (citing *Herman v. Hess Oil*, 379 F. Supp. 1268, 1276 (D. V.I. 1974), *aff'd*, 524 F.2d 767, 772 (3d Cir. 1975)); *United Techs. Corp. v. Am. Home Assurance Co.*, 118 F. Supp. 2d 174, 180-81 (D. Conn. 2000) (stating that the net worth of the defendant's parent company was an improper benchmark for the determination of the amount of punitive damages awarded to the plaintiff, where the parent company was not a party to the plaintiff's action and the defendant was not the mere alter ego for its parent); *Cont'l Trend Res., Inc. v. Oxy USA, Inc.*, 810 F. Supp. 1520, 1533 (W.D. Okla. 1992) ("The financial worth of a parent corporation is generally irrelevant in assessing punitive damages on a subsidiary unless the corporate veil is pierced."), *aff'd in relevant part*, 44 F.3d 1465 (10th Cir. 1995), *vacated on other grounds*, 517 U.S. 1216 (1996).

Plaintiff never even sought to demonstrate how Encore's financial information was relevant to claims or damages against Midland. Plaintiff never took discovery on Midland's own financial condition and never presented any evidence (or argument, for that matter) to suggest that Encore and Midland's separate corporate identities should be disregarded. Accordingly, evidence of Encore's financial condition was irrelevant and should have been excluded under Federal Rule of Evidence 402. *See Williams v. Sec. Nat'l Bank of Sioux City, Iowa*, 358 F. Supp. 2d 782, 802 (N.D. Iowa 2005) (noting that where "there has been no attempt to satisfy the requirements for piercing the corporate veil ... [the court would] exclude evidence of [its] corporate relationship to [the parent company] … as a basis for awarding punitive damages against [the defendant subsidiary]").

Moreover, even if the evidence had some marginal relevance, plaintiff's "drive by" references to Encore's financial condition were clearly calculated to—and certainly did—prejudice Midland in the jurors' eyes. The evidence should also have been excluded under Federal Rule of Evidence 403.

### D. The Court Erred In Admitting An Organizational Chart Of Encore Capital Group, Inc.

Before trial began, the Court admitted, over Midland's objection, Plaintiff's Exhibit 8, an organizational chart for Encore Capital Group, Inc. (Trial Tr. vol. 2, 9:15-11:6). This evidence was irrelevant to any issue in the case for many of the

same reasons set forth in part I.C. *supra,* and therefore should have been excluded under Federal Rule of Evidence 402. Even if this evidence was relevant, it should have been excluded as needlessly cumulative or unfairly prejudicial under Federal Rule of Evidence 403.

### E. The Court Erred In Sustaining Plaintiff's Objections To Certain Testimony From Dell Financial.

The Court sustained plaintiff's objection to the following testimony from Dell Financial:

> Q. And so if Midland had contacted Dell in August of 2008 and inquired about the account, what would Dell Financial Services' response have been?
>
> A. Okay. That – that there was still a balance on the account and we still had not received proof of payment for this account.
>
> Q. And would your answer be the same if Midland called in in March of 2009?
>
> A. Yes.
>
> Q. And would your answer be the same if Midland had contacted Dell in February of 2010?
>
> A. Yes.

(Dell Dep. 42:20-43:9; Trial Tr. vol. 3, 224:17-225:22). This was crucial, relevant and admissible testimony the jury should have been allowed to hear and consider, since it unequivocally established that it would not have made any difference in the investigation of plaintiff's disputes had Midland contacted Dell Financial at the

time of those disputes. Because all relevant evidence is admissible under Federal Rule of Evidence 402, it was error to exclude the testimony.

## II. MIDLAND IS ENTITLED TO A NEW TRIAL BECAUSE THE COURT ERRED IN INSTRUCTING THE JURY.

### A. The Court Erred When It Refused To Instruct The Jury On Plaintiff's Duty To Mitigate Damages.

Midland is entitled to a new trial because the Court erroneously failed to instruct the jury on Plaintiff's duty to mitigate his alleged damages. At the charge conference and by written motion, Midland requested an instruction on mitigation of damages, which the Court declined to give. (Trial Tr. vol. 4, 4-6). Without such instruction, the jury's verdict reflects an improper damages award, because plaintiff was required to show that he met his duty to mitigate damages.

Plaintiff was required to provide evidence as to his reasonable attempts to mitigate his alleged damages. *See Notley v. Sterling Bank*, 2007 WL 188682, *5 (N.D. Tex. 2007) (observing, in an FCRA case, that "the plaintiffs *will be required to show their efforts to mitigate their damages at trial*") (emphasis added); *see also Avco Fin. Servs., Inc. v. Ramsey*, 631 So. 2d 940 (Ala. 1994) (noting that a party who has suffered injury, damage, or loss must take reasonable steps to reduce it). Here, plaintiff did not make (or even attempt to make) that showing, and the Court erred by not instructing the jury as to plaintiff's duty to mitigate. *See Trejo v. Denver & Rio Grande W. R.R. Co.*, 568 F.2d 181, 184 (10th Cir. 1977) (reversing

and remanding for new trial on damages where trial court erroneously refused to instruct jury on plaintiff's duty to mitigate and holding: "A party is entitled to an instruction based on his theory of the case if there is record evidence to support it. [] The question whether the conduct of plaintiff was reasonable effort in the circumstances was a question of fact for the jury under proper instructions. The refusal to give the requested instruction was error.") (internal citations omitted).

