UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **Jamon T. Brim,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil No. 5:10-CV-369-IPJ |
| | ) |
| **Dell Financial Services, LLC,** | ) |
| **Midland Credit Management,** | ) |
| **Inc., Midland Funding, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL

*Rule 59 Motion for a New Trial.*

**STANDARD OF REVIEW**

Midland's Motion for a New Trial is based upon its restated evidentiary objections previously (and correctly) overruled by the Court at or before trial. Such rulings are by their nature discretionary and depended heavily upon the Court's assessment of the probative value against possible unfair and dispositive prejudice. Fed. R. Evid. 403. The Court of Appeals thus defers almost entirely to the District Court on such a decision and post-trial motion. "Indeed, the 'deference that is the hallmark of abuse-of-discretion review,' *Joiner,* 522 U.S. at 143, 118 S.Ct. at 517, requires that we not reverse an evidentiary decision of a district court ''unless the ruling is manifestly erroneous,' '*id.* at 142, 118 S.Ct. at 517). Thus, it is by now axiomatic that a district court enjoys 'considerable leeway' in making these determinations." *United States v. Frazier*, 387 F.3d 1244, 1258-59 (11th Cir. 2004) (some citations omitted). A new trial is rarely called for based on evidentiary rulings. *Lipphardt v. Durango Steakhouse of Brandon,*

*Inc.,* 267 F.3d 1183, 1186 (11th Cir.2001) "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence."); See also *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1210 (11th Cir. 2009). The Court should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir.1984) (internal quotations omitted).

Defendant' evidentiary complaints are unfounded. The Court properly ruled in very regard. Still, even if the Court were somehow incorrect, none of the issues raised by Midland were so significant as to have resulted in a manifestly unjust outcome. Defendant cannot show any meaningful prejudice and continues to merely nip at the fringes of Plaintiff's evidence and case. Its complete failure to explain or establish how the trial outcome would have been different absent the challenged rulings is fatal to its present motion (and any later appeal).

**ARGUMENT**

Plaintiff does not herein repeat his arguments in opposition to Section III, as they are fully answered in his opposition to defendant's Renewed Motion for Judgment.

**I.     MIDLAND'S EVIDENTIARY COMPLAINTS ARE UNFOUNDED, AND REGARDLESS DEFENDANT HAS NOT ESTABLISHED THAT ANY ASSERTED ERROR HAD A SUBSTANTIAL EFFECT ON THE CASE OUTCOME.**

   **A.     Evidentiary Objections regarding the America Express Credit Denial.**

Plaintiff has addressed these arguments in his Opposition to Defendant's Renewed Motion for Judgment.

**B.     Evidentiary Objections regarding Midland's collection lawsuit.**

Midland moved pre-trial to exclude all evidence related to all direct contacts between it and Mr. Brim.  Now, Defendant narrows that motion to include only the evidence related to its initial attempt to collect from Mr. Brim through a state court action.  As stated above, Midland fails to establish – fails to even argue – how such evidence was outcome determinative in the case.  It was not and was at best a small part of a large set of proofs.  However, even if somehow the evidence were prejudicial, it would not have been "unfairly" so or "misled the jury."  Fed. R. Civ. P. 403.  The challenged evidence was relevant and probative for at least three important reasons.  First, the Plaintiff argued and the jury could have found that Midland purchased the Dell account knowing full well that the statute of limitations to collect the debt had expired.  Therefore its only means to make a profit from its "pennies on the dollar" purchase was to attempt to force payment by parking the account on Mr. Brim's credit report.   The ineffectiveness of any alternate means to profit from the account was highlighted by the deadend Midland faced in the small claims attempt and was correctly argued by Plaintiff's counsel.  There were only three ways for Midland to have made a profit on the Dell account – through collection letters, through collection litigation or through credit reporting pressure.  Defendant failed in the first two regards and thus needed to continue to impair the Plaintiff from obtaining credit as a tool to extort payment.  Second, the conduct of Midland in attempting to force payment in the deadend collection action is consistent with its operations in using credit reporting system to collect.  Finally, the

evidence also provides necessary context for the Plaintiff's frustration and distress damages. He did not simply begin the path and struggle with Midland in isolated credit reporting disputes.

Defendant's argument pointing out without controversy that the damages in the case and the legal violations had to arise from the FCRA violations misses the fact that no damages were sought, argued or instructed for anything other than the FCRA violations. Plaintiff did not argue to the jury that the Plaintiff should be compensated for damages that arise from the small claims lawsuit.

