IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMON T. BRIM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **5:10-cv-0369-IPJ** |
| **MIDLAND CREDIT** ) | |
| **MANAGEMENT, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT MIDLAND CREDIT MANAGEMENT INC.'S
CONSOLIDATED REPLY TO PLAINTIFF'S OPPOSITIONS TO
DEFENDANT'S POST-TRIAL MOTIONS**

Plaintiff's responses to Midland's post-judgment motions are long on rhetoric but short on substance. Rather than confront Midland's motions on the merits, Plaintiff relies on hyperbole, misdirection, and, occasionally, flat misstatements of the law and evidence.

Plaintiff, for instance, accuses Midland of citing "abrogated" case law (an issue discussed below), yet himself cites a case that was reversed *in its entirety*. (Doc. 93 at 10) (citing *Thornton v. Equifax*, 467 F. Supp. 1008 (E.D. Ark. 1979), which the Eighth Circuit reversed for a new trial, 619 F.2d 700 (8th Cir. 1980)). Plaintiff likewise accuses Midland of improperly attempting to resurrect rejected arguments, but then asserts that *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996), states the appropriate rule of causation – a proposition this Court

1146414.1

considered and rejected at the charge conference. (*See id.* at 25-26); (*compare* Pl.'s Proposed Jury Instructions, doc. 67, at 24 *with* Trial Tr. vol. IV, 18:3-8).[1]  In the same way, Plaintiff accuses Midland of relying on its "own view of the evidence" even though he references very little evidence at all and frequently cites only his counsel's arguments as "evidence." (*See, e.g.*, doc. 93 at 18) ("[A]s Plaintiff's counsel explained in Closing Argument …."); (*id.* at 38) ("As Plaintiff's counsel argued ….").

Space and time constraints prevent a point-by-point reply to each of Plaintiff's individual arguments. The following responds to some of the more egregious shortcomings of Plaintiff's responses.

## I. MIDLAND IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

### A. Plaintiff Failed To Rebut Midland's Demonstration That It Did Not "Willfully" Violate the FCRA.

Plaintiff attempts to sidestep Midland's demonstration that it did not "willfully" violate the FCRA by erecting and then demolishing a straw man. Rather than citing evidence to support a finding of willfulness, Plaintiff contends that all but one of Midland's cases have been "conclusively abrogated" by the

---

[1] As at the charge conference, Plaintiff suggests that *Philbin* has some application here because it was cited by the Eleventh Circuit in *Levine*, but that suggestion is misleading. The Eleventh Circuit cited *Philbin* in a string citation concerning the required particularity of emotional distress damages. Not only did the Eleventh Circuit expressly not decide that issue, but Plaintiff now cites *Philbin* as relevant to an entirely different subject – causation.

Supreme Court's *Safeco* decision. (Doc. 93 at 5). But the Supreme Court's recognition that recklessness suffices to prove willfulness does not "abrogate" cases applying an alternative means of showing a "knowing" violation. In any event, several of Midland's cases expressly recognized recklessness as a means of proving willfulness even before the *Safeco* decision. *See, e.g.*, *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279 (N.D. Ga. 2006).

Stripped of this distraction, Plaintiff is left with only a page and a half of "facts" that he contends prove willfulness – a necessary element of the only claim underlying the judgment:

- **"[D]elay in correcting the violation."** (Doc. 93 at 7). Plaintiff cites no authority for the premise that delay alone supports a finding of willfulness. *Cf. Thomas v. Gulf Coast Credit Servs., Inc.*, 214 F. Supp. 2d 1228, 1238 (M.D. Ala. 2002) ("fail[ure] to produce immediate eradication of inaccurate information" is not a willful disregard for the plaintiff's rights). In any event, Midland deleted the account less than one month after receiving notice from Dell that it had discovered the misapplied payment. (Def.'s Ex. 4) (showing that transactional detail report was prepared by Redstone on August 11, 2010); (Def.'s Ex. 19) (requesting deletion with CRAs on September 9, 2010); (Trial Tr. vol. 2, 131:21-132:4) (testifying that Midland deleted the account on September 9, 2010).

