FILED
2011 May-04  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JAMON BRIM,

      PLAINTIFF,

v.                               CASE NO.: CV-10-J-369-S

MIDLAND CREDIT MANAGEMENT,
INC.,

      DEFENDANT.

## <u>ORDER</u>

Pending before the court are the defendant's motion for judgment as a matter of law or, alternatively, that the judgment be vacated (doc. 79); defendant's motion for remittitur and constitutional reduction of punitive damages award (doc. 80), and the defendant's motion for a new trial (doc. 81), to which the plaintiff filed a memorandum in opposition to defendant's motion for new trial, and a memorandum in opposition to the defendant's motion for judgment as a matter of law and motion for remittitur (docs. 93 and 94), and the defendant thereafter filed a reply (doc. 98). Having considered said motions, responses and reply, the court finds as follows:

## I. **Motion for Judgment as a Matter of Law (doc. 79)**

The Eleventh Circuit has instructed that

In reviewing the district court's grant of a JNOV, our standard of review is the same as that used by the district court to determine whether to

grant a JNOV in the first instance. As we stated in *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988):

> All of the evidence presented at trial must be considered "in the light and with all reasonable inferences most favorable to the party opposed to the motion....." Where substantial conflicting evidence is presented such that reasonable people "in the exercise of impartial judgment might reach different conclusion, [sic]" the motion should be denied. (Citations omitted).

*Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir.1990). See also

*Advanced Bodycare Solutions, LLC v. Thione Intern., Inc.*, 615 F.3d 1352, 1360 (11th Cir.2010).

The defendant's motions are no more than a rehashing of the evidence adduced at trial and heard by the jury.  In essence, the defendant does not agree with the findings of the jury, particularly the findings that defendant's actions in investigating plaintiff's complaints were "willful" as that term is used in the Fair Credit Reporting Act; that defendant's method of investigating complaints was not reasonable; and that the jury did not give great weight to certain testimony of defendant's witnesses.  The Seventh Amendment prohibits a re-examination of a jury's determination of the facts. *Johansen v. Combustion Eng'g, Inc*., 170 F.3d 1320, 1330 (11th Cir.1999).

As to willfulness, the jury heard the evidence, and based on that evidence, found the defendant's actions to have been willful.[1]  *See* Jury Verdict (doc. 74).  It is not for this court to substitute its own finding of credibility for that of the jury.  *See e.g. United States v. Calderon,* 127 F.3d 1314, 1325 (11th Cir.1997) (stating that it is the exclusive province of the jury to determine whether a witness is credible);  *Redd v. City of Phenix City, Ala*., 934 F.2d 1211, 1215 (11th Cir.1991).  "Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence.'" *Lipphardt v. Durango Steakhouse of Brandon, Inc*., 267 F.3d 1183, 1186 (11th Cir.2001); citing *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1986).  After careful consideration of the defendant's arguments, the plaintiff's response, the applicable law, and the record as a whole, the court is of the opinion that the jury's verdict is not contrary to the great weight of the evidence as a whole.  The basis for this conclusion is set forth herein.

The defendant argues that the plaintiff failed to offer legally sufficient evidence to show a cognizable injury, based on evidence admitted over objection at trial.

---

[1]The court also defined "willful" for the jury, and set forth two different verdicts for the jury to use based on whether the jury found the defendant's actions to be negligent or willful.  Of course, the court also provided the jury a third verdict form, for the jury to use had it found in defendant's favor.

Defendant also asserts that its witness at trial testified that the evidence in question, specifically the denial of credit, was not from a time period when defendant's actions would have affected plaintiff's credit score.  Defendant's motion for judgment as a matter of law (doc. 79) at 9; defendant's motion for remittitur (doc. 80) at 3.  The defendant further challenges the verdict by its assertion that the plaintiff failed to offer legally sufficient evidence that the plaintiff's injuries were caused by the defendant.  *Id*., at 16.

