FILED
2011 Jun-01 PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS

JAMON T. BRIM,                    )
     Plaintiffs,                  )
                                  ) CA NO. 5:10-CV-369-IPJ
VS.                               )
                                  )
DELL FINANCIAL SERVICES,          )
LLC, ET AL,                       )
     Defendants.                  )


     **************************************************
              ORAL AND VIDEOTAPED DEPOSITION OF
                       RACHEL GARLOCK
                      JANUARY 7, 2011
     **************************************************


     ORAL AND VIDEOTAPED DEPOSITION OF RACHEL GARLOCK,

produced as a witness at the instance of the

Defendants, and duly sworn, was taken in the

above-styled and numbered cause on January 7, 2011,

from 10:06 a.m. to 11:31 a.m., before Janalyn Reeves,

CSR in and for the State of Texas, reported by machine

shorthand, at the offices of ESQUIRE DEPOSITION

SERVICES, 3101 Bee Caves Road, Suite 220, Austin,

Texas, pursuant to the Federal Rules of Civil Procedure

and the provisions stated on the record or attached

hereto.

Rachel Garlock                                    January 7, 2011

2

A P P E A R A N C E S


FOR THE PLAINTIFF:
    Ms. Penny Hays Cauley (Via Telephone)
    HAYS CAULEY, PC
    549 West Evans Street, Suite E
    Florence, South Carolina  29501
    (843) 665-1717


FOR MIDLAND CREDIT MANAGEMENT:
    Mr. Eric B. Langley
    BALCH & BINGHAM, LLP
    1901 South Avenue North Suite 1500
    Birmingham, Alabama  35203
    (205) 226-8772


FOR DELL FINANCIAL SERVICES:
    Mr. D. Keith Andress
    LAW OFFICES OF BAKER DONELSON BEARMAN CALDWELL &
    BERKOWITZ, PC
    420 20th Street North, Suite 1600
    Birmingham, Alabama  35203
    (205) 250-8367


ALSO PRESENT:
    Naomi Aldape
    Norm Wiley - Videographer

Rachel Garlock                                    January 7, 2011

3

INDEX

Appearances.....................................    2

RACHEL GARLOCK

Examination by Mr. Langley......................    5
Examination by Ms. Cauley.......................   43
Further Examination by Mr. Langley..............   59

Witness' Signature Page.........................   63
Reporter's Certificate..........................   65

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| 1 | .......................................... Receipt | 8 |
| 2 | .......................................... Receipt | 8 |
| 3 | .......................................... Terms and Conditions | 9 |
| 4 | .......................................... Transaction Detail Report | 11 |
| 5 | .......................................... Transactions Processed on Account | 15 |
| 6 | .......................................... Information from System of Record | 17 |
| 7 | .......................................... Bank Statement | 28 |
| 8 | .......................................... Complaint Activity Report from Better Business Bureau | 35 |
| 9 | .......................................... Credit Bureau Dispute Form | 38 |

Rachel Garlock                                    January 7, 2011

4

THE REPORTER:  This is the court reporter.  Ms. Cauley, are you going to want a copy of the deposition?

MS. CAULEY:  Yes.

THE VIDEOGRAPHER:  This is the videotaped deposition of Rachel Garlock in the matter of Jamon Brim versus Dell Financial Services, being heard in the United States District Court, Northern District of Alabama, Case No. 5:10-CV-369-IPJ.

This deposition is being held at the office of Esquire Deposition Solutions on January 7, 2011.  The time is approximately 10:07 a.m.  My name is Norman Wiley.  I'm the videographer.  The court reporter is Janalyn Reeves.

Counsel, will you please introduce yourselves and affiliations and the witness will be sworn in.

MR. LANGLEY:  This is Eric Langley here for Midland Credit Management.

MR. ANDRESS:  Keith Andress here for Dell Financial Services.

MS. CAULEY:  I'm Penny Cauley, on behalf of Jamon Brim.

RACHEL GARLOCK, having being first duly sworn, testified as follows:

Rachel Garlock                                    January 7, 2011

5

                        EXAMINATION

BY MR. LANGLEY:

     Q.    Ms. Garlock, thank you for being here today.
My name is Eric Langley.  I am a lawyer that represents
Midland Credit Management in this lawsuit that we're
here about today.

     A.    Uh-huh.

     Q.    Do you understand that you're here today
pursuant to a deposition trial subpoena?

     A.    Yes, sir.

     Q.    Have you and I ever met before this morning
just a minute ago?

     A.    No, sir.

     Q.    And, Ms. Garlock, would you please tell the
jury your full name?

     A.    Rachel Renee Garlock.

     Q.    Ms. Garlock, by whom are you currently
employed?

     A.    Dell Financial Services.

     Q.    What is Dell Financial Services?

     A.    Dell Financial Services is the finance company
for Dell, Inc., which is Dell Computers.  We finance
any of the -- the products that Dell, Inc. sales.

     Q.    Ms. Garlock, right before the deposition your
counsel had provided me with some documents.  Are those

Rachel Garlock                                    January 7, 2011

6

documents that are from your file at Dell Financial

Services?

    A.    Yes, sir.

    Q.    Are you familiar with those documents?

    A.    Yes, sir.

    Q.    Are you also familiar with document produced

by Dell earlier in this lawsuit that bear what we call

Bates labels?

    A.    I'm not sure exactly which ones are labeled

that, but I have seen what was submitted.

    Q.    At some point during my questions if I show

you some documents that have a Bates label on them and

you're confused about what they mean, just let me know

and we can work through and make sure that you're

looking at a document that you understand and that

you're comfortable with.

    A.    Okay.

    Q.    Is that fair?

    A.    Yes, sir.

    Q.    Ms. Garlock, are you familiar with a Dell

Financial Services account held by the plaintiff in

this case, Mr. Jamon Brim?

    A.    Yes, sir.

    Q.    And how did you first come to be familiar with

that account?

Rachel Garlock                                          January 7, 2011

7

A.    I guess it was mid -- mid last year when the counsel brought the account over to my team to be researched for the payment.

Q.    Ms. Garlock, what is your position with Dell Financial Services?

A.    Accounts receivable manager.

Q.    And as accounts receivable manager, what are your job responsibilities?

A.    I currently manage payment research for Dell Financial Services, as well as refund requests.  I also manage our -- some of our payment vendors.  We have a lockbox vendor that I manage, as well as we have an offshore site that I manage that also handles various different payment postings.

Q.    Are you familiar with Dell Financial Services' relationships with various debt buyers?

A.    A little bit.  I mean, I wouldn't say I'm an expert at it or anything, but I've had -- have had some situations with it, I guess.

Q.    Are you familiar with Midland Funding, LLC?

A.    I've heard of Midland Funding.

Q.    Are you aware that Midland Funding, LLC is the entity that actually purchased a debt from Dell Financial Services in the name of Mr. Brim?

A.    Yes, sir.

Rachel Garlock                                    January 7, 2011

8

Q.    Ms. Garlock, when did Mr. Brim open an account with Dell Financial Services?

A.    September of 2004.

Q.    Why did Mr. Brim open an account based on your knowledge and understanding of the documents?

A.    I show that he purchased a computer system as well as a surge protector.  Those were the two purchases that he had made in September of '04.

(Exhibit Nos. 1 and 2 marked)

Q.    (BY MR. LANGLEY)  Ms. Garlock, I'm showing you what I've marked as Exhibits 1 and 2.

A.    Okay.

Q.    Can you identify those documents?

A.    Yes.  This is the Dell receipt that goes along with any of the purchases, and it just describes the purchases that were made by the customer.

Q.    Are the purchases reflected on Exhibits 1 and 2 the purchases that were made on Mr. Brim's account with Dell Financial Services?

A.    Yes, sir.

Q.    To your knowledge, are these the only purchases made on that account?

A.    Yes, sir.

Q.    Ms. Garlock, when a customer opens an account with Dell Financial Services, do they execute some sort

Rachel Garlock                                    January 7, 2011

9

of agreement that governs the terms of that account?

A.    Yes.  It is considered a revolving account, which is similar to a credit card.  So the customer does have Ts and Cs, which is terms and conditions, that are provided to them when the account is opened.

(Exhibit No. 3 marked)

Q.    (BY MR. LANGLEY)  Let me show you what I've marked as Exhibit 3.

A.    Uh-huh.

MS. CAULEY:  Eric, can you give us Bates -- can you give me Bates numbers?

MR. LANGLEY:  Yes.  I'm sorry, Penny. The Bates numbers to Exhibit 1 were Dell -- this is from the Dell production.  And all of them will be from the Dell production unless otherwise stated -- Document 65 through 67.  Exhibit 2 was Document 68.

MS. CAULEY:  Thank you.

MR. LANGLEY:  And Exhibit 3 is Bates range 71 through 72.

Q.    (BY MR. LANGLEY)  Ms. Garlock, what is Exhibit 3?

A.    The terms and conditions of the account that was opened.

Q.    Are these the terms and conditions that governed Mr. Brim's account with Dell Financial

Rachel Garlock                                           January 7, 2011

Services?

    A.   Yes.

    Q.   Is this the entirety of the terms and conditions that governed Mr. Brim's account with Dell Financial Services?

    A.   Yes.

    Q.   Did Mr. Brim ever pay the amounts charged to his account with Dell Financial Services?

    A.   Yes.

    Q.   When were those paid?

    A.   According to the bank statement, it was paid on November 6th of 2004.

    Q.   Was Dell Financial Services aware that the payment had been made on November 6, 2004?

    A.   No.

    Q.   When did Dell become aware that Mr. Brim had paid his account on November 6, 2004?

    A.   The bank statement was provided by Mr. Brim. I apologize. I don't have the notes right in front of me, but I believe it was in May or June of 2005 is when the bank statement was provided that showed the payment on the account. But, unfortunately, the bank statement only showed a payment was made to Dell Financial Services. So we weren't able to locate that -- that payment without additional information to show exactly

Rachel Garlock                                    January 7, 2011

11

how that payment was made to Dell Financial Services.

Q.    Was the bank statement itself insufficient to allow Dell Financial Services to track Mr. Brim's payment?

A.    Yes.

Q.    Was Mr. Brim advised of this fact?

A.    Yes.

Q.    How did Dell Financial Services ultimately determine what happened with Mr. Brim's payment?

A.    In August of 2010 our counsel provided the transaction detail report.  That was provided to them from Mr. Brim's counsel.  And on that transaction detail report we were able to confirm where that payment was posted based on the account number that was provided on the transaction detail report.

                    (Exhibit No. 4 marked)

Q.    (BY MR. LANGLEY)  I'm showing you what I've marked as Exhibit 4.  Is Exhibit 4 the transaction detail report that you were just referencing?

A.    Yes, sir.

Q.    What is it about this transaction detail report that allowed Dell Financial Services to determine what happened with Mr. Brim's payment?

A.    The account number that is listed right under Mr. Brim's name.  That is the -- our Dell Financial

Rachel Garlock                                    January 7, 2011

12

Services account number minus the first four digits because our account numbers are 19 digits long.

Q.   Mr. Garlock, are you talking about the second page of Exhibit 4?

A.   Yes.  Yes.  Second page right under Mr. Brim's name there's an account number that starts in 4501.  So based on that information, we were able to look up that account, because that is one of our account numbers, and we were able to locate that payment posted to that account.

Q.   And what happened with that particular payment?

A.   It was posted to another customer's account.

Q.   Do you know how that occurred?

A.   No, I do not.

Q.   Is that a transaction that Dell Financial Services itself handles or does Dell Financial Services use an outside vendor for that?

A.   I do not show exactly how that payment -- you know, what agency that payment was made with.  We do have an outside agency that does -- that at the time was taking our pay-by-phone payments.

Q.   If Dell Financial Services had this information in Exhibit 4 in 2004 and 2005, would it have been able to trace Mr. Brim's payment?

Rachel Garlock                                    January 7, 2011

13

A.   Yes, sir.

Q.   Is the information in Exhibit 4 the information that Dell Financial Services asked Mr. Brim to provide in 2005?

A.   Yes.  It's -- it is a transaction detail report.

MS. CAULEY:  Objection, states facts not in evidence.

THE REPORTER:  Pardon?

MS. CAULEY:  I object to that question. It states facts not in evidence.

Q.   (BY MR. LANGLEY)  Ms. Garlock, earlier you had mentioned that at some point Dell Financial Services advised Mr. Brim that he needed to provide a transactional detail report, correct?

A.   Yes, sir, uh-huh.

Q.   And I think you told me just a minute ago that Exhibit 4 is the transactional detail report that you were referring to?

A.   Yes, sir.

Q.   So had Mr. Brim provided the information in Exhibit 4 in 2005 when Dell Financial Services requested it, would it have been able to trace Mr. Brim's payment?