In this case, plaintiff could have avoided all injury, and certainly could have reduced any alleged damages, years before making his dispute to Midland in August 2008. The undisputed evidence showed that, beginning in 2005, Dell Financial requested that plaintiff provide a transactional detail report to enable tracking of his alleged payment. Though plaintiff equivocated on his understanding of what a "transactional detail report" was, he testified that he never contacted Redstone Federal Credit Union to ask for additional documentation even after he had sent the bank statement to Dell Financial on two separate occasions, without success:

> Q.   Mr. Brim, Redstone told you, the, that if you needed anything other than the bank statement to come back to them, didn't they?
>
> A.   To call them, yes.
>
> Q.   And you never did, did you?
>
> A.   Because she told me it was a transactional detail report.

> Q. But you never called Redstone back and said, this document isn't getting it done; I need something else? You never did that, did you?
>
> A. I was gone by then. I was travelling.

(Trial Tr. vol. 3, 159:7-17). Plaintiff did not provide the additional documentation until August 2010—six months into this lawsuit. Dell Financial was in fact able to confirm plaintiff's payment at that time. Midland offered substantial evidence showing plaintiff's failure to meet his duty of mitigation, and it requested a jury instruction from the federal pattern instructions regarding the same. The Court's refusal to instruct the jury on Plaintiff's duty to mitigate damages constituted reversible error.

**B. The Court Erred By Giving An Incorrect And Misleading Instruction On The Meaning Of The Term "Investigation."**

Over Midland's objection (Trial Tr. vol. 4, 6), the Court instructed the jury as follows concerning the nature of an FCRA "investigation":

> An investigation is a detailed inquiry or systematic examination. The plain meaning of "investigation" requires some degree of careful inquiry by a furnisher of credit information.

(Trial Tr. vol. 4, 20:23-21:2). This instruction was both erroneous and prejudicial to Midland. First, neither the FCRA nor the pattern federal jury instructions define "investigation" for purposes of a FCRA claim. Whether Midland conducted a reasonable "investigation" was a central issue in this case. The Court's instruction not only provided the jury a definition of a term deliberately undefined in the

statute but also defined the term in a way that skewed the case in plaintiff's favor. Moreover, there was absolutely no testimony or other evidence offered to support instructing the jury in this manner, particularly in the specific context of a duty under the FCRA to investigate credit disputes. The Court's "investigation" instruction was reversible error.

### III. MIDLAND IS ENTITLED TO A NEW TRIAL BECAUSE THE JURY'S VERDICT IS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

The Eleventh Circuit has held that "[a] trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). Moreover, "[a]lthough a trial judge cannot weigh the evidence when confronted with a motion (for judgment) notwithstanding the verdict, in a motion for new trial the judge is free to weigh the evidence." *Id*. In weighing the evidence, "the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Id*.

For the reasons stated fully in Midland's contemporaneously filed Motion for Judgment as a Matter of Law (which it incorporates by reference and fully adopts herein), Midland is entitled to a new trial. Specifically, the jury's verdict in favor of the plaintiff was against the great weight of the evidence on three

necessary elements: (1) that Midland acted willfully; (2) that plaintiff suffered a cognizable injury; and (3) that Midland's alleged violation caused plaintiff's harm.

*First*, willfulness requires the plaintiff to prove that Midland acted in knowing or reckless disregard for the law. *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314 (11th Cir. 2009). Plaintiff did not offer evidence to meet this high standard. He failed to offer any evidence suggesting that the law required Midland to conduct investigations differently, that Midland's investigation ran an unreasonably high risk of violating the law, or that Midland's compliance with its own procedures constituted a willful violation.

*Second*, plaintiff offered only a single piece of documentary evidence supporting economic injury—an alleged (unauthenticated hearsay) credit denial letter from American Express. But the undisputed evidence showed that plaintiff's TransUnion credit score—the sole stated reason for American Express's credit denial—was not affected negatively by the dispute about the Midland account. Plaintiff likewise failed to offer any evidence of emotional distress other than his own conclusory testimony.

*Finally,* the undisputed evidence demonstrated that, even had Midland taken all the steps asserted after the fact by plaintiff—contacting Dell Financial, contacting Redstone Federal Credit Union, and contacting plaintiff himself—its investigation would have reached precisely the same result. Consequently,

plaintiff's evidence did not show that Midland's actions were the *cause* of his alleged injuries.

For all of these reasons, which are explained more fully in Midland's Motion for Judgment as a Matter of Law, the jury's verdict in favor of plaintiff was against the great weight of the evidence.

## **CONCLUSION**

For any or all of the foregoing reasons, Midland requests that Court grant a new trial in this matter.

Respectfully submitted this 28th day of March, 2011.

*/s/ Eric B. Langley*
One of the Attorneys for Defendant
Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama  35201-0306
Telephone:  (205)251-8100
Facsimile:  (205)226-8798
elangley@balch.com
jtompkins@balch.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March 2011, I have filed the above and foregoing by CM/ECF, which will send notice to the following counsel of record:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC  29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL  35801

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA  23606
Email: lenbennett@clalegal.com

                                             */s/ Eric B. Langley*
                                             Of Counsel