However, all of the credit reporting disputes that Midland received arrived after it had actual notice of the Plaintiff's Bank Statement and of the facts of his dispute. Evidence of what Midland knew and when it knew it – whether from Mr. Brim directly, from Dell or from its own research – was relevant to consider whether its subsequent responses and handling of the Plaintiff's credit reporting disputes was negligent and/or willful. See e.g. *Saunders v. Equifax Info. Services, L.L.C.*, 469 F. Supp. 2d 343, 352 (E.D. Va. 2007) *aff'd sub nom. Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (detailing "direct contact" facts that properly informed the jury as to the degree of reprehensibility of the furnisher's conduct).

Plaintiff's position is easy to support. Imagine two cases: (1) the furnisher had never received any previous contact from the consumer. No direct disputes. No bank statements, telephone calls or letters. No failed collection lawsuit. Then, Midland received an ACDV from the credit reporting agency that disputes the account for the first time; and (2) The furnisher receives the ACDV after having received at least a year's worth of numerous mail and telephone contacts from the consumer explaining that the

account had been previously paid. It had already received and in its possession a copy of the consumer's bank statement. Midland's motion would argue that the evidence of the reasonableness of its response to the ACDV credit reporting disputes in the two cases was the same. That the jury should find that the rejection of the Plaintiff's disputes in the second example was just as reasonable as its rejection or superficial handling of the disputes in the second one. This is not a defensible position. Such "direct contact" evidence, while not establishing a private cause of action was certainly relevant to the reasonableness of Midland's later conduct under 15 U.S.C. § 1681s-2(b).

Background evidence was necessary in order that the jury understand the Plaintiff's claim in its full context and as well in order for it to be able to measure the reasonableness of the Defendant's conduct in responding to the ACDV disputes. This is not a remarkable conclusion, and while Plaintiff's counsel is unaware of any case that has found as Midland asks, there are plenty of cases that did just the opposite. In *Bryant v. TRW*, one of the most-oft cited and earliest FCRA cases, the Ohio United States District Court explained:

> Rule 401 of the Federal Rules of Evidence defines relevancy; Rule 402 provides that relevant evidence is admissible; Rule 403 excludes relevant evidence if in the discretion of the Court it determines its prejudicial effect outweighs its probative value. As will be seen from the discussion of the evidence adduced at trial, <u>the only way a jury could reasonably determine whether the defendant followed reasonable procedures</u> to assure maximum possible accuracy of information furnished about plaintiff <u>was to know the history of the relationship between plaintiff and defendant and assess</u>

> <u>defendant's conduct in the context of that history</u>. The causes of action created by s 616 and s 617 [FCRA Act section numbers] are personal to a consumer and the obligations imposed on a consumer reporting agency are expressed in terms of the particular consumer alleging violation. <u>Without the history of the relationship the jury could not make the judgment required of it</u> under s 616 and s 617.

*Bryant v. TRW, Inc.*, 487 F. Supp. 1234, 1236 (E.D. Mich. 1980) *aff'd,* 689 F.2d 72 (6th Cir. 1982). (Emphasis added). More recently, the South Carolina United States District Court agreed and permitted the admission of evidence going back years (though not 25 years) before the subject FCRA violations and claims arose. *Byrd v. Trans Union LLC*, C/A 3:09-609-JFA, 2010 WL 2555119 (D.S.C. June 18, 2010). The South Carolina court explained:

> Byrd asks this court to go back 25 years to provide context for the purpose of assessing reasonableness. This the court will not do. Concerns of undue prejudice, relevance, and confusion compel the finding that the entire 25 year period not be admitted into evidence. Fed.R.Evid. 402, 403. The court will, however, allow evidence of the parties relationship beginning with Byrd's alleged call to Equifax in May of 2002. The court finds that Byrd's notifying Equifax of issues with his credit report beginning at this time is relevant to an assessment of the reasonableness of the procedures by which Equifax created the admittedly erroneous 2008 credit report. This temporal limitation is in line with *Bryant* and *Lazar* and the court finds that, with a proper limiting instruction to the jury, the admittance of the evidence should not unduly prejudice Equifax.

*Byrd*, 2010 WL 2555119. See also *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 672 (C.D. Cal. 2000) (Refusing to strike allegations in Complaint that did not directly pertain to the alleged FCRA violations because they provided background to assess defendant's conduct: "Although Plaintiff cannot recover for the alleged violations contained in

Paragraphs 10 through 23 of the FAC, this Court finds that, because of their relevance to Plaintiff's timely claims, TUC's motion to strike these paragraphs must be denied.")