- **"Defendant intended the conduct and procedures that violated the statute."** (Doc. 93 at 8). Plaintiff argues that Midland "testified to just such intent" by "conceding" that Plaintiff's disputes were processed according to Midland's standard procedures. If this were sufficient to prove willfulness, then any investigation that reached an incorrect result would necessarily constitute a willful violation of the FCRA simply because a furnisher followed its own policies, however reasonable they may be. That is not the law. *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1116 (D. Minn. 2004) ("Here,

1146414.1

3

plaintiff simply alleges that defendant's procedures were unreasonable and therefore violated the Act. Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute."). Indeed, if anything, following one's own procedures weighs *against* a finding of willfulness. *See Spector v. Experian Info. Servs., Inc.*, 321 F. Supp. 2d 348, 358 (D. Conn. 2004) ("[T]here is no evidence that [defendant] engaged in deliberate or reckless conduct that would warrant punitive damages. In fact, plaintiff admits that '[defendant] followed its normal procedure in responding to plaintiff's dispute and has no information indicative of any departure from normal procedures.'") (internal citation omitted).

- **"[T]he magnitude of Midland's problem."** (Doc. 93 at 8). Plaintiff suggests that it was a "problem" that Midland "followed the same 'automated' dispute procedures for at least 95% of its customers." (*Id.*) But Plaintiff cites no law to suggest that mere use of an automated system is a willful violation of the FCRA. *Cf. Cousin v. Trans Union Corp.*, 246 F.3d 359, 374 (5th Cir. 2001) ("We may fault the failure to implement a full-proof [sic] cloaking procedure as unreasonable, but we cannot say that it was willful."). Moreover, there was no evidence that Midland's automated dispute investigation procedures resulted in a "problem" for any other similarly situated consumers, let alone a problem of any "magnitude."

Separately from willfulness, Plaintiff failed even to identify sufficient evidence that Midland's investigation was "unreasonable." Rather than identify any record *evidence* suggesting what investigation would have been "reasonable," Plaintiff merely asserts that expert testimony was not required to establish reasonableness. (Doc. 93 at 7). Even if that were so, the lone case Plaintiff cites to support his argument merely concluded that expert testimony is "not always" required for a plaintiff to survive summary judgment, but "might sometimes be necessary." *Wilson v. CARCO Group, Inc.*, 518 F.3d 40, 43 (D.C. Cir. 2008). In

*Wilson*, the D.C. Circuit held that, even though expert testimony was not required in that case, the plaintiff must "present *some* evidence from which a trier of fact can infer a failure to follow reasonable procedures." *Id.* (internal punctuation and citation omitted). And that is Midland's point: Plaintiff presented *no* evidence of the standard of care from which the jury could infer that the standard was breached.

### B. Plaintiff's Injury And Causation Arguments Rest On Misstatements Of The Evidence.

Plaintiff contends that the American Express "denial letter identifies a 'collection account' as the cause of the denial." (Doc. 93 at 19). Plaintiff cites no support for this assertion, because there is none. The denial letter (admitted over Midland's objection as unauthenticated hearsay, *see infra* at 10-11) actually states, "After reviewing your request, regrettably, we are unable to open an account for you at this time for the following reason(s): Your consumer credit bureau score from Trans Union is too low." (Pl.'s Ex. 7). The letter indicates several "primary factors that . . . affected [the] credit bureau score," but uncontradicted testimony from TransUnion established that the Midland account was *not* among those factors. (*See* Trial Tr. vol. 3, 58:7-14).[2] The jury could not reasonably "infer" that

---

[2] The listed factors included "Too many inquiries last 12 months" – which, of course, could not possibly be related to Midland. The others – such as "serious delinquency" and "[t]ime since delinquency is too recent" – could have been based on other entries. Plaintiff's TransUnion credit report showed two other "adverse accounts," including one for which "Maximum delinquency of 90+ days occurred in 07/2002 for $880." (Pl.'s Ex. 43 at TU 71).

Midland caused any credit denial when the uncontested testimony demonstrated that the Midland account was *not* a factor in the credit score (the sole stated basis of denial).