The jury found defendant's witness's testimony regarding defendant's actions' impact on the plaintiff and his credit score not to be credible.  It is within the province of the jury to pick which evidence to believe.  See e.g, *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, 573 F.3d 1186, 1203 (11th Cir.2009); *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir.1999) (explaining that the power to determine the credibility of witnesses is the "exclusive province" of the jury and "the court of appeals may not revisit this question").

The defendant also criticizes the "inference of an actual denial" with regard to the plaintiff not obtaining a mortgage as "pure speculation."  Doc. 79, at 10.  However, this too, was a question for the jury.  The court may not "assume the jury's role of weighing conflicting evidence or inferences, or of assessing the credibility of witnesses." *Cornell v. CF Center, LLC,* 2011 WL 196947, 3 (11th Cir.2011)(quoting

*Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir.2005). While defendant may believe the jury came to the wrong conclusion, the evidence does not "so undermine the jury's decision as to warrant a new trial." *Id.* The defendant continues to maintain that its investigation of plaintiff's complaints were reasonable. However, the question of reasonableness was for the jury, and the jury disagreed with the defendant.[2] *See e.g., Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991) (reasonableness of procedures is a jury question in the overwhelming majority of cases)(citing *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir.1982)); *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir.2001)(citing *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir.1995). *See also Johnson v. MBNA America Bank, NA,* 357 F.3d 426, 431 (4th Cir.2004)(under similar circumstances, finding jury conclusion– that MBNA acted unreasonably in failing to verify the accuracy of information– to be reasonable).

In its motion for judgment as a matter of law, the defendant's criticisms of the jury's verdict focus on a lack of direct proof of various elements on which the

---

[2]To date, defendant has remained strong in its conviction that its actions were beyond reproach despite the fact that the plaintiff spent more than two years trying to get defendant to repair an inaccuracy the plaintiff certainly did not cause. The defendant maintained throughout trial that it had no obligation to determine the accuracy of the accounts it attempted to collect, even though it, in turn, reports them to credit reporting agencies. This was a question of fact for the jury. The jury clearly disagreed with the defendant. Yet the defendant continues to argue its own version of what the evidence adduced at trial demonstrated.

plaintiff bore the burden.  However, the law does not require direct proof, but rather permits evidence of circumstances from which the fact to be proved is a legitimate inference.  *See Boutwell v. Federal Mogul Corp*., 342 Fed.Appx. 541, 547 (11th Cir.2009), citing *Gulf States Steel, Inc. v. Whisenant*, 703 So.2d 899, 907 (Ala.1997) ("[K]nowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference."); *Premdor Corp. v. Jones*, 880 So.2d 1148, 1149-55 (Ala.Civ. App.2003).

The same is true for defendant's assertion that plaintiff's evidence of emotional distress was insufficient as a matter of law.  Doc. 79 at 12; *see also* doc. 80.  When a jury awards damages for emotional distress, the court must be "particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir.2001)(citations omitted).

Defendant argues that because plaintiff showed no actual credit injury, he could not recover for emotional distress.  Defendant ignores the fact that the FCRA contains no requirement that the plaintiff prove an out of pocket loss in order to recover actual damages.  *See  Guimond*, 45 F.3d at 1333 ("no case has held that denial of credit is

6

a prerequisite to recovery under the FCRA"); *Boris v. Choicepoint Services, Inc.*, 249 F.Supp.2d 851, 859 (W.D.Ky.2003) (citations omitted) ("It is well settled that actual damages under the FCRA are not limited to pecuniary out of pocket losses but may include non-pecuniary damages for humiliation, mental distress, and injury to one's reputation and creditworthiness").