A.   Yes, sir.

Rachel Garlock                                    January 7, 2011

14

Q.   What was the timeframe that Dell Financial Services received the transactional detail report marked as Exhibit 4?

A.   We received it in August of 2010.

Q.   After receiving the transactional detail report, how long did it take Dell Financial Services to research this payment and determine what had occurred?

A.   It was less than one day.

Q.   Was August 2010 the first occasion that Dell Financial Services was able to determine what happened with Mr. Brim's account?

A.   Yes, sir.

Q.   So if someone had inquired about the status of Mr. Brim's account prior to August of 2010, what would Dell Financial Services' response have been?

A.   That the customer still had a balance on the account and it was still owed.

        MS. CAULEY:  I'm sorry.  I need the witness to speak up or move the microphone closer -- or phone closer to her.  Thank you.

        MR. ANDRESS:  How is that?

        THE WITNESS:  Is that better?

        MS. CAULEY:  That's much better.

        THE WITNESS:  Okay.  Thank you.

Q.   (BY MR. LANGLEY)  Ms. Garlock, are you

Rachel Garlock                                    January 7, 2011

15

familiar with the term "charge-off"?

     A.    Yes, sir.

     Q.    What is a charge-off?

     A.    A charge-off means that the customer has gone more than 180 days past due.

     Q.    At some point did Dell Financial Services charge off Mr. Brim's account?

     A.    Yes.

     Q.    Do you know when that occurred?

     A.    It occurred in May of 2005.  I don't know the exact date offhand.

     Q.    At the time of the charge-off what did Dell Financial Services show as Mr. Brim's balance?

     A.    I don't -- I don't have that exactly with me. I know it was $1,300 and change, I believe.  Sorry. I -- I don't know offhand.

     Q.    No, that's okay.

                    (Exhibit No. 5 marked)

     Q.    (BY MR. LANGLEY)  Ms. Garlock, I'm showing you what I've marked as Exhibit 5.

     A.    Uh-huh.

     Q.    Can you identify this document?

              MR. LANGLEY:  And, Penny, this is Document 102.

              THE WITNESS:  Yes.  This is -- actually

Rachel Garlock                                    January 7, 2011

16

shows all the transactions processed on Mr. Brim's account.

Q.    (BY MR. LANGLEY)  Is there anything on Exhibit 5 that allows you to state with specificity the balance as reflected in Dell Financial Services' records at the time it charged off Mr. Brim's account?

A.    Yes.  That would be the total, which is $1,381.01.

Q.    Ms. Garlock, at some point I think you said earlier this particular account was sold to Midland. Is that accurate?

A.    Yes, it was sold.

Q.    Do you know what amount of the account was sold to Midland?

A.    No, I do not.

Q.    Would it have been anything less than the total amount at the time of the charge-off?

A.    I do not know the answer to that question.  I apologize.

Q.    Do you know if there are any Dell Financial Services' records that have been produced that would allow you to answer that question?

A.    No.

Q.    You also mentioned earlier that in August of 2010, Dell Financial Services was able to determine

Rachel Garlock                                    January 7, 2011

17

that Mr. Brim's payment in November 2004 had been misapplied to another customer's account.  What was the name of that customer, if you know?

A.   Hilda Cervantes.

Q.   Where does Ms. Cervantes live?

A.   Los Angeles, California.

Q.   And so is it fair to say that Ms. Cervantes just got a $950 credit on her account?

A.   Correct, yes.  We do not show that we were notified.

Q.   So out of the blue she gets a $950 credit?

A.   Correct.

Q.   Did she ever call Dell Financial Services and tell you this was a mistake?

A.   No, sir.

Q.   If she had, would your notes in your account reflect that?

A.   Yes, sir.

(Exhibit No. 6 marked)

Q.   (BY MR. LANGLEY)  I'm showing you what has been marked as Exhibit 6, which bears the Bates numbers 80 through 101.

Ms. Garlock, can you identify this document?

A.   These is -- is the notes and the information

Rachel Garlock                                          January 7, 2011

18

from our system of record.  This is where the customers -- where we house our customers' accounts.

Q.   Does this system have a name that's used within Dell Financial Services?

A.   Yes.  It's called Fiserv.

THE REPORTER:  Called what?

THE WITNESS:  Fiserv.  F -- do you want -- do you need me to spell it?

MR. ANDRESS:  Yes.

THE WITNESS:  Okay.  F-i-s-e-r-v.

THE REPORTER:  Thank you.

THE WITNESS:  Uh-huh.

Q.   (BY MR. LANGLEY)  What is the purpose of the Fiserv system?

A.   Fiserv houses all of the customer information; customer's name, address, their transactions, payments. Basically it's -- it's our system of record.

Q.   Are the documents -- are the pages within Exhibit 6 records that are prepared and maintained in Dell Financial Services' regular course of business?

A.   Yes, sir.

Q.   Are the entries in these records made contemporaneous with the events described?

A.   Can you rephrase that?  I'm sorry.

Q.   For example, in some of the pages there are

Rachel Garlock                                  January 7, 2011

19

notes regarding conversations with Mr. Brim.

A.   Correct.

Q.   You're familiar with those?

A.   Yes, uh-huh.

Q.   When a Dell Financial Services' representative is having a conversation with a customer, are the notes input into the system contemporaneous with that conversation?

A.   They are manually put into the system by the -- by the agent.

Q.   At or near the time of the conversation?

A.   Correct, yes.

Q.   So, in other words, there's not a time lag between when the notes -- between when the conversation is had and when the notes are entered?

A.   There should not be.  But, like I said, it's manually entered by the agent.

Q.   Once notes are entered on the system can they be modified?

A.   No.

Q.   I want to ask you a few questions about some of the specific items on Exhibit 6.

A.   Okay.

Q.   I note that at the top left of each page there's some information typewritten?

Rachel Garlock                                      January 7, 2011

20

A.    Yes, sir.

Q.    Is that information that is part of the system or are those just notes provided to help the reader of this document understand?

A.    Yes, they were just notes provided to assist.

Q.    So the notes on the top left are not part of the Fiserv system?

A.    Correct.

Q.    Within what appears to be the screen shot on each page at the upper right-hand corner there is a date of 4/9/2010.  Do you see that?

A.    Yes, sir.

Q.    Is that the date on which this particular screen shot was printed?

A.    Correct.

Q.    On the first page of Exhibit 6, on the left-hand side, it lists an account number, and then beneath it it has the name "Jamon Brim"?

A.    Yes, sir.

Q.    Is Exhibit 6 and the screen shots contained therein the entirety of Dell Financial Services' Fiserv system as it relates to Mr. Brim's account?

A.    It's certain screens within the system.  It's not -- it's every screen that we have in the system.

Q.    What type of screens are not included in the

Rachel Garlock                                    January 7, 2011

21

pages marked collectively as Exhibit 6, if you know?

    A.    I mean, like I said, we do have multiple screens.  You know, we don't have the statement screens listed in here.

    Q.    What is a statement screen?

    A.    The statement screen will show the agent what information was listed on the statement.  So it will slow the payment due date, any transactions.  And it -- and it goes by date of the statement.

    Q.    If you need a minute to flip through to answer this question, that's perfectly fine.  Based on your knowledge of -- of this account and your knowledge of the Fiserv system and -- and the document in front of you, are there any screens missing that would reflect any communications with Mr. Brim?

    A.    No.  I mean, the -- the notes are all in order.

    Q.    So if there was a communication between Dell Financial Services and Mr. Brim it would be reflected in Exhibit 6?

    A.    Yes.

    Q.    Ms. Garlock, if you would turn to Page 4 of Exhibit 6.  In the middle of the screen shot there are the capital letters "OPNED."

    A.    Uh-huh.

Rachel Garlock                                    January 7, 2011

22

Q.    What does that mean?

A.    That's when the account was opened.

Q.    And are the numbers next to that entry September 14th, 2004?

A.    Yes, sir.

Q.    And is that the date that Mr. Brim's account was opened?

A.    Yes, sir.

Q.    Do you know if that was also the date that Mr. Brim made a purchase of Dell products?

A.    The purchase date -- yes.  According to Exhibit 1, the order date was September 14th.

Q.    Turn to Page 5 of Exhibit 6.  On the left-hand side it says "CURR BAL."  Does that stand for current balance?

A.    Yes, sir.

Q.    And next to it it says, "$1381.01"?

A.    Yes, sir.

Q.    Do you see that?  What does that current balance reflect?

A.    That would be at the time of charge-off.  If there was no other adjustments done, that's -- that's the current balance?

Q.    Is there anything on the first five pages of Exhibit 6 that allows you to identify with specificity

Rachel Garlock                                          January 7, 2011

23

the date that Dell Financial Services charged off

Mr. Brim's account?  Strike that.  I'm going to ask you

an easier question.

A.    Okay.

Q.    Looking at Page 6 --

A.    Yes.

Q.    -- of Exhibit 6, is there anything on that

page that allows you to state with specificity the date

that Dell Financial Services charged off Mr. Brim's

account?

A.    Yes.

Q.    And what was that date?

A.    On May 16, 2005.

Q.    And how do you know that based on Page 6?

A.    This "CHG OFF" means charge-off, and that is

the charge-off date.

Q.    And this is in the lower left quadrant of the

screen shot on Page 6?

A.    Yes, sir.

Q.    Turning to Page 7 of Exhibit 6, in the top

center of the screen shot it says, "Payment History."

A.    Correct.

Q.    What is this screen or this part of the Fiserv

system designed to track?

A.    It holds the last six payments the customer

Rachel Garlock                                    January 7, 2011

24

has -- has made.

Q.    And so if any payments have been made by Mr. Brim as of the date the screen was printed, would they be reflected on Page 7?

A.    Yes, the last six payments.

Q.    And so is it fair to say that according to Dell Financial Services' records, on April 9th, 2010, when this screen shot was printed, no payments had been made on the account?

A.    That is correct.

Q.    Would you turn to Page 8, please?  In the top left corner of the screen shot there is a term spelled "ASHI"?

A.    Yes, sir.

Q.    What is that?

A.    The -- ASHI is our note screen.

Q.    Will all of the page that contain notes regarding Mr. Brim's account have that designation in the top left corner?

A.    Yes, sir.

Q.    And on the very top left corner of each page -- we discussed these earlier, these -- these notes about how to read the account notes.  And one of them says, "Call notes to be read by date from bottom to top"; is that accurate?

Rachel Garlock                                          January 7, 2011

25

A.    Correct, yes, sir.

Q.    So if we wanted to work through this chronologically we would start at the bottom of each page --

A.    Yes, sir.

Q.    -- And work towards the top?

A.    Yes, sir.

Q.    If you will, look at the first note on that page.  Can you tell me when that note was entered?

A.    October 20th, 2004.

Q.    And immediately next to that 10/20/2004 date, there is a "13:13."  What is that?

A.    That is a timestamp in military time.

Q.    And will those -- will the date and the time reflect the time that the entry -- the date and time the entry was actually made?

A.    Correct.

Q.    And is that true for each of the entries that are contained in the notes within Exhibit 6?

A.    Yes, sir.

Q.    Within that first note there is a term CCI. Do you see that?

A.    Yes, sir.

Q.    What does that stand for?

A.    "Customer called in."

Rachel Garlock                                          January 7, 2011

26

Q.    And if the term "CCI" is used elsewhere in the notes, does it mean the same thing?

A.    Yes, sir.

Q.    Does CCI ever mean anything other than "customer called in"?

A.    Not that I know of.

Q.    Ms. Garlock, on Page 9 of Exhibit 6, under the entry at the top of the page that bears a date of December 2nd, 2004 with the time 15:56 --

A.    Yes, sir.

Q.    -- and the bottom line -- well, let me -- let me back up.

Can you read for me in -- in layman's English what that entry says?

A.    Okay.  "Conferenced the call with phone pay escalations as per their advice gave ING number," and then there's the phone number.

Q.    What is ING number?

A.    ING is short for iEnergizer.

Q.    What does that mean?

A.    It is one be of our third-party vendors.

Q.    Does this mean that Mr. Brim was given the number to a third-party vendor on December 2nd, 2004?

A.    It doesn't actually -- I -- I do not know.  It shows it conferenced the call and has the phone number,

so I do not -- I do not know if that was given to him
or not.

Q.    If you would, turn to Page 10 of Exhibit 6.
Could you read the entry that bears a date of
January 13, 2005, time 12:50?

A.    Okay.  From the bottom up?

Q.    Please.

A.    "Customer called in and says that he paid off
the account in full for $962.92 with the first
statement due date and says why he has a balance.  Told
to fax a bank statement for the payment research and
gave the fax number."  And then a name of Kevin.