      **C.**      **The Court properly admitted Defendant's 10-k Report.**

Defendant's third argument is that the court erred when it admitted evidence of the financial condition of Midland's parent company, Encore Capital Group, Inc., by way of its Annual Report, required by the Securities Exchange Commission to be filed in Form 10-K. (Def.'s Mot. for New Tr. at 7). The court properly accepted a publicly-filed SEC document into evidence consistent with Fed. R. Civ. P. 201. Trial Tr. vol. II 13:15. However, Defendant's argument is off target. Its objection is that the document should not have been admitted as an exhibit. However, its explanation for why this is so is limited to the use made of the document by Plaintiff's counsel in opening and closing. Midland complains that Plaintiff improperly argued that the financials of Encore in the 10-k should be considered as the financials for its wholly owned subsidiary, Midland. It is the commentary offered by Plaintiff's counsel in opening and closing to which Midland is actually objecting. However, Defendant never objected to the opening or closing comments to which it now would object. It has waived that right. See *U.S. v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986) ("To preserve an issue at trial for later consideration by an appellate court, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought. A general objection or an objection on other grounds will not suffice."). Although Defendant objected to the admission of the Form 10-K, despite its admissibility under Fed. R. Civ. P. 201, Defendant did not object to Plaintiff's opening statement and closing argument referring to the financial condition of Midland's

parent.  *Cont'l Trend Res. Inc. v. Oxy USA, Inc.*, 810 F.Supp 1520, 1525, 1533 (W.D. Okla 1992)(explaining that while an error not raised at trial is waived), *aff'd*, 44 F.3d 1465 (10th Cir. 1995), *vacated & remanded on other grounds*, 517 U.S. 1216 (1996)(remanding to the Tenth Circuit for consideration in light of the Supreme Court's decision in *BMW of North Am., Inc. v. Gore*, 517 U.S. 559 (1996)).  By failing to object to the argument, Defendant failed to allow the trial court the opportunity to rule on the matter at trial.  Thus, the statements made by counsel without objection aren't reviewable now.  *Andres v. Roswell-Windsor Village Apartments, et al.,* 777 F.2d 670, 674 (11th Cir. 1985).

Further, statements made by a lawyer in the opening and closing argument are not evidence. *Gemtron Corp. v. Saint-Gobain Corp.,* 572 F.3d 1371, 1380 (Fed. Cir. 2009) *cert. denied*, ____ U.S. ____, 130 S. Ct. 1739 (2010)(explaining that unsworn attorney argument is not evidence, citing *Laitram Corp. v. Cambridge Wire Cloth Co.,* 919 F.2d 1579, 1583 (Fed.Cir.1990) (criticizing parties' "reliance on attorney argument and counsel's unsworn fact statements as 'evidence' ").  Indeed, the jury was instructed on this very point in this case:

> The law requires that your decision be made solely upon the competent evidence before you.  Competent evidence is testimony from the witnesses, in person, or testimony previously given by deposition and exhibits admitted into evidence by the court.  Statements, arguments and comments by the lawyers, objections and ruling on the objections, and testimony I told you to disregard are not evidence.  Such items as I exclude from your consideration will be excluded because they are not legally admissible.

Trail Tr. vol. IV, 28:22 – 29:7.  Thus, with the preventative instruction the Court offered, it is difficult to understand how this assignment of error, if somehow correct, would have impacted "a substantial right" of Midland sufficient to even trigger comment.  Fed. R.

Evid. 103(a). In fact, Defendant could have easily countered such concern – if genuine – by arguing the opposite point as Plaintiff's counsel in closing.

Although the Defendant argued that it was irrelevant because the Form 10-K contained only Encore's financial information, the document actually contained a great deal of relevant information concerning Midland in addition to Encore's financial information. Trail Tr. vol. II, 12:15-13:2.

The Form10-K is replete with information, including information Midland's activities and Midland's practices. In fact, the 10-k contained significant information that was probative, to which Midland did not before, during or post-trial object and which use was made by Mr. Brim's counsel in opening and closing. See e.g. Trial Tr., Vol. II, 47:9-48:11 (Midland's three "operational channels" for collecting debts as discussed in the annual report); Trial Tr., Vol. II, 48:12- 49:17 ("cost-efficiency" – discussed in the report – was Midland's driving objective); Trial Tr., Vol. II, 49:18-25 (Defense of consumer lawsuits a routine part of Midland's operation); Trial Tr., Vol. II, 50:1-6 (Midland's 4.2¢ cost per dollar collected target).