Perhaps in an effort to deflect attention from the fact that the American Express letter is the sole evidence of any credit injury, Plaintiff also asserts credit denials from Capital One and from mortgage lenders (doc. 93 at 23), but he offered *no* documentary evidence that he applied for credit, much less that he was denied. Though Plaintiff testified that he was denied a credit increase by Capital One, he also admitted that Capital One *never* indicated that the Midland account had any bearing on its decision. (Trial Tr. vol. III 137:6-18). On the witness stand, Plaintiff equivocated about whether he had even applied for a mortgage with some of the lenders, and could not testify that he was ever denied credit by *any* mortgage lender. (Trial Tr. 127:10-131:8). Contrary to Plaintiff's suggestion, the Third Circuit's *Philbin* decision does not stand for the proposition that "proof of credit denials" may consist of "circumstantial evidence and inference." (Doc. 93 at 25). The plaintiff in *Philbin* submitted actual credit denials to the court; in fact, the Third Circuit quoted them repeatedly. *Philbin*, 101 F.3d at 960-61.

---

That entry remained on Plaintiff's TransUnion credit report in February 2010 with a delinquency noted for "03/2005." (Pl.'s Ex. 57 at TU 156). Given TransUnion's uncontradicted testimony that the Midland account did not affect Plaintiff's credit score, these factors could not be referring to the Midland account.

## II. MIDLAND IS ENTITLED TO REMITTITUR OF THE COMPENSATORY AND PUNITIVE AWARDS.

### A. Plaintiff Misstates The Law In Constesting Midland's Remittitur Motion.

Plaintiff provides two impressive-looking lists of cases – many of them unpublished and unavailable in any online database – that he contends demonstrate that the compensatory and punitive damages awards in this case are not outliers among FCRA cases. (Doc. 93 at 9-10 & 34-36). But Plaintiff explains neither the facts of those cases nor what they mean in the context of the evidence offered in this case. And with good reason.

First, Plaintiff does not give the Court complete information about the cited cases, such as:

- *Thornton v. Equifax*, 467 F. Supp. 1008 (E.D. Ark. 1979), was reversed for a new trial; therefore, that verdict no longer stands.

- While it is true that the jury in *Thompson v. Equifax*, 2003 WL 1579757 (M.D. Ala. Mar. 3, 2003), returned a verdict of $80,000, the court reduced the award to $30,000.

- The substantial "FCRA" awards in *Reilly v. Duvall Cnty. Public Schools*, 2007 WL 2120547 (M.D. Fla. 2007), and *Quitto v. Bay Colony Golf Clubs*, 2007 WL 4098847 (M.D. Fla. 2007), **were for violations of a different "FCRA" – the Florida Civil Rights Act**.

In fact, many of Plaintiff's cases actually support reduction of the award in this case. *See, e.g.*, *Anderson v. Conwood Co.*, 34 F. Supp. 2d 650 (W.D. Tenn. 1999) (remitted compensatory damages from a $2,000,000 award to $50,000 and vacated punitive damages award of $3,500,000); *Bach v. First Union*, No. 3:01-

CV-191 (S.D. Ohio) (finding a punitive damages to compensatory damages ratio of 6.6:1 "alarming" and thus reducing ratio to 1:1); *Stevenson v. TRW*, 987 F.2d 288 (5th Cir. 1993) (in reversing trial court's determination that defendant willfully violated FCRA and affirming only the negligent violations, Fifth Circuit allowed $30,000 award for mental anguish to stand but vacated punitive damages award of $100,000); *Thompson v. Equifax*, 2003 WL 1579757 (M.D. Ala. 2003) (stating that compensatory damages award of $80,000 was remitted to $30,000); *Thompson v. San Antonio Retail Merchant*, 682 F.2d 509, 514 (5th Cir. 1982) (awarding plaintiff $10,000 in damages, despite finding that his emotional distress stemming from three credit denials was "substantial"); *Trans Union Corp. v. Crisp*, 896 S.W. 2d 446 (Ark. App. 1995) (despite evidence showing a "willful" violation of the FCRA, plaintiff recovered $15,000 in compensatory damages and $25,000 in punitive damages).