The Eleventh Circuit has never precisely delineated the factors that a court should consider in determining whether the plaintiff's evidence of emotional distress is sufficient to support the jury's award of compensatory damages for emotional distress, particularly where, as here, the plaintiff's damages evidence consists chiefly of his own testimony.  However, other district courts in this Circuit have clearly held that damages for mental distress are recoverable under the FCRA even if the plaintiff has suffered no out of pocket expenses; *Moore v. Equifax Information Services* LLC., 333 F.Supp.2d 1360, 1365 (N.D.Ga.2004); and the Eleventh Circuit has cited other Circuit cases for the proposition that "a claim for actual or compensatory damages under FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expenses." *Levine v. World Financial Network Nat. Bank*, 437 F.3d 1118, 1125 (11th Cir.2006) (citing *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir.1998) (holding that, even in the absence of "out-of-pocket expenses or costs incurred," the district court did not abuse its discretion in awarding

actual and punitive damages when appellees testified "about how they felt when appellant obtained their credit reports and violated their privacy, thereby causing them some emotional distress"); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n. 3 (3rd Cir.1996) ("Given the amorphous nature of the damages at issue, we do not consider it necessary that [the plaintiff] state his damages with any greater degree of particularity."); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2nd Cir.1995) ("[T]he District Court properly recognized that 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses.").  See also *King v. Asset Acceptance, LLC,* 452 F.Supp.2d 1272, 1281 (N.D.Ga.2006)("In FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony.") (citation omitted).

For the reasons set forth above, the court declines to ignore the findings of the jury.  The motion for judgment as a matter of law (doc. 79) is therefore **DENIED**.

## II.  Motion for Remittitur (doc. 80)

As with its motion for judgment as a matter of law, in its motion for remittitur (doc. 80), the defendant asserts both that the actual damages and the punitive damages awarded by the jury are excessive, based on defendant's view of the evidence presented at trial.  The standard set forth for reviewing jury awards is whether the award "shocks the conscience of the court."  *See e.g., Simon v. Shearson*

8

*Leahman Bros. Inc.,* 895 F.2d 1304, 1310  (11th Cir.1990); *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1307 (11th Cir.1984).  Only then, when the jury's verdict falls outside the realm of reason, is the judge is justified in acting. "[T]he district judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Redd v. City of Phenix City, Ala.*,  934 F.2d 1211, 1215 (11th Cir.1991)(citing *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1498 (11th Cir.1987) (citing *Williams v. City of Valdosta*, 689 F.2d 964, 973-74 n. 7 (11th Cir.1982)). When there is some support for a jury's verdict, it is irrelevant what the district judge would have concluded.  *Redd*, 934 F.2d at 1215.  Given the evidence heard at trial, the court cannot find that the jury's award is beyond the "realm of reason." *Id.,* at 1215 n. 3.

The jury disagreed with the defendant as to the reasonableness of its procedures.  That decision was within the province of the jury.  The defendant's argument now that these same procedures are reasonable does not provide a basis for this court to change the verdict of the jury.  Specifically the defendant argues that the actual damage award of $100,000.00 is excessive based on the evidence at trial, and that this court should reduce this amount, as determined by the jury, to the amount of "no more than $25,000, which is still generous...."  Doc. 80 at 2, 9.  This ignores the evidence by the plaintiff that he attempted numerous times across numerous years to

have the defendant correct its records.  It also ignores evidence of plaintiff's testimony regarding credit denials, mortgage denials, and the amount of time he had to devote to his credit, all because of defendant's actions or inactions. The defendant's sole effort after five separate notifications from credit bureaus that plaintiff disputed the debt was to check its records against its very own records.  The plaintiff has established that numerous similar cases have resulted in compensatory damage awards of similar amounts.  Doc. 93, at 34-36.

The defendant next argues that the punitive damages award of $623,180.00 is "grossly excessive" under the circumstances of this case.  Doc. 80 at 10.  As the court noted above, the jury found the defendant's behavior to willful, and assessed damages accordingly.[3]  Punitives are aimed not at compensation but principally at retribution

---

[3]The jury was charged on both willful and negligent noncompliance.  The verdict form also required the jury to select between negligent and willful noncompliance.  The jury completed the section entitled "Plaintiff's claim of Willful Noncompliance."  The relevant statute states

**§ 1681n. Civil liability for willful noncompliance**

(a) In general

Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)(A) any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

and deterring harmful conduct. *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 492-493, 128 S.Ct. 2605, 2621 (U.S.2008) (citations omitted). Examining these concepts, the Supreme Court noted

> Regardless of culpability, however, heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increasing chances of getting away with it), *see, e.g., BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("A higher ratio may also be justified in cases in which the injury is hard to detect"), or when the value of injury and the corresponding compensatory award are small (providing low incentives to sue), see, *e.g., ibid.* ("[L]ow awards of compensatory damages may properly support a higher ratio ... if, for example, a particularly egregious act has resulted in only a small amount of economic damages"); 4 *Restatement* § 908, Comment c, p. 465 ("Thus an award of nominal damages ... is enough to support a further award of punitive damages, when a tort ... is committed for an outrageous purpose, but no significant harm has resulted").