Q.    Based on Dell Financial Services' records,
when did it first receive a bank statement, if ever,
from Mr. Brim?

A.    Can I go through the notes?

Q.    Yes.

A.    So when -- when we first got it -- I'm sorry.
I'm sorry.  Can you repeat the question?

Q.    Do Dell Financial Services' notes reflect
when, if ever, it received a bank statement from
Mr. Brim?

A.    Yes.

Q.    When was that?

A.    On January 27th it shows a copy of the bank

statement was forwarded.

(Exhibit No. 7 marked)

Q.    (BY MR. LANGLEY)   Let me show you what I've marked as Exhibit 7.

MR. LANGLEY:   Penny, this does not have a Bates number, but this is the version of the Redstone Federal Credit Union bank statement that was received pursuant to the subpoena.

MS. CAULEY:   Okay.

Q.    (BY MR. LANGLEY)   Ms. Garlock, have you seen Exhibit 7 before?

A.    Yes, sir.

Q.    What is it?

A.    It is a copy of the customer's bank statement.

Q.    Is this similar to what Dell Financial Services received from Mr. Brim on January 27, 2005?

A.    Yes, sir.

Q.    Was the bank statement marked as Exhibit 7 sufficient for Dell to determine what happened with Mr. Brim's payment?

A.    No, sir.

Q.    Does Dell Financial Services accept a bank statement alone as proof of payment?

A.    We can, yes.

Q.    In this situation, though, did Dell Financial

Rachel Garlock                                    January 7, 2011

29

Services accept the bank statement as sufficient proof of payment?

A.   No, sir.

Q.   And why is that?

A.   There wasn't enough information to identify exactly how the payment was made.

Q.   Looking at the bottom of the first page of Exhibit 7 there's an entry on November 8th.

A.   Yes, sir.

Q.   Next to it, it says "Dell Financial Payment." The amount is $954.12.  Do you see that?

A.   Yes, sir.

Q.   Next to the entry that says "Dell Financial" there are some numbers, "04116"?

A.   Yes, sir.

Q.   Do you know what those numbers are?

A.   It's the date of the payment.  So it would be November 6, 2004.

Q.   So those numbers do not in any way identify the payment?

A.   Correct.

Q.   Going back to Page 10 of Exhibit 6, there's an entry at the top of the screen shot for January 19th, 2005.  Do you see that?

A.   Yes, sir.

Rachel Garlock                                      January 7, 2011

30

Q.    Would you read that entry?

A.    "Customer called in very upset why his payment not posted.  That's why he is in collections already. NASHI, same case, has happened to previous rep.  Wants to talk to Dell manager not to sup.  He wants American."

Q.    Is "sup" an abbreviations for supervisor?

A.    Yes, sir.

Q.    And when it says, "NASHI, same case has happened to previous rep," is that just a reference to the fact that the notes say that a similar call already had been placed?

A.    Yes, sir.

Q.    Going back to the bottom of the screen shot on Page 10 of Exhibit 6, is that the first occasion that Dell Financial Services asked Mr. Brim to send information?

A.    According to the notes, yes.

Q.    But as of January 19th, 2005, when Mr. Brim called back in, had Dell Financial Services received the information it requested?

A.    It does not show, no.

Q.    Turn to Page 12 of Exhibit 6.  At the bottom of the screen shot there's an entry on January 25th, 2005.  Would you read that entry, please?

Rachel Garlock                                    January 7, 2011

31

A.   "Customer called in asking if auto pay is activated already or if we received the fax.  Rep said no.  Transferred to DCC to verify."

Q.   What is auto pay?

A.   Auto pay is when the customer sets it up for -- for Dell Financial Services to take the payment out every month on their due date.

Q.   Based on the records that you have reviewed, why would Mr. Brim have asked about auto pay if he was contending that the payment already had been made in full?

A.   I -- I do not know.

MS. CAULEY:  Object, calls for speculation.

Q.   (BY MR. LANGLEY)  What does DCC mean in that entry?

A.   I -- I do not know.

Q.   Turn to Page 16 of Exhibit 6.  There's an entry at the top of the screen shot for May 23rd of 2005 at 16:28.

A.   Uh-huh, yes, sir.

Q.   Would you read that entry, please?

A.   "Customer called in regarding payment not posted on the account for the amount of $954.12. Balance on November 8, 2004, Check No. 041106, Redstone

Rachel Garlock                                    January 7, 2011

32

Federal Credit Union."  And "Jojo."

Q.    Is the information entered here about the balance, the check number, and the credit union information provided by the customer?

A.    It -- it does not say.  I do not know.

Q.    Would it -- could it have come from someplace else?

A.    Sure.  Yes.

Q.    Turn to Page 17 of Exhibit 6.  Based on the entries on the screen shot on Page 17 of Exhibit 6, can you tell whether or not Mr. Brim sent his bank statement to Dell Financial Services again?

A.    Yes.

Q.    And did he send his bank statement again?

A.    Yes.

Q.    And on what date was that?

A.    September 8, 2005.

Q.    The note in the center of the page bearing a time of 11:47 --

A.    Uh-huh.

Q.    -- what does that entry say?

A.    "Customer faxed bank statement, forward to Diana Stearns to put a rush on research.  Will call customer back," and then a phone number.

Q.    And so had Mr. Brim faxed his bank statement

Rachel Garlock                                    January 7, 2011

33

again shortly before or contemporaneous with that entry?

A.    Yes.

Q.    And then what does the next entry state?

A.    "Called customer.  He will go to his bank during lunch to get transaction detail report from his bank."

Q.    Who made that entry?

A.    That was one of our recovery agents.

Q.    And do you know that based on the initials that are immediately to the -- to the left of the date?

A.    Correct.  Correct.

Q.    And the two entries we just discussed appear to have been made by someone with the initials AJT?

A.    Correct.

Q.    Do you know who that?

A.    Yes, I do.

Q.    Who is that?

A.    Angela Tennent.

Q.    Who is Diana Stearns, if you know?

A.    She was working in the cash department at the time.

Q.    So on September 8, 2005, shortly after Mr. Brim had just sent a second copy of his bank statement, Dell Financial Services asked for a

Rachel Garlock                                        January 7, 2011

34

transactional detailed report, correct?

A.    Correct.

Q.    Did Mr. Brim ever provide that transactional detail report?

A.    No, sir.

Q.    Is "transactional detail report" a term of art in your industry?

A.    I'm not sure "art."  Can you define that?

Q.    Let me ask a better question.

A.    Okay.

Q.    What is a transactional detail report?

A.    A transaction detail report is details of payment made by the bank.  So it will show exactly how that payment was made; either electronic, wire, check, and will also show the -- the additional information, if it was electronic or wire, what banking account information it was sent to; if it was check, have the check number.  Will also show where -- where the payment was made to.  It will show -- also have additional information such as the account number, a name, and/or a social security number with it.

Q.    Earlier we had looked at Exhibit 4.  Do you still have that in front of you?

A.    Yes.  It's right here.

Q.    And you had identified that as a transactional

Rachel Garlock                                    January 7, 2011

35

detail report, correct?

A.    Yes, sir.

Q.    Is it uncommon for Dell Financial Services to ask a customer to provide a transactional detail report?

A.    No, sir.

Q.    This sort of thing happens regularly at Dell Financial Services?

A.    Yes, sir.

Q.    And are banks usually willing to comply with that?

A.    Yes, sir.

Q.    Does Dell Financial Services ever contact the banks directly to request these type of documents?

A.    No, sir.

Q.    Turn to Page 18 of Exhibit 6.  On 10/21/05 at 14:33 there's an entry in the center of the page.

A.    Yes, sir.

Q.    Can you read that entry?

A.    "BBB advised to keep working with Angela and advised she needs the transaction detail from his bank."

Q.    What is BBB?

A.    Better Business Bureau.

                    (Exhibit No. 8 marked)

Rachel Garlock                                    January 7, 2011

36

Q.   (BY MR. LANGLEY)  Let me show you what's been marked as Exhibit 8 --

A.   Yes, sir.

Q.   -- which bears a Bates label --

MR. LANGLEY:  And, Penny, this is a plaintiffs' Bates label of 0004.

Q.   (BY MR. LANGLEY)  Ms. Garlock, what is Exhibit 8?

A.   It is the complaint activity report from the Better Business Bureau.

Q.   Is this something that you have seen before?

A.   Not before two days ago.

Q.   Within the entries on Exhibit 8 there is someone identified from Dell Financial Services as Esperanza Clouston?

A.   Yes, sir.

Q.   Do you know Esperanza Clouston?

A.   Yes, sir.

Q.   Is Esperanza Clouston the person at Dell Financial Services who's charged with communicating with the Better Business Bureau?

A.   At the time, yes.  I'm not -- I apologize. I'm not sure what she does now.

Q.   Are the entries that purport to have come from Esperanza Clouston on behalf of Dell Financial Services

Rachel Garlock                                    January 7, 2011

37

accurate -- complete and accurate to the best of your
knowledge?

A.    Yes, sir.

MS. CAULEY:  Object to form and to the
witness' knowledge.  She said she had not seen this
before two days ago.  And she's not personally
responsible for the information contained in Exhibit 8.

Q.    (BY MR. LANGLEY)  Ms. Garlock, you're here
today on behalf of Dell Financial Services, correct?

A.    Yes, sir.

Q.    And you've reviewed the document marked as
Exhibit 8 prior to this deposition?

A.    Prior to today.

Q.    Prior to today?

A.    Two -- two days ago, yes.

Q.    And you've had an opportunity to determine
whether the documents and the communications are what
they purport to be?

A.    Can you rephrase that?  I'm sorry.

Q.    Do you have any reason to doubt that the
entries that purport to have been made by Dell
Financial Services on the document marked as Exhibit 8
are not, in fact, complete and accurate entries of what
Dell told the Better Business Bureau?

A.    No.

Rachel Garlock                                    January 7, 2011

38

Q.    Staying with Page 18 of Exhibit 6, the entry above the one we just discussed --

A.    Uh-huh.

Q.    -- as dated November 8, 2005, what is that entry?

A.    "Received credit dispute from Equifax," and it gives a control number.  "Customer disputes amount.  I verified info.  Advised the account charged off with $1,381 balance.  Advised the account was closed at credit grantor's request."

(Exhibit No. 9 marked)

Q.    (BY MR. LANGLEY)  I'm showing you what I've marked as Exhibit 9 --

A.    Uh-huh.

Q.    -- which is a four-page document that includes Dell Bates labels 42, 41, 39, and 40.

Ms. Garlock, can you identify this document?

A.    I'm -- I'm not very familiar.  I -- credit bureau disputes is not my field of work.

Q.    Do you know what this document is?

A.    I -- I know what it is, yes.

Q.    What -- what is it?

A.    Credit bureau dispute form.

Q.    Do you know what the purpose of these forms

Rachel Garlock                                          January 7, 2011

39

is?

A.    Just from personal experience, it's a dispute that you do with the credit bureau.

Q.    Do you have anything do at all with responding to credit bureaus upon receipt of --

A.    No, sir.

Q.    -- disputes?

A.    No, sir.

Q.    Turn to Page 19 of Exhibit 6.  At the bottom of the page there is an entry on 11/8/2005.

A.    Yes, sir.

Q.    What is that entry?

A.    "Gave collections VAK phone as further contact."

Q.    What is VAK?

A.    It's one of our collection agencies.

Q.    Turn to Page 21 of Exhibit 6.  How many separate entries are there on Page 21 of Exhibit 6?

A.    There's three separate entries.

Q.    Does that mean there are three separate calls?

A.    No.  No, sir.

Q.    How many different calls does -- strike that.

How many different calls are reflected on Page 21 of Exhibit 6?

A.    Two.

Rachel Garlock                                      January 7, 2011

40

Q.    And which is the first one?

A.    October 9th of 2006.

Q.    At what time?

A.    15:45.

Q.    And what is the entry?

A.    "Customer called in to know about the collection's phone number.  Gave the number and asked the customer to contact them.  Paul."

Q.    Okay.  And what's the second entry?

A.    For the customer call in?

Q.    Yes.

A.    Okay.  "Customer called in.  Wanted to inquire about the account and informed Tim that he has to get in touch with the ARS department and he disconnected the call.  Don."

Q.    What is the ARS department?

A.    I believe it's the collection agency.

Q.    What does it mean to "disconnect the call"?

A.    The customer hung up.

Q.    Based on Dell Financial Services' records, is that the last direct communication that it had with Mr. Brim?

A.    Yes, sir.

Q.    At the time of that last communication with Mr. Brim on October 9th, 2006, had Mr. Brim provided

Rachel Garlock                                    January 7, 2011

41

the transactional detail report requested by Dell

Financial Services?

     A.   No, sir.

          MR. LANGLEY:  Do y'all want to take a

short break, maybe two or three minutes?