Finally, even if theoretically the only probative evidence in the exhibit related to the corporate financials, the document would still be sufficiently probative on that point. The organizational chart produced by Midland in discovery and admitted as Exhibit 8 establish that Midland Credit Management – the Defendant – is the top level subsidiary for Encore. The jury could have reasonably found that all of Encore's other operations are beneath and owned by Midland. The Encore 10-k clarifies that Encore is simply the holding company. Midland is the operating entity. Thus, while the jury may not have been able to determine the precise or exact value of Midland, the Encore value – in this

instance certainly – was relevant and probative. And if Defendant believed otherwise, it was free to argue the point to the jury. It did not.

The Defendant confuses the case law on the relevance of a parent company's financial condition to establish liability as opposed to the parent company's ability to pay. At no time did the Plaintiff attempt to pierce the corporate veil in order to hold Midland's parent company liable for Midland's wrongdoing. Trial Tr. vol. II, 13:4-5. The identity of the proper party defendant was firmly established prior to trial. Not only was the Form10-K admissible, it was relevant material for the jury to consider. The Form 10-K describes Encore as

> . . . a Delaware holding company whose principal assets are its investments in various wholly owned subsidiaries. All significant intercompany accounts and transactions have been eliminated in consolidation.

Exhibit 92 at F-6.

In this case, it is clear from the record that piercing the corporate veil was unnecessary. Information regarding Encore, a holding company, was probative to allow the jury to consider it among all the evidence it reviewed in reaching its verdict; not to assign liability to a corporate parent. *Cont'l Trend Res. Inc.*, 810 F.Supp at 1527, 1533. While some cases have held that the financial condition of a parent is irrelevant in assessing punitive damages, it is far from settled law and decisions vary greatly on the facts of each case. In that case, the jury could have properly considered the assets of the holding company parent as one of many factors in arriving at an appropriate damages award.

When a jury assesses punitive damages against a "violator, who was penalized . . . the reference to [the parent company's] financial statement merely assured that the

penalty would not be set at a level above [the violator's] ability to pay.  If the subsidiary does not retain its revenues, as the evidence showed in this case, then its parent's financial resources are highly relevant." *U.S. v. Mun. Auth. of Union Twp.*, 150 F.3d 259, 268 (3d Cir. 1998).  In the instant case, Midland does the collection business for the holding company.  Like the Defendant in *Union Township*, the Midland Defendant here refused to produce its net worth in discovery.  The Third Circuit found not only that there was no prejudice in admitting such evidence of a parent's financial condition, but that it was relevant evidence for the jury to consider.

The fact that a jury was permitted to consider a "parent's financial condition in assessing a penalty on a subsidiary is a far cry from piercing the corporate veil and holding the parent liable for the actions of its subsidiary; [w]here the penalty was assessed against the subsidiary alone." *U.S. v. Mun. Auth. of Union Twp.*, 150 F.3d at 268.  In the case *sub judice*, it is apparent that if the jury considered the wealth of Encore in assessing punitive damages, it was but one of the factors it could have considered.  *Id*.  In fact, the damages award appears to be more likely associated or rationally related to the value of the portfolio in which the Plaintiff's account was acquired.[1]  *Id*.  (reasoning that the value of the parent was not dispositive where it was one factor among others that could have been considered by the jury).  This reasoning is consistent with distinguishing between liability and ability to pay.  *U.S. v. Magnesium Corp. of Am.*, No. 2:01cv40-DB, 2006 WL 1699608, at *3 (D. Utah June 14, 2006).

---

[1] While not on the record, Midland likely learned the same thing, as did Mr. Brim's counsel from post-trial juror interviews – the punitive damage amount was a factor of the number of accounts purchased from Dell in the relevant debt portfolio.

Courts that ruled the value of the parent company was a relevant factor in assessing punitive damages uniformly bristled when it appeared that such damages were a percentage of the net worth of the parent. *In re Tezla*, Bankr. No. 08-12700, 2009 WL 212542, at *4 (Bankr. E.D.Pa. Jan 29, 2009)(considering relevant the value of the parent company, not assessing punitive damages solely on that value but instead on several factors).

In this case, there is simply no error in the admission or the consideration of the information in the Form 10-K. The document was clearly admissible as a public document under Fed. R. Civ. P. 201. The Defendant did not object to counsel's use of information from the Form 10-K in opening and closing, and thus is barred from raising the objection now. The opening statements and closing arguments of counsel are not evidence, and the jury was so instructed. The jury could have properly considered, among other things, the information concerning Encore's net worth, as one of the factors it considered in assessing punitive damages. The Form 10-K and net worth information is relevant and probative for purposes of determining Midland's ability to pay, not to establish Encore's liability. For these reasons, the Defendant has failed to demonstrate error, let alone prejudicial error.