Second, of the remaining cases that could actually be located, had not been overruled, and did not involve substantial reductions of awards, nearly all are readily distinguishable. For example, several involve identify theft (which is not at issue in this case) and the destruction of a consumer's credit by the thief. *See, e.g.*, *Adams v. Phillips*, 2002 U.S. Dist. LEXIS 24888 (E.D. La. 2002) (noting that plaintiff experienced at least $150,000 in direct economic loss due to identify theft); *Drew v. Equifax*, No. 3:07-CV-726 (N.D. Cal. 2010) (noting that plaintiff

was a cancer patient undergoing treatment during problem times of identity theft); *Sloane v. Equifax*, No. 1:05-CV-1272 (E.D. Va. 2005) (involving identity theft).

Similarly, the cases cited by Plaintiff involving significant emotional distress awards were supported by substantial evidence of the emotional distress, such as corroborating testimony. *Boris v. ChoicePoint Servs., Inc.*, 249 F. Supp. 2d 851 (W.D. Ky. 2003) (noting that plaintiff provided corroborating testimony in detail as to her emotional distress); *Zamora v. Valley Fed. S&L Ass'n*, 811 F.2d 1368 (10th Cir. 1987) (noting that plaintiff experienced significant marital problems as a result of the defendant's actions, leading to substantial emotional distress). Plaintiff, by contrast, presented only his own conclusory testimony, which constitutes *at most* a mere 28 lines of the 674-page transcript. (Doc. 79 at 15).

### B. Plaintiff Misstates The Law In Contesting Midland's Setoff Request.

Plaintiff cites a footnote from a Fourth Circuit decision for the proposition that "[t]he 'One Satisfaction' rule is inapplicable under to [*sic*] the FCRA." (Doc. 93 at 41) (citing *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500 n.2 (4th Cir. 2007)). In reality that footnote relied on a case interpreting the Motor Vehicle Information and Cost Savings Act for gratuitous dicta: "Arguably, the 'one satisfaction rule' does not even apply to FCRA claims." *Sloane*, 510 F.3d at 500 n.2. The Fourth Circuit expressly did "*not reach this question in light of [its]*

*holding that the injury caused by Equifax is divisible from the other injuries Sloane suffered.*" *Id.* (emphasis added).

Plaintiff cannot (and did not) make a showing of divisible injury here. Dell Financial was a defendant in this very lawsuit and lumped in the same allegations as Midland. The separate lawsuit against Experian, Equifax, and TransUnion was based on a nearly identical complaint (with party names changed). Both complaints and all allegations against all parties are based on the Midland account on Plaintiff's credit reports. All of Plaintiff's alleged injuries stem from that same entry.

Plaintiff cannot evade the one-satisfaction rule by crafting the settlement agreements as lump sums. (*See* doc. 93 at 41). In fact, his failure to apportion the settlement monies to particular claims or categories actually works against him. *See, e.g.*, *Scheib v. Florida Sanitarium & Benevolent Ass'n*, 759 F.2d 859, 861 (11th Cir. 1985) (recognizing that because plaintiffs "had obtained releases from liability in return for their payments without apportioning the payments among the possible elements of damage, the settlement payments must be applied in their entirety as setoffs to reduce the damages obtained against the [defendant] for the same injury in this suit" and that allowing a post-hoc apportionment would be a "grossly speculative endeavor").

### III. MIDLAND IS ENTITLED TO A NEW TRIAL.

#### A. Plaintiff Conspicuously Fails To Address Midland's Arguments For Excluding The American Express Letter.

Plaintiff neglects to respond to Midland's argument that the American Express denial letter is both unauthenticated and hearsay. Plaintiff's statement that the exhibit is "<u>of course</u> a copy of what American Express provided to Mr. Brim" (doc. 93 at 17) misses the point entirely. American Express cannot say what, if anything, it sent Plaintiff because it has *no record* of Plaintiff. (*See* doc. 62, Ex. B). The fatal flaw with the document is not that it is a copy, but that it is a document provided to American Express *by Plaintiff* rather than a document "*kept in the course of a regularly conducted business activity*" by American Express – an essential prerequisite to overcome authentication and hearsay objections. *See* Fed. R. Evid. 803(6) & 901(11).[3] Given that American Express had no records concerning Plaintiff, the document (or any copy) was not, by definition, "kept" by American Express. In fact, the affidavit submitted by Plaintiff purporting to "authenticate" the document fails even to *assert* that it was "kept in the course of the regularly conducted activity." Fed. R. Evid. 902(11)(B); *see also* Fed. R. Evid. 803(6). This issue is not close. It was error to admit the denial letter, and given