*Exxon Shipping Co.*, 554 U.S. at 494, 128 S.Ct. at 2622.

The plaintiff provides ample evidence that many FCRA cases have produced either similar or higher punitive awards. Plaintiff's response (doc. 93) at 9. Both the plaintiff and the defendant cite to *BMW of North America v. Gore*, 517 U.S. 559

---

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n (emphasis added). *See also TRW Inc. v. Andrews* 534 U.S. 19, 23, 122 S.Ct. 441, 444 - 445 (2001)("The Act creates a private right of action allowing injured consumers to recover 'any actual damages' caused by negligent violations and both actual and punitive damages for willful noncompliance. *See* 15 U.S.C. §§ 1681n, 1681 o (1994 ed.).").

(1996), in support of their respective arguments concerning whether the punitive damages awarded are excessive.  In *Gore,* the United States Supreme Court set forth three guideposts for the court to determine whether a jury award of punitive damages is grossly excessive: "the degree of reprehensibility" of the defendant's actions; "the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Myers v. Central Florida Investments, Inc*. 592 F.3d 1201, 1218 (11th Cir.2010) (quoting *Gore,* 517 U.S. at 574-75).

The Supreme Court has held that due process forbids the imposition of grossly excessive or arbitrary awards of punitive damages.  *See e.g., Goldsmith v. Bagby Elevator Co. Inc*., 513 F.3d 1261, 1283 (11th Cir.2008)(citation omitted).  The constitutional question ultimately hinges on whether a defendant "had adequate notice that its conduct might subject it to this punitive damage award."  *Myers*, 592 at 1218; citing *Action Marine, Inc. v. Cont'l Carbon, Inc*., 481 F.3d 1302, 1318 (11th Cir.2007).

The first consideration is the degree of reprehensibility, and it is "the most important indicium." *State Farm Mut. Auto. Insurance. Co. v. Campbell*, 538 U.S. 408, 419, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003); *see also Goldsmith*, 513 F.3d at

1283; *Action Marine*, 431 F.3d 1318.   To determine the reprehensibility of a defendant's conduct, a court must consider several issues: (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *Goldsmith*, 513 F.3d at 1283; citing *EEOC v. W& O, Inc.,* 213 F.3d 600, 614-615 (11th Cir.2000).

In the facts before this court, the degree of reprehensibility is great, as defendant has stood by its faulty system for years, insisting its procedures are reasonable, in the face of obvious evidence otherwise. Defendant asserts its conduct must not be reprehensible under the *Gore* and its progeny standards, because there was no physical injury.  Doc. 80, at 11.  The plaintiff responds that violations of the FCRA are economic in nature, but Congress still saw fit to permit punitive damages for such claims.  Doc. 93, at 11.  Hence, the absence of physical harm does not weigh strongly against punitive damages in such cases.  *Saunders v. Branch Banking and Trust Co. of VA.*, 526 F.3d 142, 152-153 (4th Cir.2008); see also  *Goldsmith*, 513 F.3d at 1283 (where physical injury was absent, the Eleventh Circuit considered economic, emotional and psychological harm).

Under the defendant's system, when a consumer disputes a debt, 95% of such disputes are checked by a computer merely making sure the disputed debt is the same as the information defendant has in its system already.  Upon such review, defendant then asserts the debt is valid each and every time.  As plaintiff points out, defendant receives about 8,000 disputes per week and for 95% of those disputes, defendant checks its own records as a means of validating the debt, although the debts are all purchased, at discount, from various creditors who have been unable to collect on them.  The jury determined defendant's conduct to be reprehensible.  This court will not set that finding aside, as there is more than sufficient evidence to support such a finding.