          MR. ANDRESS:  Sure.

          MR. LANGLEY:  Okay.

          Penny, are you okay with that.

          MS. CAULEY:  That's fine.

          THE VIDEOGRAPHER:  We are off the record

at 10:55.

          (Recess from 10:55 a.m. to 11:05 a.m.)

          THE VIDEOGRAPHER:  We are on the record

at 11:05.

     Q.   (BY MR. LANGLEY)  Ms. Garlock, how did

Mr. Brim make his payment in November of 2004?

     A.   It was made over the phone.

     Q.   Can you explain that?

     A.   Customer calls in and the -- the checking

account information is taken, so the customer advices

how much he wants to pay and then we take their bank

account routing number and checking account number.

     Q.   Under the terms of the Dell Financial Services

credit agreement, is there any advantage to paying it

that way?

Rachel Garlock                                          January 7, 2011

42

A.    It's -- it will get credited -- the receive date will be for that day.

Q.    At the time Dell Financial Services sold Mr. Brim's account to Midland, did Dell Financial Services believe the account was valid and payable?

A.    No.

Q.    At the time of the sale -- at the time -- let me ask the question again.

A.    Okay.  Yeah.  Sorry.

Q.    At the time Dell Financial Services sold Mr. Brim's account to Midland --

A.    Uh-huh.

Q.    -- did Dell Financial Services believe the account was due and payable?

A.    Yes.  Sorry.

Q.    And -- and did Dell Financial Services, in fact, believe the account was due and payable until August of 2010?

A.    Yes, sir.

Q.    And so if Midland had contacted Dell in August of 2008 and inquired about the account, what would Dell Financial Services' response have been?

            MS. CAULEY:  Object, calls for speculation.

Q.    (BY MR. LANGLEY)  You can go ahead and answer.

Rachel Garlock                                    January 7, 2011

43

     A.    Okay.   That -- that there was still a balance
on the account and we still had not received proof of
payment for this account.

     Q.    And would your answer be the same if Midland
called in in March of 2009?

     A.    Yes.

     Q.    And would your answer be the same if Midland
had contacted Dell in February of 2010?

     A.    Yes.

               MR. LANGLEY:  I would like to offer
Exhibits 1 through 9, and I have no further questions
at this time.

               Thank you very much.

               THE WITNESS:  Okay.  Thank you.

                         EXAMINATION

BY MS. CAULEY:




                         REDACTED

Rachel Garlock                                          January 7, 2011

44

REDACTED

Rachel Garlock                                    January 7, 2011

45

REDACTED

Rachel Garlock                                            January 7, 2011

46

REDACTED

REDACTED

Rachel Garlock                                          January 7, 2011

48

REDACTED

Rachel Garlock                                    January 7, 2011

49

REDACTED

Rachel Garlock                                    January 7, 2011

50

REDACTED

Rachel Garlock                                    January 7, 2011

51

REDACTED

Rachel Garlock                                          January 7, 2011

52

REDACTED

Rachel Garlock                                        January 7, 2011

53

REDACTED

Rachel Garlock                                           January 7, 2011

54

REDACTED

Rachel Garlock    January 7, 2011

55

REDACTED

Case 5:10-cv-00369-IPJ    Document 103-1    Filed 06/01/11    Page 55 of 82

Rachel Garlock                                    January 7, 2011

56

REDACTED

Rachel Garlock                                    January 7, 2011

57

REDACTED

Rachel Garlock                                                    January 7, 2011

58

REDACTED

Rachel Garlock                                    January 7, 2011

59

REDACTED

FURTHER EXAMINATION

BY MR. LANGLEY:

Q.   Ms. Garlock, Ms. Cauley had asked you some questions about an entry at the bottom of Page 19 of Exhibit 6.

A.   Yes, sir.

Q.   And the entry appears to have been made by

Rachel Garlock                                    January 7, 2011

60

someone whose employee code is LW1.

    A.    Okay.  Yes, sir.

    Q.    If you'll look at the preceding page, which is Page 18 of Exhibit 6 --

    A.    Uh-huh.

    Q.    -- is that the same person who made the entry at the top of the screen shot on Page 18?

    A.    Yes, it is.  And the same time, it looks like.

    Q.    And based on that information, do you think that the entry at the bottom of Page 19 that Ms. Cauley asked you about is just a continuation of the entry at the top of Page 18?

    A.    Yes.  Based on the initials, the date, and the time, yes, that would be a continued note.

    Q.    Ms. Garlock, sometimes a bank statement alone is sufficient for Dell Financial Services to track a payment, correct?

    A.    Yes, that's correct.

    Q.    In the instance that we're here about today, though, it was not?

    A.    Correct.

    Q.    Ms. Cauley asked you some questions about when the payment was received?

    A.    Yes.

    Q.    Take a look at Exhibit 7, which is the bank

Rachel Garlock                                           January 7, 2011

61

statement from Redstone Federal Credit Union.

A.    Yes, sir, uh-huh.

Q.    Is there anything on that bank statement that proved to Dell Financial Services that it had, in fact, received the money paid by Mr. Brim?

A.    I mean, it shows that it -- it has our name. But even with our name, especially with on-line payments, stuff like that, anybody could have entered that.  So at this time when we -- of the date of the bank statement, I would say, no, it -- it still doesn't show proof that we actually got the payment.  It shows proof that a payment is showing to be sent to Dell Financial Services.

Q.    Was the first proof that Dell Financial Services had that the payment was actually received by Dell the transactional detail report marked as Exhibit 4?

A.    Uh-huh.  Yes, this was the first proof that we actually showed that -- that we were actually able to locate that the payment was indeed at Dell Financial Services --

Q.    If you would, look at --

A.    -- for that date.

Q.    Oh, I'm sorry.

A.    That's okay.

Rachel Garlock                                    January 7, 2011

62

Q.    If you would, look at Exhibit 8.

A.    Yes, sir.

Q.    Does Dell Financial Services have a copy of this Better Business Bureau complaint activity report in its files?

A.    Yes.

Q.    And is it Dell's practice to maintain copies of Better Business Bureau reports when complaints arise?

A.    Yes, sir.

          MR. LANGLEY:  No further questions.

          MS. CAULEY:  I have nothing further.

          MR. LANGLEY:  Thank you, Ms. Garlock.

          THE WITNESS:  Okay.  Thank you.

          THE VIDEOGRAPHER:  We are off the record at 11:31.

          (Proceedings concluded at 11:31 a.m.)

Rachel Garlock                                      January 7, 2011

                                                                  63
                        CHANGES AND SIGNATURE
   RACHEL GARLOCK
   JANUARY 7, 2011

   PAGE    LINE    CHANGE                        REASON

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

Rachel Garlock                                    January 7, 2011

64

_____

_____

_____

_____

_____

          I, RACHEL GARLOCK, have read the foregoing
deposition and hereby affix my signature that same is
true and correct, except as noted above.


                              _____
                              RACHEL GARLOCK


THE STATE OF _____)
COUNTY OF _____)


          Before me, _____, on this

day personally appeared RACHEL GARLOCK, known to me (or

proved to me under oath or through

_____) (description of identity card or

other document) to be the person whose name is

subscribed to the foregoing instrument and acknowledged

to me that they executed the same for the purposes and

consideration therein expressed.

          Given under my hand and seal of office this

_____ day of _____, 2011.


                              _____
                              NOTARY PUBLIC IN AND FOR
                              THE STATE OF _____

Rachel Garlock                                      January 7, 2011

65

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

JAMON T. BRIM,                    )
     Plaintiff,                   )
                                  )
VS.                               )  CA NO. 5:10-CV-369-IPJ
                                  )
DELL FINANCIAL SERVICES,          )
LLC, ET AL                        )
     Defendants.                  )


REPORTER'S CERTIFICATION
DEPOSITION OF RACHEL GARLOCK
JANUARY 7, 2011

I, JANALYN REEVES, a Certified Shorthand Reporter in and for the State of Texas, do hereby certify to the following:

That the witness, RACHEL GARLOCK, was duly sworn by me and that this transcript of the oral deposition is a true record of the proceedings held and the testimony given by the witness;

That the original transcript, along with any exhibits marked therein, was submitted on _____, 2011, to _____ for examination and signature by the witness;

That pursuant to information given to me at the time said testimony was taken, the following includes counsel for all parties of record:

     Ms. Penny Hays Cauley, Attorney for the Plaintiff

Rachel Garlock                                          January 7, 2011

66

Mr. Eric B. Langley, Attorney for Midland Credit Management

Mr. D. Keith Andress, Attorney for the Dell Financial Services

That $_____ is the deposition officer's charges to the Defendants for preparing the original deposition transcript and any copies of exhibits;

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

I further certify that before the completion of the deposition, the Deponent and/or the Plaintiff/Defendant did request to review the transcript.

Certified to by me this _____ day of _____, 2011.

JANALYN REEVES, Texas CSR 3631
Expiration Date 12/31/2012
3101 Bee Caves Road
Centre II, Suite 220
Austin, Texas  78746
(512) 328-5557
Firm Registration 283

EBS No. 199789

Rachel Garlock

January 7, 2011

67

## A

**a.m**
1:16 41:12
62:17

**abbreviations**
30:7

**able**
10:24 11:13
12:7,9,25
13:23 14:10
16:25 61:19

**above-styled**
1:15

**accept**
28:22 29:1

**Account**
3:18 6:21,25
7:2 8:1,4,18,
22,24 9:1,2,
5,22,25 10:4,
8,17,22
11:14,24
12:1,2,6,8,
10,13 14:11,
14,17 15:7
16:2,6,10,13
17:2,8,16
20:17,22
21:12 22:2,6
23:2,10 24:9,
18,23 27:9
31:24 34:16,
20 38:8,9
40:13 41:20,
22 42:4,5,11,
14,17,21
43:2,3 45:20
46:8,24 47:2,
7 48:3,6,20,
22 51:1,19
52:6 53:9
54:11,23,25

55:7 59:10

**Accounts**
7:6,7 18:2
44:2,5,25
47:5,7,20
55:10 58:21,
25

**accurate**
16:11 24:25
37:1,23

**ACDV**
57:8

**acknowledged**
64:18

**action**
43:21 66:10,
12

**activated**
31:2

**Activity**
3:21 36:9
62:4

**additional**
10:25 34:15,
20

**address**
18:16 49:21

**adjustments**
22:22

**advantage**
41:24

**advice**
26:16

**advices**
41:20

**advised**
11:6 13:14
35:20,21
38:8,9

**affiliations**
4:16

**affix**
64:7

**agencies**
39:16 44:21,
24 57:5

**agency**
12:20,21
40:17

**agent**
19:10,17 21:6

**agents**
33:9

**ago**
5:12 13:17
36:12 37:6,15

**agree**
49:2

**agreement**
9:1 41:24
58:20,24

**ahead**
42:25

**AJT**
33:14

**AL**
1:5 65:5

**Alabama**
2:9,13 4:9

**Aldape**
2:16

**allow**
11:3 16:22

**allowed**
11:22

**allows**
16:4 22:25
23:8

**alone**
28:23 60:15

**along**
8:14 65:17

**already**
30:3,11 31:2,
10 52:18

**ALSO**
2:15 6:6
7:10,13 16:24
22:9 34:15,
18,19 44:12

**always**
44:2

**American**
30:6

**amount**
16:13,17
29:11 31:24
38:7 50:25

**amounts**
10:7

**and/or**
34:21 66:14

**Andress**
2:11 4:20
14:21 18:9
41:6 45:23,24
47:11,19
55:19 56:2
59:16 66:2

**Angela**
33:19 35:20

**Angeles**
17:6

**Ann**
55:2

**another**
12:13 17:2
47:2 48:3
53:3 54:11

**answer**
16:18,22
21:10 42:25
43:4,7 48:16

**anybody**

61:8

**apologize**
10:19 16:19
36:22 44:19
57:21

**appear**
33:13

**Appearances.**
. . . . . . . . . . . . .
. . . . . . . . . . . .
. . . . . . . . . . .
3:3

**appeared**
64:14

**appears**
20:9 59:25

**approximately**
4:12

**April**
24:7 53:18

**area**
45:7 46:10

**arise**
62:9

**ARS**
40:14,16

**art**
34:6,8

**ASHI**
24:13,16

**asked**
13:3 30:16
31:9 33:25
40:7 59:21
60:11,22

**asking**
31:1 45:25
46:2 47:20

**assigned**

Rachel Garlock                                                January 7, 2011

46:4

**assist**
20:5 44:9
54:24 55:7

**assistance**
44:22

**assistant**
45:4

**assisting**
44:12

**assumes**
49:5

**attached**
1:21

**Attorney**
65:24 66:1,2

**attorneys**
66:10

**August**
11:10 14:4,9,
14 16:24
42:18,20
43:25 44:1,7,
8,11 45:2,3,
15 46:8,9
54:2 55:9,11,
23,24

**Austin**
1:19 66:23

**auto**
31:1,4,5,9

**Avenue**
2:8

**aware**
7:22 10:13,16

———— B ————

**B**
2:7 66:1

**back**
26:12 29:22
30:14,20

32:24 53:6
57:19

**BAKER**
2:12

**BAL**
22:14

**balance**
14:16 15:13
16:5 22:15,
20,23 27:10
31:25 32:3
38:9 43:1
50:4,16,25
52:7

**BALCH**
2:8

**Bank**
3:20 10:11,
18,21,22 11:2
27:11,14,21,
25 28:7,14,
18,22 29:1
32:11,14,22,
25 33:5,7,24
34:13 35:22
41:21 52:8,
12,24 53:3
60:15,25
61:3,10