**D.  Admission of the Organizational Chart was proper, and regardless Midland does not contend that it altered the outcome of the case.**

Plaintiff has discussed Exhibit 8 in the previous section. Regardless, even if admission of the document was "cumulative" or should have otherwise been excluded – it should not have been – there is no contention or explanation of substantial prejudice.

**E.  The Dell witness questions were properly excluded.**

Again, the Plaintiff and even more so the Court should not be required to address every difference of opinion with Midland as regards the presentation of evidence at trial. The Dell questions, as with most of Defendant's post-trial arguments, are not so substantial or critical to Midland's defense as to support a new trial. Defendant makes no effort to argue otherwise and on that basis alone, its motion should be denied.

Regardless, Midland also fails to address the actual basis for Plaintiff's objection to the Dell questions – that they sought to elicit improperly speculative testimony. Trail Tr. vol. III, 223:16-18. Midland's counsel sought to ask Dell's employee what Dell would have done in an alternate universe – one in which Midland had actually done something it did not do in this case. The Court properly sustained that objection. 1 McCormick On Evid. § 185 (6th ed.) ("Probative evidence often is said to have "logical relevance," while evidence lacking in substantial probative value may be condemned as "speculative" or "remote." Speculativeness usually arises with regard to dubious projections into the future or questionable surmises about what might have happened had the facts been different.")

Separately, Plaintiff would disagree with Midland as to whether or not it such testimony could have been relevant. Midland did not contact Dell. And even if Dell had refused to delete, as Plaintiff has explained in his opposition to Midland's other post-trial motions, this would not exonerate Midland. Dell was incompetent. Midland could not rely on it.

**II. THE COURT PROPERLY INSTRUCTED THE JURY**

**A. There was no evidence that Mr. Brim failed to mitigate his damages.**

Midland continues its theme of reliance on the "transactional detail report" assertion despite that it depends on an incorrect understanding of the law and ignores facts certainly determined more relevant by the jury. Plaintiff has already addressed the "transactional detail report" argument in his opposition to Defendant's Renewed Motion for Judgment (Section III) and incorporates those arguments herein. The FCRA does not require a consumer to take any of the additional steps in hindsight manufactured by Midland.

### B. The Court properly defined "Investigation."

Midland argues that the Court improperly defined "investigation", but does so having itself failed to suggest any alternative definition or instruction. "[C]ourts often turn to dictionary definitions for guidance. *CBS, Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1223 (11th Cir.2001)." *Horton Homes, Inc. v. United States*, 357 F.3d 1209, 1213 (11th Cir. 2004) (defining statutory terms from Merriam-Webster's Third New International Dictionary). In this instance, the Court's instruction was on an even more sound footing as it instructed the jury not only on the common definition of "investigation", but as well on that determined in the seminal FCRA case interpreting 15 U.S.C. § 1681s-2(b). *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004) ("The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed.2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry"). Thus, the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors."). See also *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) *cert. denied,* 131 S. Ct. 71, 178 L. Ed. 2d 23 (U.S. 2010) ("As

we have noted, the term "investigation" on its own force implies a fairly searching inquiry."); *Robertson v. J.C. Penney Co., Inc.*, Civil Action No. 2:06CV3-KS-MTP, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008)("A reasonable investigation "clearly requires some degree of careful inquiry by creditors" and more than just a "superficial" inquiry").

<u>/s/ Penny Hays Cauley</u>
Penny Hays Cauley, ASB-6309-A63P
Attorney for Plaintiff

**HAYS CAULEY, P.C.**
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

Ronald C. Sykstus, Esq.
**BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.**
415 Church Street, Suite 100
Huntsville, AL 35801
(256) 539-9899
(256) 539-9895 Facsimile
rsykstus@bondnbotes.com

Leonard A. Bennett, Esq.
**CONSUMER LITIGATION ASSOCIATES, P.C.**
VSB #37523
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Phone: (757) 930-3660
Fax:     (757) 930-3662

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2011, I electronically filed the foregoing via the CM/ECF System, which will notify the following counsel of record:

Eric B. Langley, Esq.
Jason B. Tompkins, Esq.
BALCH & BINGHAM LLP

P. O. Box 306
Birmingham, AL 35201-0306

                                                     /s/ Penny Hays Cauley
                                                     Of Counsel