---

[3] Plaintiff states that American Express did not fully respond to Midland's subpoena, implying that American Express had (and ultimately provided to Plaintiff) a copy of the denial letter. This is entirely misleading. The copy attached to American Express's affidavit was provided *by Plaintiff* – it even has a trial exhibit sticker on it. There is no dispute that American Express did not keep a copy of the letter in the regular course of business or otherwise.

that it was the only document corroborating any alleged credit injury, it was unquestionably harmful error.

### B. Plaintiff's "Waiver" Argument Concerning Admission Of Encore's 10-K Ignores The Rules Of Evidence.

In its motion for a new trial (doc. 81), Midland showed that the Court erred by admitting evidence concerning the financial condition of Encore, Midland's parent company. Plaintiff strains logic and case law[4] in an attempt to show that the 10-K contained "a great deal of relevant information." That argument is a non-starter. The 10-K was never presented by any witness at trial and was mentioned only as background in Plaintiff's opening statement.

Lacking any substantive response, Plaintiff retreats to an assertion that Midland waived this argument because it did not object when Plaintiff's counsel referred to information contained in the 10-K during opening statement and closing argument. But Midland had already preserved its broad-based objection to the 10-K and its contents:

---

[4] In arguing that the 10-K was relevant, Plaintiff relies on *United States v. Mun. Auth. of Union Twp.*, 150 F.3d 259, 268 (3d Cir. 1998). (Doc. 94 at 11). Plaintiff quotes *Union Township* for the proposition that "[i]f a subsidiary does not retain its revenues, as the evidence showed in this case, then its parent's financial resources are highly relevant." (*Id.*) Plaintiff then states that "[l]ike the Defendant in *Union Township*, the Midland Defendant here refused to produce its net worth during discovery." (*Id.*) Plaintiff never requested from Midland any information about its net worth; Midland, therefore, never refused to produce any such information. This undermines the very foundation for Plaintiff's argument that the 10-K of the *parent* is relevant.

> Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Fed. R. Evid. 103. Midland objected on the record (Trial Tr. vol. 2, 11:7-13:12), and this Court overruled that objection:

> I'm going to overrule that objection. It is a public document. It discusses Midland's financial situation and its business practice as the same as filed and public in the public record. I'm just going to let it in.

(Trial Tr. vol. 2, 13:13-18). Having already objected to the 10-K and its contents, Midland was not required to object again (and again) when Plaintiff's counsel referred to information from the 10-K during his arguments.

## CONCLUSION

Midland respectfully requests that the Court grant it judgment as a matter of law or, alternatively, either a new trial or a substantial remittitur of the compensatory and punitive awards.

                                         /s/ *Jason B. Tompkins*
                                         One of the Attorneys for Defendant
                                         Midland Credit Management, Inc.

**OF COUNSEL**:
Eric B. Langley
Jason B. Tompkins
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205)251-8100
Facsimile: (205)226-8798
elangley@balch.com
jtompkins@balch.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2011, I have filed the above and foregoing via CM/ECF, which will notify the following counsel of record:

Penny Hays Cauley
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC  29501
phc917@hayscauley.com

Ronald C. Sykstus
BOND, BOTES, SYKSTUS, TANNER & EZZELL, P.C.
415 Church Street, Suite 100
Huntsville, AL  35801

Leonard A Bennett
CONSUMER LITIGATION ASSOCIATES PC
12515 Warwick Blvd, Suite 100
Newport News, VA  23606
Email: lenbennett@clalegal.com

    /s/ *Jason B. Tompkins*
    Of Counsel