The second *Gore* guidepost is the ratio of punitive damages to actual harm inflicted on the plaintiff. The "proper inquiry is whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred." *Gore*, 517 U.S. at 581, 116 S.Ct. 1589 (emphasis in original) (citing *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460, 113 S.Ct. 2711)(1993)(quotation marks omitted). On this issue, "comparison between the compensatory award and the punitive award is significant." *Gore*, 517 U.S. at 581, 113 S.Ct. 2711 (citations omitted).  In particular, the ratio of punitive to compensatory damages is instructive.

14

*See State Farm*, 538 U.S. at 425, 123 S.Ct. 1513. Nevertheless, the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." *Gore*, 517 U.S. at 582, 116 S.Ct. 1589 (citing *TXO*, 509 U.S. at 458, 113 S.Ct. 2711); *see also State Farm*, 538 U.S. at 425, 123 S.Ct. 1513; *Goldsmith*, 513 F.3d at 1283.

In this case, the jury awarded punitive damages of $623,180.00 and compensatory damages of $100,000.00. Since this yields a ratio of punitive to compensatory damages of approximately 6.23:1, the court finds this ratio does not suggest an excessive award.  It is in "the single digits."  Single-digit multipliers are "more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with [higher] ratios [of punitive to compensatory damages] ...." *Goldsmith,* 513 F.3d at 1283, citing *State Farm*, 538 U.S. at 425, 123 S.Ct. at 1524.  The Eleventh Circuit has approved numerous punitive awards where the ratio was similar or higher.  See e.g., *Johansen,* 170 F.3d at 1327, 1339 (ratio of 100:1); *Goldsmith*, 513 F.3d at 1283, 1285 (ratio of 9.2:1); *W&O,* 213 F.3d at 616-17 (ratio of 8.3:1); *Action Marine, Inc. v. Cont'l Carbon, Inc*., 481 F.3d 1302, 1321, 1323 (11th Cir.2007) (ratio of 5.5:1).  Furthermore, the one occasion where the Eleventh Circuit struck down a punitive award for constitutional excess,

it reduced an award with a ratio of 8,692:1 to an award with a ratio of 2,173:1. *See Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1357 & 1365  (11th Cir.2004) (reducing the punitive award from $1,000,000 to $250,000 when compensatory damages amounted to $115.05, noting "a single digit multiplier would not have effectively deterred At&T from future misconduct).

The third guidepost is the disparity between the punitive damages award and the "civil penalties authorized or imposed in comparable cases." *BMW of North America, Inc. v. Gore*, 517 U.S. at 575.  Although listing this as a factor, the *Gore* court then stated:

> Of course, we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award. *TXO*, 509 U.S., at 458, 113 S.Ct., at 2720.  Indeed, low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach. Once again, "we return to what we said ... in *Haslip*: 'We need not, and indeed we cannot, draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case. We can say, however, that [a] general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus.' " *Id.*, at 458, 113 S.Ct., at 2720 (quoting *Haslip*, 499 U.S., at 18, 111 S.Ct., at 1043). In most cases, the ratio will be within a constitutionally acceptable range, and remittitur will not be justified on this basis. When the ratio is a breathtaking 500 to 1,

16

> however, the award must surely "raise a suspicious judicial eyebrow."
> *TXO*, 509 U.S., at 481, 113 S.Ct., at 2732.

*Gore,* 517 U.S. at 582-583, 116 S.Ct. at 1602-1603.

The defendant argues that the "civil penalty would be only $17,500" (figured as five violations times $3,500.00 per violation) although to reach this amount the defendant examined the civil penalties authorized  for suits by the Federal Trade Commission.   Even assuming this is an appropriate measure, the court must also consider "whether the punitive damages achieved their ultimate objectives of deterrence and punishment, without being unreasonable or disproportionate." *Southern Union Co. v. Irvin*, 563 F.3d 788, 791 (9th Cir.2009).