**banking**
34:16

**banks**
35:10,14

**based**
8:4 11:14
12:7 21:11
23:14 27:13
31:8 32:9
33:10 40:20
59:7 60:9,13

**Basically**
18:17

**Bates**

6:8,12 9:11,
13,18 17:21
28:6 36:4,6
38:16

**BBB**
35:20,23

**bear**
6:7

**bearing**
32:18

**BEARMAN**
2:12

**bears**
17:21 26:8
27:4 36:4

**Bee**
1:19 66:22

**behalf**
4:22 36:25
37:9 51:16
53:10

**being**
4:7,10,25 5:3
50:3,4

**believe**
10:20 15:15
40:17 42:5,
13,17 48:6
55:8 57:3

**beneath**
20:18

**BERKOWITZ**
2:12

**best**
37:1 59:3

**Better**
3:22 14:22,23
34:9 35:24
36:10,21
37:24 56:18,
22 62:4,8

**between**

19:14 21:18
58:21,25

**BINGHAM**
2:8

**Birmingham**
2:9,13

**bit**
7:17

**blue**
17:11

**bottom**
24:24 25:3
26:11 27:6
29:7 30:14,23
39:9 57:15
59:22 60:10

**break**
41:5

**BRIM**
1:2 4:7,23
6:22 7:24
8:1,4 10:7,
16,18 11:6
13:3,14,21
19:1 20:18
21:15,19
22:10 24:3
26:22 27:15,
22 28:16
30:16,19 31:9
32:11,25
33:24 34:3
40:22,25
41:16 43:21
47:16 49:11
50:7 51:8
52:16 53:2,
12,23 57:23
58:5 59:5
61:5 65:2

**Brim's**
8:18 9:25
10:4 11:3,9,

12,23,25
12:5,25 13:24
14:11,14
15:7,13 16:1,
6 17:1 20:22
22:6 23:2,9
24:18 28:20
42:4,11 45:17
46:7,24 48:21
54:22

**brought**
7:2

**Bureau**
3:22,23 35:24
36:10,21
37:24 38:20,
24 39:3
56:18,23
58:19 62:4,8

**bureaus**
39:5

**Business**
3:22 18:20
35:24 36:10,
21 37:24
56:18,23
62:4,8

**buyers**
7:16

———— C ————

**C**
2:1

**CA**
1:3 65:4

**CALDWELL**
2:12

**California**
17:6

**call**
6:7 17:13
24:24 26:15,
25 30:11

Rachel Garlock

32:23 40:10, 15,18 51:9

**called**
18:5,6 25:25 26:5 27:8 30:2,20 31:1, 23 33:5 40:6, 12 43:5 49:21 50:24 51:8 52:5,16,23 57:23 58:5

**calls**
31:13 39:20, 22,23 41:19 42:23

**capacity**
45:25 46:3

**capital**
21:24

**card**
9:3 50:9 64:16

**Carolina**
2:5

**Case**
4:9 6:22 30:4,9 49:8

**cases**
55:14

**cash**
33:21

**Cauley**
2:3,4 4:2,4, 22 9:10,17 13:7,10 14:18,23 28:9 31:13 37:4 41:9 42:23 43:16,19 45:23 46:2,6 47:15,23,24 49:6 55:22 56:6 59:12,21

60:10,22 62:12 65:24

**Cauley......**
............
....
3:8

**Cauley's**
59:18

**cause**
1:15

**Caves**
1:19 66:22

**CC**
50:7,9

**CCI**
25:21 26:1,4

**center**
23:21 32:18 35:17

**Centre**
66:22

**certain**
20:23

**certainly**
47:22 53:14

**Certificate.**
...........
...........
3:10

**CERTIFICATIO N**
65:8

**Certified**
65:10 66:17

**certify**
65:11 66:8,13

**Cervantes**
17:4,5,7

**change**
15:15 63:3

**changed**
49:21

**CHANGES**
63:1

**charge**
15:7

**charged**
10:7 16:6 23:1,9 36:20 38:8

**charge-off**
15:1,3,4,12 16:17 22:21 23:15,16

**charges**
66:5

**Check**
31:25 32:3 34:14,17,18 50:16

**checking**
41:19,22

**CHG**
23:15

**chronologica lly**
25:3

**Civil**
1:20

**claimed**
48:2

**clarify**
55:19

**closed**
38:9

**closer**
14:19,20

**Clouston**
36:15,17,19, 25 57:1

**code**

60:1

**collect**
44:25

**collection**
39:16 40:17 57:19

**collections**
30:3 39:13 44:17 52:18

**collection's**
40:7

**collectively**
21:1

**collector**
44:18

**come**
6:24 32:6 36:24

**comfortable**
6:16

**communicatin g**
36:20

**communicatio n**
21:18 40:21, 24

**communicatio ns**
21:15 37:17 48:13,14,19 51:23

**company**
5:21 51:12,15

**Complaint**
3:21 36:9 56:22 62:4

**complaints**
62:8

**complete**
37:1,23

**completion**
66:13

**comply**
35:10

**computer**
8:6

**Computers**
5:22

**concluded**
62:17

**Conditions**
3:16 9:4,22, 24 10:4

**Conferenced**
26:15,25

**confirm**
11:13

**confirmation**
53:22

**confused**
6:13

**consideratio n**
64:20

**considered**
9:2

**contact**
35:13 39:14 40:8 57:20 58:2

**contacted**
42:20 43:8 49:1,9 59:4

**contain**
24:17

**contained**
20:20 25:19 37:7 51:22 56:16

**contemporane**

| | | | | |
|---|---|---|---|---|
| **ous** 18:23 19:7 33:1 | 25 58:11,15 59:7 60:17, 18,21 64:7 | 8:16,24 9:3 14:16 15:4 17:3 18:15 | **day** 14:8 42:2 64:14,22 | 24:7 27:13,20 28:15,19,22, 25 29:10,13 |
| **contending** 31:10 | **Counsel** 4:15 5:25 7:2 | 19:6 23:25 25:25 26:5 | 66:17 | 30:5,16,20 31:6 32:12 |
| **continuation** 50:12,15 | 11:10,12 56:9 65:23 66:8 | 27:8 30:2 31:1,5,23 | **days** 15:5 36:12 | 33:25 35:3,7, 13 36:14,19, |
| 60:11 | **COUNTY** 64:11 | 32:4,22,24 33:5 35:4 | 37:6,15 51:7 | 25 37:9,21,24 38:16 40:20 |
| **continued** 60:14 | **couple** 59:17 | 38:7 40:6,8, 10,12,19 | **DCC** 31:3,15 | 41:1,23 42:3, 4,10,13,16, |
| **control** 38:7 58:14 | **course** 18:20 | 41:19,20 48:1 49:21 50:24 | **dealt** 47:5 | 20,21 43:8, 23,24 44:25 |
| **conversation** 19:6,8,11,14 | **COURT** 1:1 4:1,8,13 | 52:5,23 53:20 | **debt** 7:16,23 | 45:7 46:1,3, 20,23 47:1,9, |
| **conversation s** | 65:1 | **customers** 18:2 | **December** 26:9,23 50:21 | 17 48:14,20 49:1,9 51:6, |
| 19:1 54:17,21 56:7,10,25 | **CREDIT** 2:7 3:23 4:19 | **customer's** 12:13 17:2 | 51:7 | 16,23 53:10, 21 54:1,7,12, |
| **copies** 62:7 66:7 | 5:5 9:3 17:8, 11 28:7 32:1, | 18:16 28:14 47:2 48:3 | **Defendants** 1:6,14 65:6 | 22 55:17,25 56:7,9,21 |
| **copy** 4:2 27:25 | 3 38:6,10,19, 24 39:3,5 | 54:11 | 66:5 | 57:8 58:21,25 59:3,10 60:16 |
| 28:14 33:24 62:3 | 41:24 48:13, 19,24,25 | **customers'** 18:2 47:6 | **Defendants'** 46:12 48:15 | 61:4,12,14, 16,20 62:3 |
| **corner** 20:10 24:12, | 49:7,8,10 50:9 56:11 | ———— D ———— | 53:16 | 65:5 66:2 |
| 19,21 | 57:5 58:19 59:4 61:1 | **D** 2:11 66:2 | **define** 34:8 | **Dell's** 62:7 |
| **correct** 13:15 17:9,12 | 66:1 | **date** 15:11 20:11, | **DELL** 1:5 2:11 4:7, | **department** 33:21 40:14, |
| 19:2,12 20:8, 15 23:22 | **credited** 42:1 | 13 21:8,9 22:6,9,11,12 | 20 5:19,20, 21,22,23 6:1, | 16 44:17 46:5 47:25 |
| 24:10 25:1,17 29:21 33:12, | **Cs** 9:4 | 23:1,8,12,16 24:3,24 | 7,20 7:4,9, 15,23 8:2,14, | **Deponent** 66:14 |
| 15 34:1,2 35:1 37:9 | **CSR** 1:17 66:21 | 25:11,14,15 26:8 27:4,10 | 19,25 9:13, 14,15,25 | **DEPOSITION** 1:8,12,18 |
| 45:1 46:18,21 47:3,7 48:15 | **CURR** 22:14 | 29:17 31:7 32:16 33:11 | 10:4,8,13, 16,23 11:1,3, | 4:3,6,10,11 5:9,24 37:12 |
| 49:2,12,25 50:4 51:25 | **current** 22:14,19,23 | 42:2 50:3 52:7 53:8,25 | 8,22,25 12:16,17,23 | 47:22 48:17 64:7 65:8,14 |
| 52:9,10,14 53:18 54:9, | **currently** 5:17 7:9 | 55:8,20,21 58:16 60:13 | 13:3,13,22 14:1,6,9,15 | 66:5,6,14 |
| 10,13 57:6,9, | **customer** | 61:9,23 66:21 | 15:6,12 16:5, 20,25 17:13 | **described** 18:23 |
| | | **dated** 38:4 50:20 | 18:4,20 19:5 20:21 21:18 | **describes** |
| | | | 22:10 23:1,9 | |

Rachel Garlock                                                    January 7, 2011

8:15

**DESCRIPTION**
3:13 64:16

**designation**
24:18

**designed**
23:24

**Detail**
3:17 11:11,
13,15,19,21
13:5,15,18
14:2,5 33:6
34:4,6,11,12
35:1,4,21
41:1 54:3,5
61:16

**detailed**
34:1

**details**
34:12

**determine**
11:9,23 14:7,
10 16:25
28:19 37:16

**Diana**
32:23 33:20

**different**
7:14 39:22,23

**digits**
12:1,2

**direct**
40:21

**directly**
35:14

**disagree**
49:11

**disconnect**
40:18

**disconnected**
40:14

**discussed**

24:22 33:13
38:2

**Dispute**
3:23 38:6,24
39:2 48:21
49:10 53:11
58:13,19

**disputes**
38:7,20 39:7
48:1 57:5

**DISTRICT**
1:1 4:8 65:1

**document**
6:6,15 9:16
15:22,24
17:24 20:4
21:13 37:11,
22 38:15,18,
21 52:12
64:17

**documentatio
n**
48:18

**documents**
5:25 6:1,4,12
8:5,13 18:18
35:14 37:17
59:9

**doesn't**
26:24 57:23
61:10

**Don**
40:15

**DONELSON**
2:12

**doubt**
37:20

**due**
15:5 21:8
27:10 31:7
42:14,17 50:3
52:7

**duly**
1:14 4:25
65:13

**during**
6:11 33:6
44:1 45:2
46:8

**duties**
44:8 45:16
47:4

---
E
---

**E**
2:1,4

**each**
19:24 20:10
24:21 25:3,18

**earlier**
6:7 13:12
16:10,24
24:22 34:22

**easier**
23:3

**EBS**
66:25

**either**
34:14

**electronic**
34:14,16

**elsewhere**
26:1

**employed**
5:18 43:23,24
66:9

**employee**
46:3 51:3
60:1

**employees**
45:6 54:22,24
56:11

**English**
26:14

**enough**
29:5

**entered**
19:15,17,18
25:9 32:2
54:15,18 61:8

**entering**
51:18

**entirety**
10:3 20:21

**entity**
7:23

**entries**
18:22 25:18
32:10 33:13
36:13,24
37:21,23
39:18,19

**entry**
22:3 25:15,16
26:8,14 27:4
29:8,13,23
30:1,24,25
31:16,19,22
32:21 33:2,4,
8 35:17,19
38:1,5 39:10,
12 40:5,9
49:18,20
50:11,13,20,
23 52:2,11,15
56:16,18,21
57:14,15
58:13 59:22,
25 60:6,10,11