Weighing the third *Gore* factor against the purpose of punitive damages, the Third, Fourth, and Sixth Circuits have held that this factor is not particularly useful to the due process analysis in a FCRA case. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 724 (3rd Cir.2010)(explaining that "there is no 'truly comparable' civil penalty to a FCRA punitive damages award"); *Saunders v. Branch Banking & Tr. Co. of VA*, 526 F.3d 142, 152 (4th Cir.2008) (concluding that Congress specifically chose not to limit punitive damages and finding $700,000.00 in punitive damages to be reasonable); *Bach v. First Union Nat'l Bank*, 486 F.3d 150, 154 n. 1 (6th Cir.2007) (noting that FCRA does not limit compensatory damage awards in suits brought by

private citizens).  *See also Dixon-Rollins v. Experian Information Solutions, Inc.* 2010 WL 3749454, 11 (E.D.Pa.) (E.D.Pa.,2010)(because statutory limit does not apply to actions brought by private citizens, the third guidepost is not particularly helpful in assessing the constitutionality of punitive damages awards under the FCRA.).  The court therefore finds the third factor to be of limited usefulness.

Under the FCRA, the jury could award statutory damages even if it found no actual damages, or actual damages if the same were found to exist, and the jury was so charged.  The threat of punitive damages under §1681n of the FCRA is the primary factor deterring erroneous reporting by the credit reporting industry. *See Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 972 (4th Cir. 1987).  Any reduction by this Court of an award that was decided by a jury who were fully instructed regarding all relevant aspects and the economic ability (substantial net worth) of the offending defendant to withstand such an award while forcing it to acknowledge the award's legitimate punitive and deterrent purpose, would be purely arbitrary.  The jury's damages award in this case enters no such zone of arbitrariness as it reasonably punishes defendant for particularly egregious "conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm*, 538 U.S. at 423, 123 S.Ct. 1513.

The defendant next seeks to have this court reduce the amount of the judgment by amounts plaintiff received from other violators of the FCRA.  However each of the sums recouped by plaintiff by other entities subject to the FCRA were for the wrong doings of those various entities.  There is no right to offset or contribution under the FCRA.  *See e.g. Nelson v. Equifax Information Services, LLC,* 522 F.Supp.2d 1222, 1239 (C.D.Cal.2007) (no equitable offset available under the FCRA); *Kay v. First Continental Trading, Inc.*, 966 F.Supp. 753, 754-55 (N.D.Ill.1997) (right to contribution for violations of FCRA is matter of federal law; contribution not an available remedy); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000) (no express or implied right to contribution or indemnification under Fair Debt Collection Practices Act).  This jury heard only evidence concerning the FCRA violations of this defendant, and awarded a verdict based solely on this defendant's actions.  Thus, the court finds no basis to allow this defendant the benefit of an offset.

In consideration of the foregoing, the defendant's motion for remittitur and constitutional reduction of punitive damages award (doc. 80) is **DENIED**.

III.  **Motion for a New Trial (doc. 81)**

Midland further seeks to have this court grant a new trial or alter, amend or vacate its judgment under Rule 59, Fed.R.Civ.Pro.  The defendant asserts the court erred in evidentiary rulings and erred in instructing the jury, and also adopts all its

19

arguments set forth in the Motion for Judgment as a Matter of Law, *supra*.  The court

may only grant a motion for new trial when "the verdict is against the clear weight of

the evidence ... or will result in a miscarriage of justice, even though there may be

substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F.*

*Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984) (internal quotations omitted).

    A.   Evidentiary Rulings

Concerning the court's evidentiary rulings, the defendant must establish not

only that they erroneous, but also that they "resulted in a substantial prejudicial

effect."  *Molinos Valle Del Cibao, C. por A. v. Lama,*  633 F.3d 1330, 1352 (11th

Cir.2011) (quoting *Piamba Cortes v. Am. Airlines, Inc*., 177 F.3d 1272, 1305–06 (11th

Cir.1999) (citations omitted).  The defendant cannot meet this burden.