**Equifax**
38:6

**Eric**
2:7 4:18 5:4
9:10 66:1

**escalation**
51:2

**escalations**

26:16 51:10

**especially**
61:7

**Esperanza**
36:15,17,19,
25 57:1

**ESQUIRE**
1:18 4:11

**ET**
1:5 65:5

**Evans**
2:4

**events**
18:23

**evidence**
13:8,11 49:5

**evidenced**
53:16

**exact**
15:11 55:8

**exactly**
6:9 10:25
12:19 15:14
29:6 34:13

**Examination**
3:7,8 5:1
43:15 59:19
65:19

**example**
18:25

**execute**
8:25

**executed**
64:19

**Exhibit**
8:9 9:6,8,13,
16,18,21
11:16,18
12:4,24 13:2,
18,22 14:3
15:18,20 16:4
17:19,21

Rachel Garlock

18:19 19:22 20:16,20 21:1,20,23 22:12,13,25 23:7,20 25:19 26:7 27:3 28:2,4,11,18 29:8,22 30:15,23 31:18 32:9,10 34:22 35:16,25 36:2,8,13 37:7,12,22 38:1,11,13 39:9,17,18,24 46:13,16 48:6,8,10,15 49:15 51:23 53:8,16 54:4,14,19 55:16 56:14,17 57:10,12 59:23 60:4,25 61:17 62:1

**EXHIBITS**
3:12 8:11,17 43:11 65:18 66:7

**experience**
39:2

**expert**
7:18

**Expiration**
66:21

**explain**
41:18

**expressed**
64:20

--- F ---

**F**
18:7

**fact**
11:6 30:11

37:23 42:17 53:22 58:5 61:4

**facts**
13:7,11 49:5

**fair**
6:18 17:7 24:6 56:2

**familiar**
6:4,6,20,24 7:15,20 15:1 19:3 38:19 57:7,9 58:20 59:9

**fax**
27:11,12 31:2 52:8,9,24 53:2

**faxed**
32:22,25

**February**
43:8

**Federal**
1:20 28:7 32:1 59:4 61:1

**field**
38:20

**file**
6:1

**filed**
56:17,22

**files**
62:5

**finance**
5:21,22

**FINANCIAL**
1:5 2:11 4:7,21 5:19,20,21 6:1,21 7:5,10,15,24 8:2,19,25 9:25

10:5,8,13,23 11:1,3,8,22,25 12:16,17,23 13:3,13,22 14:1,6,10,15 15:6,13 16:5,20,25 17:13 18:4,20 19:5 20:21 21:19 23:1,9 24:7 27:13,20 28:15,22,25 29:10,13 30:16,20 31:6 32:12 33:25 35:3,8,13 36:14,20,25 37:9,22 40:20 41:2,23 42:3,4,10,13,16,22 45:7 46:3,20 47:1,9,17 49:1,10 51:16,24 53:10,22 54:1,7,22 55:17 56:1,8,9 58:21,25 59:4,10 60:16 61:4,13,14,20 62:3 65:5 66:2

**financially**
66:11

**Financial's**
51:6 56:21 57:8

**fine**
21:11 41:9

**Firm**
66:24

**first**
4:25 6:24 12:1 14:9

20:16 22:24 25:8,21 27:9,14,18 29:7 30:15 40:1 50:13 52:2,7 57:15 61:14,18

**Fiserv**
18:5,7,14,15 20:7,21 21:13 23:23 48:6

**F-i-s-e-r-v**
18:10

**five**
22:24

**flip**
21:10

**Florence**
2:5

**following**
65:12,22

**follows**
4:25

**follow-ups**
59:18

**foregoing**
64:6,18

**Form**
3:23 37:4 38:24

**forms**
38:25

**forward**
32:22 45:15

**forwarded**
28:1

**four**
12:1

**four-page**
38:15

**front**

10:19 21:13 34:23

**full**
5:15 27:9 31:11 48:22 50:25 52:6 53:11,23

**Funding**
7:20,21,22 48:12,19,21 49:1,9 58:22 59:1

**Further**
3:8 39:13 43:11 57:19 58:2 59:5,19 62:11,12 66:8,11,13

--- G ---

**GARLOCK**
1:9,12 3:6 4:6,24 5:3,14,16,17,24 6:20 7:4 8:1,10,24 9:20 12:3 13:12 14:25 15:19 16:9 17:23 21:22 26:7 28:10 36:7 37:8 38:17 41:15 43:17 46:6 47:17,24 49:6 59:13,21 60:15 62:13 63:1 64:6,9,14 65:8,13

**gave**
26:16 27:12 39:13 40:7 52:9 57:19

**give**
9:10,11

Rachel Garlock

**given**
26:22 27:1
58:2,10 64:21
65:16,21

**gives**
38:7

**go**
27:16 33:5
42:25 46:20
48:5 50:2,11
53:6

**goes**
8:14 21:9

**going**
4:2 23:2
29:22 30:14

**gone**
15:4

**governed**
9:25 10:4

**governing**
58:20,24

**governs**
9:1

**grace**
50:3

**grantor's**
38:10

**guess**
7:1,19 52:25

---
**H**
---

**hand**
64:21

**handle**
48:1

**handles**
7:13 12:17
55:13

**handling**
57:4

**happened**

11:9,23 12:11
14:10 28:19
30:4,10 45:17

**happens**
35:7

**haven't**
56:25

**Hays**
2:3,4 65:24

**heard**
4:7 7:21

**held**
4:10 6:21
65:15

**help**
20:3

**her**
14:20 17:8
45:25 46:2
55:2

**hereby**
64:7 65:11

**hereto**
1:22

**Hilda**
17:4

**History**
23:21

**holds**
23:25

**house**
18:2

**houses**
18:15

**hung**
40:19

---
**I**
---

**identified**
34:25 36:14

**identify**
8:13 15:22

17:23 22:25
29:5,19 38:17

**identity**
64:16

**iEnergizer**
26:19 51:12,
24

**II**
66:22

**immediately**
25:11 33:11

**included**
20:25

**includes**
38:15 65:22

**indeed**
61:20

**INDEX**
3:1

**India**
51:14

**indicate**
50:6 57:23
58:1

**indicates**
49:20 52:16
54:7

**individual**
45:25 46:3

**individuals**
54:18

**industry**
34:7

**info**
38:8

**Information**
3:19 10:25
12:7,24 13:2,
3,21 17:25
18:15 19:25
20:2 21:7

29:5 30:17,21
32:2,4 34:15,
17,20 37:7
41:20 44:21
46:14 49:11,
13 51:19 53:4
58:9,11 59:7
60:9 65:21

**informed**
40:13 50:3,16

**ING**
26:16,18,19

**initials**
33:10,14 51:4
60:13

**input**
19:7

**inquire**
40:12

**inquired**
14:13 42:21

**instance**
1:13 60:19

**instrument**
64:18

**insufficient**
11:2

**interested**
66:12

**introduce**
4:15

**items**
19:22

---
**J**
---

**JAMON**
1:2 4:7,23
6:22 20:18
43:21 65:2

**Janalyn**
1:16 4:14
65:10 66:21

**JANUARY**
1:9,15 4:11
27:5,25 28:16
29:23 30:19,
24 52:3,11,
15,20 63:2
65:9

**job**
7:8

**Jojo**
32:1

**June**
10:20

**jury**
5:15

**just**
5:12 6:13
8:15 11:19
13:17 17:8
20:3,5 30:10
33:13,24 38:2
39:2 47:1
55:24 56:3,9
59:17 60:11

---
**K**
---

**keep**
35:20

**Keith**
2:11 4:20
45:24 59:15
66:2

**Kevin**
27:12

**know**
6:13 12:14,20
15:9,10,15,
16 16:13,18,
20 17:3 21:1,
3 22:9 23:14
26:6,24 27:1
29:16 31:12,
17 32:5

33:10,16,20
36:17 38:21,
22,25 40:6
48:16 51:3
55:8 58:7

**knowledge**
8:5,21 21:12
37:2,5 59:3

**known**
64:14

— **L** —

**label**
6:12 36:4,6

**labeled**
6:9

**labels**
6:8 38:16

**lag**
19:13

**Langley**
2:7 4:18 5:2,
4 8:10 9:7,
12,18,20
11:17 13:12
14:25 15:19,
23 16:3 17:20
18:13 28:3,5,
10 31:15
36:1,5,7 37:8
38:12 41:4,7,
15 42:25
43:10 49:4
59:15,17,20
62:11,13 66:1

**Langley.....**
**........**
3:8

**Langley.....**
**...........**
**....**
3:7

**Langley's**

53:15

**last**
7:1 23:25
24:5 40:21,24
55:3

**LAW**
2:12

**lawsuit**
5:5 6:7

**lawyer**
5:4

**layman's**
26:13

**learn**
45:17

**left**
19:24 20:6
23:17 24:12,
19,21 33:11

**left-hand**
20:17 22:13

**less**
14:8 16:16
51:7

**letters**
21:24

**line**
26:11 63:3

**listed**
11:24 21:4,7

**lists**
20:17

**little**
7:17

**live**
17:5

**LLC**
1:5 7:20,22
65:5

**LLP**
2:8

**locate**
10:24 12:9
54:2 61:20

**located**
51:13,14

**lockbox**
7:12

**long**
12:2 14:6
43:22 44:5

**look**
12:7 25:8
50:20 57:18
58:12 60:3,25
61:22 62:1

**looked**
34:22 54:4

**looking**
6:15 23:5
29:7

**looks**
60:8

**Los**
17:6

**lot**
47:15

**lower**
23:17

**lunch**
33:6

**LW1**
60:1

— **M** —

**ma'am**
43:18,20
44:4,14,19
45:5,19,22
46:11,15,22,
25 47:8 48:4,
7,23 49:16,19
50:5,8,10,

14,18,22
51:5,11,21
52:19,22 53:1
54:16,20
55:18 56:12,
15,20 57:2
58:23 59:2,11

**machine**
1:17

**maintain**
62:7

**maintained**
18:19

**manage**
7:9,11,12,13

**MANAGEMENT**
2:7 4:19 5:5
48:13,20,25
49:7,9 56:11
66:1

**Management's**
48:24

**manager**
7:6,7 30:5

**manually**
19:9,17

**March**
43:5

**marked**
8:9,11 9:6,8
11:16,18 14:3
15:18,20
17:19,21 21:1
28:2,4,18
35:25 36:2
37:11,22
38:11,13
61:16 65:18

**matter**
4:6

**mean**
6:13 7:17

21:2,16 22:1
26:2,4,20,22
31:15 39:20
40:18 47:11
57:21 61:6

**means**
15:4 23:15

**Mendiola**
55:2,6 56:6

**M-e-n-d-i-o-**
**l-a**
55:5

**mentioned**
13:13 16:24

**met**
5:11

**microphone**
14:19

**mid**
7:1

**middle**
21:23

**MIDLAND**
2:7 4:19 5:5
7:20,21,22
16:10,14
42:4,11,20
43:4,7 47:14
48:12,19,21,
24,25 49:6,8,
9 56:11
58:21,25 66:1

**military**
25:13

**minus**
12:1

**minute**
5:12 13:17
21:10

**minutes**
41:5

**misapplied**

Rachel Garlock

17:2 48:3

**missing**
21:14

**mistake**
17:14

**modes**
50:17

**modified**
19:19

**money**
46:23 54:8,
10,12 61:5

**month**
31:7

**morning**
5:11

**move**
14:19

**multiple**
21:2

---
**N**

**N**
2:1

**name**
4:12 5:4,15
7:24 11:25
12:6 17:3
18:3,16 20:18
27:12 34:21
43:19 55:3
61:6,7 64:17

**Naomi**
2:16

**NASHI**
30:4,9

**near**
19:11

**necessary**
52:13 53:4

**need**
14:18 18:8

21:10 55:2

**needed**
13:14 44:22,
23

**needs**
35:21

**neither**
66:8

**never**
49:1,9 53:3
59:4

**NN1**
51:4

**Norm**
2:16

**Norman**
4:13

**North**
2:8,13

**Northern**
4:8

**Nos**
8:9

**NOTARY**
64:24

**notation**
52:12

**note**
19:24 24:16
25:8,9,21
32:18 50:13
57:18 58:4,7,
12 60:14

**noted**
64:7

**notes**
10:19 17:16,
25 19:1,6,14,
15,18 20:3,5,
6 21:16
24:17,23,24
25:19 26:2

27:16,20
30:11,18
48:5,6 50:1,
2,6 51:6,22
54:14,15,18
56:21,24
58:18

**nothing**
62:12

**notice**
56:17

**notified**
17:10

**November**
10:12,14,17
17:1 29:8,18
31:25 38:4
41:16 46:20,
24 50:4 53:23
54:8 57:14
58:6,13,17

**NT**
52:25

**NUMBER**
3:13 11:14,24
12:1,6 20:17
26:16,17,18,
23,25 27:12
28:6 32:3,24
34:18,20,21
38:7 40:7
41:22 52:9
58:1,9,14

**numbered**
1:15

**numbers**
9:11,13 12:2,
8 17:22 22:3
29:14,16,19

---
**O**

**oath**
64:15

**object**
13:10 31:13
37:4 42:23
47:11

**Objection**
13:7 49:4

**occasion**
14:9 30:15

**occurred**
12:14 14:7
15:9,10

**October**
25:10 40:2,25
49:18 50:12
56:18

**offer**
43:10

**offhand**
15:11,16

**office**
4:11 64:21

**officer's**
66:5

**offices**
1:18 2:12

**offshore**
7:13

**Oh**
61:24

**Okay**
6:17 8:12
14:24 15:17
18:10 19:23
23:4 26:15
27:6 28:9
34:10 40:9,12
41:7,8 42:9
43:1,14 45:2,
12,15 46:19
48:12 50:2,6,
19 51:3 52:15
53:2,7 55:5