    1. *American Express letter*

The defendant again challenges the court's admission of a letter plaintiff

received from American Express denying him credit.  The court heard defendant's

objections to this letter before trial, and again during trial, and found the letter to be

admissible.[4]  In its reply, defendant argues that because the American Express denial

letter did not state outright that defendant's collection account was the reason for the

---

[4]Defendant now objects to this letter for the additional reason that a defense witness testified that defendant's actions would not impact the plaintiff's credit score.  Obviously, the jury disbelieved this witness.

denial of credit, the jury could not infer this fact.  However, the letter also stated that "primary factors" affecting the score included "serious delinquency" and "[t]ime since delinquency is too recent" but assert this could have been from other adverse accounts predating the Dell account.  See defendant's reply (doc. 98) at 5.  Clearly, the jury was free to conclude otherwise.

Even if such admission was erroneous (which it was not), the plaintiff produced other evidence of credit denials at trial, such as rejections for a mortgage and the refusal of another company to increase his credit limit, so that the defendant cannot show prejudice from this letter.

### 2. Previously Dismissed Collection Lawsuit by Defendant against Plaintiff

Prior to this action being filed, defendant sued plaintiff in small claims court in an attempt to collect on the account it had purchased.  The court admitted this evidence over defendant's objection.  As the plaintiff argues, at the time defendant purchased the "debt" the statute of limitations on collecting it had expired.  Thus, plaintiff theorizes, defendant placed the debt on plaintiff's credit report to attempt to force the plaintiff to pay a debt it otherwise could not collect.  The jury was entitled to hear this evidence, and determine for itself whether defendant's actions were taken with such intent.  Additionally, the evidence was relevant to plaintiff's testimony

regarding the emotional distress of learning he had been sued for a debt he knew he did not owe.  Lastly, the evidence was relevant to the entire time line of plaintiff's relationship with defendant.[5]  The defendant is mistaken that only evidence directly related to plaintiff's claim against it is admissible.  This has never been the law.  Rather, the evidence was relevant under Rule 401, F.R.E., for the reasons set forth above, and others, and the court therefore admitted it.[6]

### 3.  *Evidence of Defendant's Parent Company's Wealth and Organizational Chart*

Defendant objects to the court's admitting portions of the SEC 10-K filed by defendant's parent company.  Doc. 81, at 7.  This document was referred to by plaintiff's counsel during opening and closing statements, but no witnesses testified about it.  However, this is a publically filed document, referred to during argument without objection.  The court also instructed the jury repeatedly that what the attorneys said is not evidence.

_____

[5]The best demonstration of the relevance of this suit to the time line is in defendant's motion (doc. 81, at 6).  Defendant argues that its prior action against plaintiff is irrelevant because it occurred three months prior to plaintiff's August 2008 notice that he did not owe this debt.  Of course, if defendant never attempted to collect this debt, plaintiff would have never known it still existed.  Hence the defendant had to take some action before the plaintiff could even exercise his rights under the FCRA.  Secondly, defendant admits it did not dismiss its state court action until February 2009, well after plaintiff put defendant on notice it contested this debt.

[6]In other words, evidence does not occur in a vacuum.  Defendant took carefully calculated steps in an attempt to collect a debt that it assumed to be valid.  The plaintiff was entitled to produce evidence and testify about all of those steps, even when individually they did not result in a direct FCRA violation.

22

The defendant also objects to the court admitting an organizational chart of defendant's parent company as an exhibit. Doc. 81 at 9. Although again claimed by defendant as irrelevant, the defendant is but one of several "Midland" entities and the evidence concerning their relationship was greatly clarified for the jury by use of this demonstrative aid. Again, defendant asserts that it was not directly relevant to any issue in the case. As just noted by the court, not every piece of evidence admitted has to be directly relevant to the specific claims of the plaintiff. Evidence to help the jury understand how the parties before them got to court and why they are there is certainly relevant. The court finds no error.