56:2,10
57:13,17 60:2
61:25 62:14

**Once**
19:18

**ones**
6:9

**on-line**
61:7

**open**
8:1,4

**opened**
9:5,23 22:2,7

**opens**
8:24

**OPNED**
21:24

**opportunity**
37:16

**ORAL**
1:8,12 65:14

**order**
21:17 22:12

**original**
65:17 66:6

**outcome**
66:12

**outside**
12:18,21
44:24 47:21

**over**
7:2 41:17
50:25 51:1,9

**owed**
14:17

---
**P**

**P**
2:1

**PAGE**
3:13 12:4,5
19:24 20:10,

16 21:22 22:13 23:5,8, 14,18,20 24:4,11,17, 22 25:4,9 26:7,8 27:3 29:7,22 30:15,23 31:18 32:9, 10,18 35:16, 17 38:1 39:9, 10,17,18,24 46:16 49:14 50:19 52:2,20 53:6,14,16 56:14 57:10, 11,12,16 58:17 59:22 60:3,4,7,10, 12 63:3

**Page........**

**...........**

**....**
3:9

**pages**
18:18,25 21:1 22:24

**paid**
10:10,11,17 27:8 48:22 50:24 52:6 61:5

**Pardon**
13:9

**part**
20:2,6 23:23 45:16 47:4

**partial**
57:18,22

**particular**
12:11 16:10 20:13

**parties**

65:23 66:9

**Paul**
40:8

**pay**
10:7 26:15 31:1,4,5,9 41:21 51:2,10

**payable**
42:5,14,17

**pay-by-phone**
12:22

**paying**
41:24

**payment**
7:3,9,11,14 10:14,21,23, 25 11:1,4,9, 14,23 12:9, 12,19,20,25 13:24 14:7 17:1 21:8 23:21 27:11 28:20,23 29:2,6,10, 17,20 30:2 31:6,10,23 34:13,14,19 41:16 43:3 44:9,12 45:4, 7,8,13,16, 17,18,21 46:4,7,9,19 47:4,25 48:2 50:7,17 51:7, 9,19,25 52:8, 17,23 53:9, 11,16,23,25 54:2 55:12, 14,16,25 59:5 60:17,23 61:11,12,15, 20

**payments**
12:22 18:16

23:25 24:2,5, 8 44:10,13 47:6 51:16, 17,18 53:19 61:8

**PC**
2:4,12

**Penny**
2:3 4:22 9:12 15:23 28:5 36:5 41:8 43:19 55:19 65:24

**perfectly**
21:11

**perform**
45:20 46:7

**period**
50:3

**person**
36:19 55:15 60:6 64:17

**personal**
39:2

**personally**
37:6 54:15 64:14

**phone**
14:20 26:15, 17,25 32:24 39:13 40:7 41:17 50:25 51:1,2,9,10 57:19 58:1

**phrased**
49:5

**placed**
30:12 58:7

**PLAINTIFF**
2:3 6:21 65:3,24

**Plaintiff/De**

**fendant**
66:15

**Plaintiffs**
1:3

**plaintiffs'**
36:6

**please**
4:15 5:14 24:11 27:7 30:25 31:22 45:6 46:1,12 48:5 49:14 50:23 55:4

**point**
6:11 13:13 15:6 16:9

**position**
7:4

**posted**
11:14 12:9,13 30:3 31:24 47:1,6 51:20 52:17 54:11

**posting**
44:10,12 51:15

**postings**
7:14

**practice**
62:7

**preceding**
60:3

**prepared**
18:19

**preparing**
48:17 66:6

**PRESENT**
2:15

**presume**
58:5

**previous**

30:4,10

**previously**
48:22 49:17

**printed**
20:14 24:3,8 53:8

**prior**
14:14 37:12, 13,14 44:8,16

**Procedure**
1:20

**proceeding**
66:10

**Proceedings**
62:17 65:15

**process**
57:7

**Processed**
3:18 16:1

**produced**
1:13 6:6 16:21

**production**
9:14,15

**products**
5:23 22:10

**proof**
28:23 29:1 43:2 61:11, 12,14,18

**protector**
8:7

**proved**
61:4 64:15

**provide**
13:4,14 34:3 35:4 44:21

**provided**
5:25 9:5 10:18,21 11:10,11,15

Rachel Garlock

13:21 20:3,5
32:4 40:25
59:10

**provisions**
1:21

**PUBLIC**
64:24

**pull**
48:10

**purchase**
22:10,11

**purchased**
7:23 8:6

**purchases**
8:8,15,16,
17,18,22

**purport**
36:24 37:18,
21

**purpose**
18:13 38:25

**purposes**
45:24 64:19

**pursuant**
1:20 5:9 28:8
65:21

**put**
19:9 32:23

_____
Q
_____

**quadrant**
23:17

**question**
13:10 16:18,
22 21:11 23:3
27:19 34:9
42:8 45:24
47:13,23
48:16 53:13

**questioning**
47:17

**questions**

6:11 19:21
43:11 53:15
59:12,18,22
60:22 62:11

_____
R
_____

**R**
2:1

**RACHEL**
1:9,12 3:6
4:6,24 5:16
63:1 64:6,9,
14 65:8,13

**range**
9:19

**read**
24:23,24
26:13 27:4
30:1,25 31:22
35:19 50:23
64:6

**reader**
20:3

**reading**
58:4

**really**
47:12

**reason**
37:20 63:3

**Receipt**
3:14,15 8:14
39:5

**receivable**
7:6,7 44:2,5

**receivables**
55:11

**receive**
27:14 42:1
53:23

**received**
14:2,4 27:21
28:7,16 30:20
31:2 38:6

43:2 52:24
53:19 54:8,
10,12 56:23
58:14,19
60:23 61:5,15

**receiving**
14:5 55:16

**Recess**
41:12

**record**
1:21 3:19
18:1,17
41:10,13
62:15 65:15,
23

**records**
16:6,21
18:19,22 24:7
27:13 31:8
40:20

**recovery**
33:9

**Redstone**
28:6 31:25
59:4 61:1

**Reeves**
1:16 4:14
65:10 66:21

**refer**
46:12

**reference**
30:10

**referencing**
11:19

**referring**
13:19

**reflect**
17:17 21:14
22:20 25:15
27:20

**reflected**
8:17 16:5

21:19 24:4
39:23 48:14

**refund**
7:10

**regarding**
19:1 24:18
31:23 48:18,
21 49:7,17
51:23,24
52:23 54:22
56:17,22

**regards**
47:13

**Registration**
66:24

**regular**
18:20

**regularly**
35:7

**related**
66:9

**relates**
20:22

**relationship
s**
7:16

**relevance**
47:13

**remember**
44:20

**Renee**
5:16

**rep**
30:4,10 31:2

**repeat**
27:19

**rephrase**
18:24 37:19
47:23 53:13

**Report**
3:17,21

11:11,13,15,
19,22 13:6,
15,18 14:2,6
33:6 34:1,4,
6,11,12 35:1,
5 36:9 41:1
54:3,5 61:16
62:4

**reported**
1:17

**REPORTER**
4:1,2,14 13:9
18:6,11 65:10

**Reporter's**
3:10 65:8

**reporting**
57:5

**reports**
62:8

**represent**
43:21

**representati
ve**
19:5

**represented**
51:4 54:14,19

**represents**
5:4

**request**
35:14 38:10
51:24 55:6
66:15

**requested**
13:23 30:21
41:1

**requests**
7:10

**research**
7:9 14:7
27:11 32:23
44:9,12 45:4,
7,9,14,16,

Rachel Garlock

17,21 46:4,7,
10,13 47:5,25
51:25 52:8
54:25 55:7,
12,14 59:5

**researched**
7:3

**researching**
55:16,21,25

**resent**
49:24

**respect**
57:4

**responding**
39:4

**response**
14:15 42:22
49:10 53:15

**responses**
57:8

**responsibili
ties**
7:8 55:12

**responsibili
ty**
57:4

**responsible**
37:7 51:15,17
55:15,20,25

**rest**
52:25

**retained**
44:25 55:11

**review**
45:20 48:18
66:15

**reviewed**
31:8 37:11
58:24

**revolving**
9:2

**right**
5:24 10:19
11:24 12:5
34:24 50:15,
17 53:17
54:4,12

**right-hand**
20:10

**Road**
1:19 66:22

**routing**
41:22

**Rules**
1:20

**rush**
32:23

---
**S**
---

**S**
2:1

**sale**
42:7 48:20
58:21,25

**sales**
5:23

**says**
22:14,17
23:21 24:24
26:14 27:8,10
29:10,13 30:9
52:5,7 57:19

**scope**
47:21

**screen**
20:9,14,20,
24 21:5,6,23
23:18,21,23
24:3,8,12,16
29:23 30:14,
24 31:19
32:10 60:7

**screens**
20:23,25

21:3,14

**seal**
64:21

**second**
12:3,5 33:24
40:9

**security**
34:21

**see**
20:11 22:19
25:22 29:11,
24 52:1 56:13

**seen**
6:10 28:10
36:11 37:5
59:8

**sells**
59:10

**send**
30:16 32:14

**sent**
32:11 33:24
34:17 47:14
61:12

**separate**
39:18,19,20

**September**
8:3,8 22:4,12
32:17 33:23

**SERVICES**
1:5,19 2:11
4:7,21 5:19,
20,21 6:2,21
7:5,10,24
8:2,19,25
10:1,5,8,13,
24 11:1,3,8,
22 12:1,17,23
13:3,13,22
14:2,6,10
15:6,13 16:25
17:13 18:4
21:19 23:1,9

28:16,22 29:1
30:16,20 31:6
32:12 33:25
35:3,8,13
36:14,20,25
37:9,22 41:2,
23 42:3,5,10,
13,16 46:20
49:1,10 54:1
60:16 61:4,
13,15,21 62:3
65:5 66:2

**Services'**
7:15 14:15
16:5,21 18:20
19:5 20:21
24:7 27:13,20
40:20 42:22

**sets**
31:5

**short**
26:19 41:5

**shorthand**
1:18 65:10

**shortly**
33:1,23

**shot**
20:9,14 21:23
23:18,21
24:8,12 29:23
30:14,24
31:19 32:10
60:7

**shots**
20:20

**show**
6:11 8:6 9:7
10:25 12:19
15:13 17:9
21:6 28:3
30:22 34:13,
15,18,19 36:1
50:1 59:8

61:11

**showed**
10:21,23
61:19

**showing**
8:10 11:17
15:19 17:20
38:12 53:9
58:19 61:12

**shows**
16:1 26:25
27:25 46:16
53:19 61:6,11

**side**
20:17 22:14

**Signature**
3:9 63:1 64:7
65:20

**similar**
9:3 28:15
30:11

**sir**
5:10,13 6:3,
5,19,23 7:25
8:20,23 11:20
13:1,16,20,
25 14:12 15:2
17:15,18
18:21 20:1,
12,19 22:5,8,
16,18 23:19
24:14,20
25:1,5,7,20,
23 26:3,10
28:12,17,21
29:3,9,12,
15,25 30:8,13
31:21 34:5
35:2,6,9,12,
15,18 36:3,
16,18 37:3,10
39:6,8,11,21
40:23 41:3
42:19 59:24

Rachel Garlock

60:2 61:2 62:2,10

**sit**
53:9,21

**site**
7:13

**situation**
28:25

**situations**
7:19

**six**
23:25 24:5

**slow**
21:8

**social**
34:21

**sold**
16:10,12,14 42:3,10

**Solutions**
4:11

**someplace**
32:6

**sorry**
9:12 14:18 15:15 18:24 27:18,19 37:19 42:9,15 45:10 53:13 55:22 57:11 58:16 61:24

**sort**
8:25 35:7

**South**
2:5,8

**speak**
14:19

**specific**
19:22

**specifically**
45:8,13

**specificity**
16:4 22:25 23:8

**specify**
46:1

**speculation**
31:14 42:24

**spell**
18:8 55:2

**spelled**
24:12

**stand**
22:14 25:24

**start**
25:3

**starts**
12:6

**State**
1:17 16:4 23:8 33:4 64:11,25 65:11

**stated**
1:21 9:15

**Statement**
3:20 10:11, 18,21,22 11:2 21:3,5,6,7,9 27:10,11,14, 21 28:1,7,14, 18,23 29:1 32:12,14,22, 25 33:25 49:24 52:7,8, 13,24,25 53:3 60:15 61:1,3, 10

**STATES**
1:1 4:8 13:7, 11 65:1

**stating**
51:8

**status**
14:13

**Staying**
38:1

**Stearns**
32:23 33:20

**Street**
2:4,13

**Strike**
23:2 39:22

**stuff**
61:8

**submitted**
6:10 65:18

**subpoena**
5:9 28:8 47:14

**subscribed**
64:18

**sufficient**
28:19 29:1 60:16

**Suite**
1:19 2:4,8,13 66:22

**sup**
30:5,7

**supervisor**
30:7 44:3,6 55:11,23

**supported**
44:20

**sure**
6:9,14 32:8 34:8 36:23 41:6 56:3 57:21

**surge**
8:7

**sworn**
1:14 4:17,25

65:13

**System**
3:19 8:6 18:1,3,14,17 19:7,9,18 20:2,7,22, 23,24 21:13 23:24 56:24

---
**T**
---

**T**
1:2 65:2

**take**
14:6 31:6 41:4,21 60:25

**taken**
1:14 41:20 65:22 66:11

**taking**
12:22 51:17, 18

**talk**
30:5

**talking**
12:3 55:21

**team**
7:2 55:13

**Telephone**
2:3 46:17

**tell**
5:14 17:14 25:9 32:11 43:22 45:6

**Tennent**
33:19

**term**
15:1 24:12 25:21 26:1 34:6

**Terms**
3:16 9:1,4, 22,24 10:3 41:23

**testified**
4:25 47:19 48:25 49:8,17 53:14 55:22, 24 57:3

**testifies**
49:7

**testify**
53:10

**testimony**
47:16 65:15, 22

**TEXAS**
1:1,17,20 65:1,11 66:21,23

**thank**
5:3 9:17 14:20,24 18:11 43:13, 14 53:21 56:2 59:13,14 62:13,14

**thing**
26:2 35:7

**think**
13:17 16:9 47:19,21 60:9

**third-party**
26:21,23

**three**
39:19,20 41:5 44:10 45:8,11 47:25

**Tim**
40:13

**time**
4:12 12:21 15:12 16:6,17 19:11,13 22:21 25:13, 14,15 26:9

Rachel Garlock                                    January 7, 2011

80

27:5 32:19 33:22 36:22 40:3,24 42:3, 7,10 43:12 44:1 45:2 46:8 50:6 53:5 56:1 60:8,14 61:9 65:22

**timeframe**
14:1

**timestamp**
25:13

**title**
44:20

**titled**
45:8,13

**today**
5:3,6,8 37:9, 13,14 43:22 53:10,21 60:19

**told**
13:17 27:10 37:24 52:8,24 53:2,3

**top**
19:24 20:6 23:20 24:11, 19,21,25 25:6 26:8 29:23 31:19 60:7,12

**total**
16:7,17

**touch**
40:14

**towards**
25:6

**trace**
12:25 13:23

**track**
11:3 23:24

60:16

**Transaction**
3:17 11:11, 12,15,18,21 12:16 13:5 33:6 34:12 35:21 54:3

**transactional**
13:15,18 14:2,5 34:1, 3,6,11,25 35:4 41:1 44:16 46:13 54:5 61:16

**Transactions**
3:18 16:1 18:16 21:8

**transcript**
65:14,17 66:6,16

**transfer**
50:16

**Transferred**
31:3 51:2,9

**TransUnion**
58:14

**trial**
5:9 47:13 49:7

**true**
25:18 64:7 65:15

**Ts**
9:4

**turn**
21:22 22:13 24:11 27:3 30:23 31:18 32:9 35:16 39:9,17 49:14 50:19 52:2,20

56:13 57:10

**Turning**
23:20

**two**
8:8 33:13 36:12 37:6,15 39:25 41:5

**type**
20:25 35:14 45:21 46:7 56:17

**typewritten**
19:25

_____ **U** _____

**Uh-huh**
5:7 9:9 13:16 15:21 18:12 19:4 21:25 31:21 32:20 38:3,14 42:12 48:9 49:23 50:14 52:4 54:6 56:5 58:3 60:5 61:2,18

**ultimately**
11:8

**unclear**
56:3

**uncommon**
35:3 47:9,12

**under**
11:24 12:5 26:7 41:23 64:15,21

**understand**
5:8 6:15 20:4 47:12

**understanding**
8:5

**unfortunatel**

**y**
10:22

**Union**
28:7 32:1,3 59:4 61:1

**UNITED**
1:1 4:8 65:1

**unless**
9:15

**upper**
20:10

**upset**
30:2 52:17

**use**
12:18

**usually**
35:10

_____ **V** _____

**VAK**
39:13,15

**valid**
42:5

**various**
7:13,16

**vendor**
7:12 12:18 26:23

**vendors**
7:11 26:21

**verified**
38:8

**verify**
31:3

**version**
28:6

**versus**
4:7 56:4

**Via**
2:3

**Videographer**

2:16 4:5,13 41:10,13 62:15

**VIDEOTAPED**
1:8,12 4:5

**VS**
1:4 65:4

_____ **W** _____

**want**
4:2 18:8 19:21 41:4

**wanted**
25:2 40:12 49:21 50:7 56:3

**Wants**
30:4,5 41:21

**wasn't**
29:5

**way**
29:19 41:25

**we're**
5:5 43:22 60:19

**weren't**
10:24

**West**
2:4

**WESTERN**
1:1 65:1

**whatsoever**
48:18

**wherein**
48:1

**whether**
32:11 37:17

**Wiley**
2:16 4:13

**willing**
35:10

**wire**

Rachel Garlock

34:14,16

**within**
18:4,18 20:9,
23 25:19,21
36:13 51:22
52:6 56:16

**witness**
1:13 4:16
14:19,22,24
15:25 18:7,
10,12 43:14
45:25 48:24
49:8 56:5
59:14 62:14
65:13,16,20

**Witness'**
3:9 37:5

**words**
19:13

**work**
6:14 25:2,6
38:20 44:18

**worked**
44:2 45:7
46:4

**working**
33:21 35:20
45:3 46:9

**wouldn't**
7:17

--- Y ---

**y'all**
41:4

**Yeah**
42:9

**year**
7:1

**years**
44:10 47:25

**yourselves**
4:16

--- 0 ---

**0004**
36:6

--- ' ---

**'04**
8:8

--- 0 ---

**041106**
31:25

**04116**
29:14

--- ' ---

**'09**
55:11,23

--- 1 ---

**1**
3:14 8:9,11,
17 9:13 22:12
43:11

**10**
27:3 29:22
30:15 52:2

**10/20/2004**
25:11

**10/21/05**
35:16

**1006**
1:16

**1007**
4:12

**101**
17:22

**102**
15:24

**1055**
41:11,12

**11**
3:17 52:20

**11/8/2005**

39:10

**1105**
41:12,14

**1131**
1:16 62:16,17

**1147**
32:19

**12**
30:23

**12/31/2012**
66:21

**1250**
27:5

**13**
27:5 52:3

**1300**
15:15

**1313**
25:12

**1314**
50:12

**1381**
38:9

**1381.01**
16:8 22:17

**13th**
52:11

**1433**
35:17 52:21

**14th**
22:4,12

**15**
3:18

**1500**
2:8

**1528**
57:14

**1545**
40:4

**1552**

50:21

**1556**
26:9

**15th**
58:13,17

**16**
23:13 31:18

**1600**
2:13

**1628**
31:20

**17**
3:19 32:9,10

**18**
35:16 38:1
56:14 60:4,7,
12

**180**
15:5

**19**
12:2 39:9
57:10,11,12
58:17 59:22
60:10

**1901**
2:8

**199789**
66:25

**19th**
29:23 30:19
52:15,20

--- 2 ---

**2**
3:3,15 8:9,
11,18 9:16
46:16

**2002**
43:25 44:2

**2004**
8:3 10:12,14,
17 12:24 17:1

22:4 25:10
26:9,23 29:18
31:25 41:16
46:21,24
49:18 50:12,
21 53:24 54:8
56:4 59:6

**2005**
10:20 12:24
13:4,22 15:10
23:13 27:5
28:16 29:24
30:19,25
31:20 32:17
33:23 38:4
52:3,11,16,
21 56:19
57:14 58:6,
13,17 59:6

**2006**
40:2,25 44:11
45:3,15 46:8
59:6

**2007**
45:21

**2008**
42:21

**2009**
43:5 44:7,8,
11 45:3 46:9
56:4

**2010**
11:10 14:4,9,
14 16:25 24:7
42:18 43:8
53:18 54:2
55:9,24 56:4

**2011**
1:9,15 4:12
63:2 64:22
65:9,19 66:18

**205**
2:9,14

**20th**
2:13 25:10 49:18 50:12

**21**
39:17,18,24

**21st**
56:18

**220**
1:19 66:22

**226-8772**
2:9

**23rd**
31:19

**250-8367**
2:14

**25-day**
50:3

**25th**
30:24

**27**
28:16

**27th**
27:25

**28**
3:20

**283**
66:24

**29501**
2:5

**2nd**
26:9,23 50:21 51:7

___ 3 ___

**3**
3:16 9:6,8, 18,21

**30**
51:7

**3101**
1:19 66:22

**328-5557**
66:23

**35**
3:21

**35203**
2:9,13

**3631**
66:21

**38**
3:22

**39**
38:16

___ 4 ___

**4**
3:17 11:16,18 12:4,24 13:2, 18,22 14:3 21:22 34:22 46:13,16 54:4 55:16 61:17

**4/9/2010**
20:11

**40**
38:16

**41**
38:16

**42**
38:16

**420**
2:13

**43**
3:8

**4501**
12:6

**4th**
50:4

___ 5 ___

**5**
3:7,18 15:18, 20 16:4 22:13

**510-CV-369-IPJ**
1:3 4:9 65:4

**512**
66:23

**549**
2:4

**59**
3:8

___ 6 ___

**6**
3:19 10:14,17 17:19,21 18:19 19:22 20:16,20 21:1,20,23 22:13,25 23:5,7,14, 18,20 25:19 26:7 27:3 29:18,22 30:15,23 31:18 32:9,10 35:16 38:1 39:9,17,18, 24 46:20 48:6,8,10,15 49:15 51:23 53:8,16,23 54:8,14,19 56:14,17 57:10,12 59:23 60:4

**63**
3:9

**65**
3:10 9:16

**665-1717**
2:5

**67**
9:16

**68**

9:16

**6th**
10:12

___ 7 ___

**7**
1:9,15 3:20 4:11 23:20 24:4 28:2,4, 11,18 29:8 53:6,14,16 60:25 63:2 65:9

**71**
9:19

**72**
9:19

**78746**
66:23

___ 8 ___

**8**
3:14,15,21 24:11 31:25 32:17 33:23 35:25 36:2,8, 13 37:7,12,22 38:4 49:14 62:1

**80**
17:22

**843**
2:5

**8th**
29:8 46:24 57:14 58:6

___ 9 ___

**9**
3:16,22 26:7 38:11,13 43:11 50:19 53:18

**934.78**

**50:4**

**950**
17:8,11

**954.12**
29:11 31:24 46:19

**962.92**
27:9 52:6

**9th**
24:7 40:2,25