### 4. The Court's Sustaining of Plaintiff's Objection to Speculative Testimony

The defendant complains the court erred in sustaining plaintiff's objection to a question that was based solely on speculation of what would have happened if certain events had occurred, even though it was not related to what actually happened in this case. *See* doc. 81, at 10. Speculative testimony is generally not admissible because it is not based on the witness's perception. *See Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir.1993); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 n. 16 (3rd Cir.1995)(the ability to answer hypothetical questions is "[t]he essential difference" between expert and lay witnesses)(citations omitted).

A witness's opinion about an event that did not occur is mere speculation.  Thus, the court found the testimony in question to be irrelevant.

B. <u>Instructions to the Jury</u>

    *1. Duty to Mitigate*

Defendant asserts it is entitled to a new trial because the court failed to instruct the jury on the plaintiff's duty to mitigate damages.  Doc. 81 at 11.  Defendant blames plaintiff for not obtaining a particular document from his bank[7] although (1) his bank told him that was the very document it provided him; (2) plaintiff did not apply his own money to the wrong account; and (3) defendant made no effort at all to check the accuracy of the accounts it purchased.  The court thus finds defendant's argument that the plaintiff had a duty to mitigate his damages by obtaining this very documentation to be frivolous and in contravention of the evidence actually adduced at trial.  Additionally, this argument is really one that the plaintiff had an obligation under the FCRA beyond making his disputes to the credit reporting agencies.  The plaintiff had

---

[7]The document in question, a transactional detail report, was apparently the only document Dell could use to figure out what Dell did with plaintiff's money.  The fact that the evidence established that Dell, in essence, converted plaintiff's money, then sold his past due account through no fault of the plaintiff, is lost on the defendant.  The evidence established that the bank teller did not know what to give the plaintiff other than a bank statement showing that the money in question was taken out of plaintiff's account and sent to Dell.  Dell, and then defendant, refused to accept this document.  The evidence further established that not until after this action had been filed, and the plaintiff returned to his credit union with his lawyer, did someone at the credit union determine what documentation the plaintiff needed to finally prove to defendant that this account had been paid in full.  Additionally, defendant's own representative testified he had never heard of a "transactional detail report" until this lawsuit.  The court thus finds defendant's argument that plaintiff had a duty to mitigate his damages to be frivolous.

no such duties under the law, and defendant's argument regarding a duty to mitigate is no more than rehashing the pretrial ruling by the court that the plaintiff had no such duty.  *See* docs. 56 and 58.

## 2.  *Definition of Investigation*

The defendant asserts that the court misdefined the term "investigation" in its jury instruction.  Doc. 81 at 13.  According to defendant, the court's definition of this term "provided the jury a definition of a term deliberately undefined in the statute but also defined the term in a way that skewed the case in plaintiff's favor."  *Id*., at 13-14. The defendant further asserts that "there was absolutely no testimony or other evidence offered to support instructing the jury in this manner, particularly in the specific context of a duty under the FCRA to investigate credit disputes."  *Id.*, at 14.

The court took the definition from *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004), where the Fourth Circuit ruled

> "investigation" is defined as: "[a] detailed inquiry or systematic examination." *Am. Heritage Dictionary* 920 (4th ed.2000); *see Webster's Third New Int'l Dictionary* 1189 (1981) (defining "investigation" as "a searching inquiry"). Thus, the plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors. Further, § 1681s-2(b)(1)(A) uses the term "investigation" in the context of articulating a creditor's duties in the consumer dispute process outlined by the FCRA. It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute-and, ultimately, correct-inaccurate information on their credit reports, Congress used the

term "investigation" to include superficial, *un* reasonable inquiries by creditors.

*Id.*, at 430-431 (emphasis in original).

The court knows of no rule requiring evidence or testimony before a term used in a jury charge may be defined for a jury, in spite of the defendant's argument otherwise.

### C.   The Jury's Verdict is Against the Great Weight of the Evidence

The court has all ready considered this argument in the context of the defendant's motion for judgment as a matter of law.  Having already found that the jury verdict was not against the weight of the evidence, let alone the "great weight" of the evidence, the court declines to consider this argument yet again.

For the reasons set forth herein, the defendant's motion for a new trial (doc. 81) is **DENIED.**

**DONE** and **ORDERED** this the 4th day of May, 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE